Martin Walters
NAME
E-86183
PRISON NUMBER
C.S.P.-Sol. P.O. Box 4000
CURRENT ADDRESS OR PLACE OF CONFINEMENT
Vacaville CA. 95696
CITY, STATE, ZIP CODE

2254 ✓ 1983
FILING FEE PAID
Yes No ✓
IFP MOTION FILED
Yes ✓ No
COPIES SENT TO
Court ✓ ProSe

ORIGINAL

FILED
JAN 28 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

MARTIN EDWARD WALTERS,
(FULL NAME OF PETITIONER)
PETITIONER

v.

D. K. Sisto,
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS])
RESPONDENT

and

______________________,
The Attorney General of the State of California, Additional Respondent.

Civil No. '08 CV 0167 DMS NLS
(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

PETITION FOR WRIT OF HABEAS CORPUS

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack: California Superior Court in and for the County of San Diego.
2. Date of judgment of conviction: 5-9-1990
3. Trial court case number of the judgment of conviction being challenged: CR-103749 (and if need be 88-0769-G-Criminal.)
4. Length of sentence: 25 years to Life (obligation?)

5. Sentence start date and projected release date: ______

6. Offense(s) for which you were convicted or pleaded guilty (all counts): 1 count of first degree Murder

7. What was your plea? (CHECK ONE)
   (a) Not guilty ☐
   (b) Guilty ☒
   (c) Nolo contendere ☐

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
   (a) Jury ☐
   (b) Judge only ☐

9. Did you testify at the trial?
   ☐ Yes ☐ No

## DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the California Court of Appeal?
   ☒ Yes ☐ No

11. If you appealed in the California Court of Appeal, answer the following:
   (a) Result: Denied
   (b) Date of result, case number and citation, if known: unknown
   (c) Grounds raised on direct appeal: unknown

12. If you sought further direct review of the decision on appeal by the California Supreme Court (e.g., a Petition for Review), please answer the following:
   (a) Result: Denied
   (b) Date of result, case number and citation, if known: unknown
   (c) Grounds raised: unknown

13. If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition:

(a) Result: Denied

(b) Date of result, case number and citation, if known: Unknown

(c) Grounds raised: Unknown

## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?
☒ Yes ☐ No

15. If your answer to #14 was "Yes," give the following information:

(a) **California Superior Court** Case Number: HC 17872

(b) Nature of proceeding: Petition for Writ of Habeas Corpus

(c) Grounds raised:

(d) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes ☒ No

(e) Result: Denied

(f) Date of result: June 2[illegible], 2006

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?
☒ Yes ☐ No

17. If your answer to #16 was "Yes," give the following information:

(a) **California Court of Appeal** Case Number: D 050312

(b) Nature of proceeding: Petition for Writ of Habeas Corpus

(c) Grounds raised:

(d) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes ☒ No

(e) Result: Denied

(f) Date of result: May 24, 2007

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
☒ Yes ☐ No

19. If your answer to #18 was "Yes," give the following information:

(a) **California Supreme Court** Case Number: S 153765

(b) Nature of proceeding: Petition for Review

(c) Grounds raised:

(d) Did you receive an evidentiary hearing on your petition, application or motion?

☐ Yes ☒ No

(e) Result: Denied

(f) Date of result: August 15, 2007

20. If you did *not* file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the California Supreme Court, containing the grounds raised in this federal Petition, explain briefly why you did not:

I did.

## COLLATERAL REVIEW IN FEDERAL COURT

21. Is this your **first** federal petition for writ of habeas corpus challenging this conviction?

☒ Yes ☐ No (IF "YES" SKIP TO #22)

(a) If no, in what federal court was the prior action filed? ____

(i) What was the prior case number? ____

(ii) Was the prior action (CHECK ONE):

☐ Denied on the merits?

☐ Dismissed for procedural reasons?

(iii) Date of decision: ____

(b) Were any of the issues in this current petition also raised in the prior federal petition?

☐ Yes ☐ No

(c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?

☐ Yes ☐ No

**CAUTION:**

- **Exhaustion of State Court Remedies:** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present ***all*** other grounds to the California Supreme Court before raising them in your federal Petition.
- **Single Petition:** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.
- **Factual Specificity:** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

## GROUNDS FOR RELIEF

22. **State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground.** If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: Petitioner's guilty pleas Were obtained by Unfulfilled promises of the California State Prosecutor and Judge, in Violation of the laws, treaties, and or Due Process/ Equal Protection Clauses of the U.S. Constitution. The State is Violating the terms of Petitioner's Plea agreement.

**Supporting FACTS** (state *briefly* without citing cases or law) Summary. 1. Petitioner is Unlawfully Confined in California State Prison under C.D.C.R. # E-86183 because Petitioner's negotiated guilty was obtained by unfulfilled promises of the State (Cal.) Prosecutor and Superior Court Judge, in Violation of the Laws, Treaties, and or "Due Process" or "Equal Protection" Clauses of the United States Constitution, thus Petitioner seeks Specific performance or recission of the guilty Plea(s). "

Petitioner has a guarenteed Due Process right Conferred by the U.S. Constitution to enforce the terms of his negotiated plea agreement, aswell as the promises, inducements and concomitant obligations flowing therefrom.

On 5-9-1990, after extensive Plea bargain negotiations, in the Superior Court of California, and County of San Diego, and Witnessed by Petitioner's Court appointed Counsel Larry Ainbinder (esq.), Deputy District Attorney (D.D.A. hereafter) Mr. Evan Miller promised, inter alia, That Petitioner "Would not serve one day on the first degree Murder [in State case # CR-103749] because the term [Petitioner Would receive] Would expire before your Federal Sentence." [in Federal case # 88-0769-G-Criminal]

Petitioner's counsel, Larry Ainbinder and D.D.A. Miller Proved the promise as true with a (few) demonstrations...

(Supporting facts Continued on next Page... )

**Did you raise GROUND ONE in the California Supreme Court?**

☒ Yes ☐ No.

(1.) Petition for review (nature of Proceeding.)
(2.) #S 153765 (case number)
(3) See exhibit 11 (Result)

GROUND ONE SUPPORTING FACTS CONTINUED

DEMONSTRATION

D.D.A. MILLER PROVIDED PETITIONER WITH A SINGLE SHEET OF PAPER (CAL. MURDER MATRIX) ACCORDING TO MR. MILLER (D.D.A.) AND VERIFIED AS TRUE BY LARRY AINBINDER, IF PETITIONER RECEIVED, FOR EXAMPLE, A 30 YEAR PRISON TERM (GROSS), THE PRISON TERM WOULD BE REDUCED BY PENAL CODE § 2931, POST CONVICTION CREDITS AND THESE EARNED CREDITS WOULD BE USED TO REDUCE PETITIONER'S TIME IN CUSTODY BY 33.3 %, THUS RESULTING IN 20 YEARS (NET) OF IMPRISONMENT, WHICH WAS THE UNDERLYING AGREEMENT.

AT THAT TIME PETITIONER THOUGHT THE TERMS PRESCRIBED IN THE CALIFORNIA MURDER MATRIX WERE SUPPOSED TO BE SENTENCES IMPOSED BY THE SUPERIOR COURT JUDGE, AND POST CONVICTION CREDITS AS WELL AS PAROLE APPLIED TOWARDS THAT TERM OF IMPRISONMENT. AT NO TIME WAS PETITIONER TOLD THAT HE WOULD HAVE TO BE "FOUND SUITABLE FOR PAROLE," IN ORDER TO RECEIVE HIS PRESCRIBED TERM OF PUNISHMENT.

MORE PROMISES And Conditions

D.D.A. MILLER MADE THE FOLLOWING PROMISES IN EXCHANGE FOR PETITIONER'S GUILTY PLEA:

A.) PETITIONER AGREED TO SERVE 20 YEARS IN CUSTODY (THE TRUE UNDERLYING AGREEMENT) IF THE FOLLOWING CONDITIONS WERE MET, THUS THE PROMISES OF THE PROSECUTOR WERE MADE.

B.) ANYTIME PETITIONER WOULD RECEIVE IN STATE COURT WOULD BE CONCURRENT TO ANYTIME PETITIONER WOULD RECEIVE IN FEDERAL COURT. (BECAUSE PETITIONER UNDERSTOOD THE STATE'S SENTENCE WOULD EXPIRE BEFORE HIS FEDERAL SENTENCE)

C.) ANY TIME PETITIONER RECEIVED IN STATE COURT WOULD BE SERVED IN FEDERAL CUSTODY. (BECAUSE PETITIONER DID NOT WANT TO SERVE ANYTIME IN STATE CUSTODY.) [SEE Petitioner's declaration in support of petition; motion to withdraw guilty plea; D.D.A. motion opposing withdraw; and hearing transcripts, incorporated herein and attached hereto, 1; 4; 5.]

D.) D.D.A. MILLER PROMISED PETITIONER THAT THE JUDGE, THE HONORABLE JESUS RODRIGUEZ, WAS "AWARE OF PETITIONER'S CONDITIONS AND WOULD HONOR THEM."

OTHER CONDITIONS ARE NOT HERE MENTIONED FOR THE SAKE OF BREVITY AND BECAUSE THEY DO NOT HAVE THE IMMEDIATE RELEVANCE OF THE ABOVE MENTIONED CONDITIONS.

PROMISES NOT CONDITIONS

D.D.A. MILLER PROMISED PETITIONER THAT: PETITIONER MAY RECEIVE EARLY ON THE TERM (IN THE MURDER MATRIX) OF UP TO 60 MONTHS, ON PAROLE. (NOT EARLY RELEASE ON A LIFE TERM.) [SEE The change of plea form incorporated herein and attached hereto as exhibit 2 ]

INDUCEMENTS

D.D.A. MILLER TOLD PETITIONER THAT THE "CONCURRENT TIME" PROVISION OF HIS PLEA AGREEMENT, AND/OR PETITIONER'S "MULTIJURISDICTION" STATUS (BECAUSE PETITIONER WOULD BE SERVING BOTH STATE AND FEDERAL SENTENCES) WOULD "ENSURE" PETITIONER'S "RELEASE" FROM INCARCERATION AT THE EXPIRATION OF PETITIONER'S FEDERAL SENTENCE. (BECAUSE MULTIJURISDICTION PRISONERS DO NOT HAVE TO OVERCOME THE BURDEN/PREREQUISITE OF BEING FOUND SUITABLE FOR PAROLE BEFORE THE BOARD (B.P.H.) WILL EVEN PERFORM THE INDEPENDANT FUNCTION OF SETTING A PRISONERS PRESCRIBED TERM OF PUNISHMENT WHEN DISPOSING OF A MULTIJURISDICTION PRISONERS INDETERMINATE TERM THE BOARD (B.P.H.) HAS ONLY TWO CHOICES, EITHER DISCHARGE THE

CALIFORNIA SENTENCE AT THEIR M.E.P.D.; OR HAVE THEIR TERMS SET AT THEIR INITIAL PAROLE HEARING, (SEE C.C.R. TITLE 15 § 2370 (d)(1) AND (d)(2).) [SEE California Code of Regulations for multijurisdiction prisoners incorporated herein and attached hereto as exhibit 9)

(NOTE: IT SHOULD BE NOTED THAT LARRY AINBINDER CALCULATED PETITIONER'S TIME AT 19 YEARS, JIM POKORNY AT 20 YEARS, AND EVAN MILLER AT 20 YEARS 4-8 MONTHS.)

DEPUTY DISTRICT ATTORNEY'S REPRESENTATION OF HOW THE STATES SENTENCE WOULD EXPIRE

ON 5-9-90, IN SAN DIEGO COUNTY SUPERIOR COURT, BY DEPUTY DISTRICT ATTORNEY EVAN MILLER, AND WITNESSED AND AFFIRMED AS TRUE BY LARRY AINBINDER (ESQ.), PETITIONER'S COURT APPOINTED COUNSEL, EXPLAINED HOW PETITIONER WOULD BE FREE FROM PRISON AT THE EXPIRATION OF HIS FEDERAL SENTENCE. HERE IS HOW THE PROCESS WAS EXPLAINED TO PETITIONER (D.D.A.) MR. MILLER SAID:

1. IN ABOUT 3 YEARS YOU WILL GET A PHONE CALL FROM CALIFORNIA AUTHORITIES AT WHAT EVER INSTITUTION YOU MAY BE AT (WE PRESUMED LOMPOC OR LEAVENWORTH), BASICALLY TELLING YOU THAT YOU CAN EARN POST CONVICTION CREDIT OF 4 MONTHS OFF EACH YEAR IN CUSTODY. (PETITIONER DID NOT KNOW THIS WOULD BE A MULTI JURISDICTION PRISONER DOCUMENTATION HEARING PURSUANT TO CCR TITLE 15 § 2369).

2. IN ABOUT 15 YEARS, YOU WILL GET ANOTHER PHONE CALL FROM CALIFORNIA PRISON OFFICIALS AT THE PRISON, TELLING YOU THAT YOU'LL BE SCHEDULED FOR A MULTIJURISDICTION PRISONER INITIAL PAROLE HEARING. PETITIONER WAS TOLD THE PAROLING AUTHORITIES WOULD CALCULATE HIS EARNED POST CONVICTION CREDITS AND APPLY THE CREDITS

Towards Petitioner's Term. (Petitioner was not told this was the hearing where the Board would either:

A) Discharge Petitioner's California sentence at the M.G.P.D. Pursuant to C.C.R. Title 15 § 2370 (d)(1), or

B.) Set Petitioner's (indeterminate) California term, pursuant To C.C.R. Title 15 § 2370 (d) (2).

3. D.D.A. Miller also said that "between 6 to 18 months later You'll receive documentation showing that your California Sentence has expired."

Neither The D.D.A., nor Petitioner's Counsel, explained to Petitioner that the law was based upon California Code of Regulations (C.C.R.) Title 15, Division 2, Article 10, found in Sections 2368-2370. They did not teach Petitioner enough technical information to ensure Petitioner truly comprehended the Specific Portion of applicable law to effectuate our agreement.

Presumably because had Petitioner been housed in a Federal institution as assumed by the expressed provision of the plea Bargain, Petitioner's Multijurisdiction prisoner Status would have been Self evident.

Thus, as a "No brainer" the Paroling authorities would have initiated the appropriate multijurisdiction prisoner proceedings, and in Due Course, Petitioner would have had his Term Set, applicable credits applied to his proportionate term and received his release date That undoubtedly would have expired by 2007, and Certainly before Petitioner's federal Sentence expired, as the D.D.A. proclaimed.

Petitioner asserts that regaurdless of where petitioner sleeps, his multijurisdiction status remains. (in this case)

Petitioner reasons that because he happends to be housed in a State Prison, the Board or Department failed to recognize or initiate the

The multijurisdiction prisoner proceedings, and consequently the proposed decision denying Petitioner parole for five (5) years, was not only in Violation of the Boards regulation, but also, Violates the "concurrent time" provision of the plea agreement by subjecting Petitioner to a longer Period of incarceration (22 years) than The federal Sentence.

Furthermore, twenty two years of incarceration with applicable credits exceeds any term Petitioner could receive in the first degree murder matrix that he believed he bargained for, or expected to receive. And the illogical use or abuse of the word "parole" led Petitioner to a parallel universe of the unpublished Californiaese or Bureaucratese, then to discover the artifice of e.g. Post conviction credit, Parole, 25 years to Life, indeterminate Sentences etc..

Back on point, regardless of petitioner's understanding of the Specific applicable laws or regulations that were supposed to be used to dispose of Petitioner's California Sentence, and ultimately effectuate the true agreement of petitioner serving 20 years in custody to dispose of all cases in both jurisdictions, Petitioner is entitled to the multijurisdiction prisoner Status, and the proceedings and decisions flowing therefrom to achieve the ends, and honor the Promises of the Prosecutor: That Petitioner would not serve one day on the murder because the States Term would expire before petitioner's federal sentence; and Petitioner would be free at the expiration of Petitioner's Federal Sentence, because any time Petitioner received in State court would be concurrent to any time Petitioner received in federal court; and Petitioner would serve his sentences in federal custody.

Petitioner asserts, common sense would prove that these promises were designed to effectuate the Settlement or agreement and were undoubtedly used to obtain Petitioner's Waiver of his State and Federal Constitutional rights. [See exhibit 2]

PETITIONER'S COUNSEL, LARRY AINBINDER AFFIRMED THE REPRESENTATIONS AND PETITIONER ACCEPTED THESE REPRESENTATIONS AS TRUE, AND IN GOOD FAITH AGREED TO PLEAD GUILTY. THUS, REPRESENTING THE CONCOMMITANT OBLIGATIONS FLOWING THEREFROM THE ACTS OF WAIVEING MY RIGHTS AND PLEADING GUILTY.

## REPRESENTATION OF HON. JUDGE JESUS RODRIGUEZ

ON 5-9-1990, IN SAN DIEGO COUNTY SUPERIOR COURT OF CALIFORNIA, WITNESSED BY LARRY AINBINDER AND D.D.A. EVAN MILLER, SUPERIOR COURT JUDGE HON. JESUS RODRIGUEZ TOLD PETITIONER THAT HE APPROVED THE PLEA AGREEMENTS TERMS AND CONDITIONS AND TOLD PETITIONER THAT HE WOULD BE ELIGIBLE FOR PAROLE FOR UP TO 60 MONTHS.
[Note: The Honorable Judge Jesus Rodriguez, knew Petitioner expected to serve 20 years, stated on the record.]

## PERFORMANCE

AS REQUIRED BY THE PLEA AGREEMENT, PETITIONER PLEAD GUILTY IN BOTH STATE AND FEDERAL COURTS, WITH THE CLEAR UNDERSTANDING AND EXPECTATION OF BEING RELEASED FROM PRISON AT THE EXPIRATION OF PETITIONER'S FEDERAL SENTENCE.

PETITIONER CONTENDS THAT THE ABOVE MENTIONED PROMISES, INDUCEMENTS, AND REPRESENTATIONS OF THE PROSECUTOR AND JUDGE THAT WERE RELIED UPON IN GOOD FAITH AND UNDOUBTEDLY USED AS INDUCEMENTS FOR THE PURPOSE OF GETTING PETITIONER TO WAIVE HIS CONSTITUTIONAL RIGHTS AND PLEADING GUILTY. THOSE PROMISES BECAME THE CONCOMMITANT OBLIGATIONS THAT THE STATE IS NOW BOUND TO HONOR. JUST AS PETITIONER WAS BOUND, WHEN THE STATE REFUSED TO ALLOW

PETITIONER TO WITHDRAW HIS PLEA OF GUILTY BEFORE SENTENCING, THE STATE TOO, MUST NOW BE BOUND TO SPECIFIC PERFORMANCE OF THE TERMS PROMISES ETC. THAT THE STATE MADE THEN.

Material Issues.
UNACCEPTABLE, UNFULFILLED PROMISES OF THE PROSECUTOR

PETITIONER IS UNLAWFULLY CONFINED BECAUSE OF the FOLLOWING UNFULFILLED PROMISES, FRUSTRATE PETITIONER'S PURPOSE OF PLEADING GUILTY. THUS HE WOULD NOT HAVE PLEAD GUILTY AND THE CONSENTED CONVICTION IS VOID, BECAUSE PETITIONER NOW RESCINDS HIS CONSENT, FOR BREACH OF CONTRACT, or demands Specific Performance.

1. THAT PETITIONER WOULD NOT SERVE ONE DAY ON THE MURDER BECAUSE THE STATES SENTENCE WOULD EXPIRE BEFORE PETITIONER'S FEDERAL SENTENCE. (ACCORDING TO PRISON OFFICIALS PETITIONER HAS A LIFE SENTENCE.) (Material Issue)

CONCURRENT TIME PROVISION (Material Issue)

2. THAT ANY TIME PETITIONER WOULD RECEIVE IN STATE COURT WOULD BE CONCURRENT TO ANY TIME PETITIONER RECEIVED IN FEDERAL COURT. PETITIONER'S FEDERAL SENTENCE IS ANTICIPATEDLY EXPECTED TO EXPIRE ON OR ABOUT 1-27-2008. IF PETITIONER'S STATE SENTENCE HAS NOT EXPIRED BY THAT TIME, THEN THE STATES SENTENCE IS NO LONGER BEING RUN CONCURRENT TO PETITIONER'S FEDERAL SENTENCE. THUS, VIOLATING THE CONCURRENT TIME PROVISION OF PETITIONER'S PLEA BARGAIN. (factual predicate)

MULTIJURISDICTION PRISONER STATUS (material issue)

2. (B) PETITIONER'S MULTIJURISDICTION PRISONER STATUS IS BEING IGNORED BY PRISON OFFICIALS WHO HAVE FAILED TO CONDUCT A MULTIJURISDICTION PRISONER INITIAL PAROLE HEARING, WHERE THE PANEL WOULD HAVE EITHER (1) DISCHARGED PETITIONER'S CALIFORNIA SENTENCE OR (2) SET PETITIONER'S PRESCRIBED TERM (26-28 YEARS)

WITHIN CALIFORNIA'S MURDER MATRIX FOR FIRST DEGREE MURDER. PLUS AFTER APPLYING POST CONVICTION CREDITS OF 33.33%, WOULD HAVE RESULTED IN A RELEASE DATE OF JANUARY 27, 2008, AT THE LATEST.

INSTEAD THE AGENCIES PRETEND PETITIONER HAS A LIFE TERM, AND PRETEND HE SEEKS PAROLE AS A LIFE PRISONER, WHICH IS NOT TRUE, PETITIONER CAN NOT EVEN RECEIVE A LIFE TERM FOR HIS PERSONAL CULPABILITY. PETITIONER'S PROVISIONS WERE TO BE USED TO EFFECTUATE THE 20 YEARS IN CUSTODY UNDERLYING THE TRUE PLEA AGREEMENT.

<u>BOTH STATE AND FEDERAL SENTENCES SERVED IN FEDERAL CUSTODY</u>

3. THAT PETITIONER'S STATE SENTENCE WOULD BE SERVED IN FEDERAL CUSTODY. THEY ARE IN VIOLATION OF THIS BECAUSE STATE OFFICIALS IMPLICITY REFUSE TO ALLOW PETITIONER TO SERVE HIS SENTENCES IN FEDERAL CUSTODY BY NOT RESPONDING TO HIS REQUESTS TO RETURN TO A FEDERAL INSTITUTION. (Material Issue)

<u>PRE-AND-POST CONVICTION CREDIT (material Issue)</u>

4. D.D.A. MILLER AND LARRY AINBINDER PROMISED PETITIONER WOULD EARN CREDITS THAT WOULD REDUCE HIS TIME IN CUSTODY. SPECIFICALLY PENAL CODE §§ 4019 AND 2931.

ACCORDING TO C.D.C.R. OR B.P.H., THE CREDITS ARE USED TO REDUCE PETITIONER'S ALLEGED MINIMUM ELIGIBLE PAROLE DATE THIS INTERPRETATION OF THE STATUTES CONTRAVENE BOTH THE LEGISLATIVE INTENT AND PETITIONER'S PLEA AGREEMENT.

<u>PAROLE (material Issue)</u>

5. PAROLE WAS OFFERED AND ACCEPTED AS EARLY RELEASE UPON THE TERM, SUCH AS FEDERAL LAW DEFINES. FURTHER, PAROLE WAS SAID TO BE UP TO 60 MONTHS.

THIS PROVISION (AS ALL THE OTHERS TOO) WAS APPROVED BY

CALIFORNIA STATE SUPERIOR COURT JUDGE, THE HONORABLE JESUS RODRIGUEZ.

HOWEVER, ACCORDING TO C.D.C.R. OR B.P.H., NOT ONLY IS PAROLE SERVED AFTER THE TERM (IN VIOLATION OF FEDERAL LAW), PETITIONER IS TOLD THAT HE WILL BE SUBJECT TO PAROLE AND THE CONDITIONS THE PAROLING AUTHORITY MAY DEEM APPROPRIATE, FOR THE REMAINDER OF PETITIONER'S LIFE IN ACCORDANCE WITH PENAL CODE § 3000.1.

THUS, NOT ONLY WAS PETITIONER PREJUDICIALLY MISADVISED BY HIS LAWYER, D.D.A. EVAN MILLER, BUT THE TRIAL COURT AS WELL. (CALIFORNIA HIGHER COURTS HAVE HELD THIS MISADVISEMENT WAS PLAIN AND OR REVERSABLE ERROR).

## OMISSIONS (Material Issue)

PETITIONER WAS NOT TOLD, INTER ALIA, THAT HE WOULD BE SENTENCED TO AN INDETERMINATE SENTENCE; MORE IMPORTANTLY THAT HE WOULD HAVE TO BE FOUND SUITABLE FOR PAROLE AS A LIFE PRISONER, IN ORDER TO RECEIVE HIS (PRESUMABLY) BARGAINED FOR TERM; CREDITS; OR RELEASE. THUS, IN EFFECT PREVENTING PETITIONER'S PERFORMANCE OF HIS FULFILLED OBLIGATION.

HE WAS NOT TOLD THAT HIS STATE SENTENCE COULD BE LONGER THAN HIS FEDERAL SENTENCE, NOR THAT HE MAY NOT BE ABLE TO SERVE HIS TIME IN FEDERAL CUSTODY.

HE WAS NOT TOLD THAT THE STATE WAS GOING TO EXPLOIT THE AMBIGUITIES OF "25 TO LIFE"; AND "PAROLE"; "CONCURRENT TIME" THAT IT CREATED, IN THE CHANGE OF PLEA INSTRUMENT / CONTRACT.

Petitioner should not now be Subjected to the prejudicial Omissions.

## PREJUDICE

PETITIONER WOULD NOT HAVE PLEAD GUILTY HAD HE KNOWN THAT THE STATE WOULD NOT FULFILL ITS PROMISES AND CONCOMMITANT OBLIGATIONS FLOWING THEREFROM, OR PETITIONER'S CONDITIONS FOR PLEADING GUILTY.

HE WOULD NOT HAVE EVER ACCEPTED THE PREREQUISITE OF BEING FOUND SUITABLE FOR PAROLE, IN ORDER TO OBTAIN HIS TERM, NOR BE SUBJECT TO PAROLE (OR CONDITIONAL FREEDOM) FOR THE REMAINDER OF HIS LIFE! THUS, UNKNOWING AND INVOLUNTARY, AND DEFINATELY FRUSTRATING THE PURPOSE FOR PLEADING GUILTY.

## PETITIONER'S REASONABLE EXPECTATIONS

PETITIONER'S REASONABLE EXPECTATION IS TO BE RELEASED FROM CUSTODY AT THE EXPIRATION OF HIS FEDERAL SENTENCE BECAUSE:

PETITIONER'S STATE TERM, WITH APPLICABLE POST CONVICTION CREDITS HAS EXPIRED ON 9-1-2005. (12-1-07 tops) [See exhibit 12]

PETITIONER WOULD RECEIVE A TERM (OR SENTENCE) FOUND IN THE MURDER MATRIX, COMMENSURATE WITH THE CIRCUMSTANCES IN HIS PARTICULAR CASE, REGAURDLESS OF WHETHER HE WAS FOUND SUITABLE FOR PAROLE, or not.

SECOND, THAT THE TERM IMPOSED BY THE COURT OR THE BOARD WOULD BE REDUCED BY POST CONVICTION CREDIT BY 33%.

THIRD, THAT HIS PERIOD OF PAROLE, WHEATHER EARLY RELEASE OR PENAL CONSEQUENCE, COULD NOT EXCEED 60 MONTHS, or waived.

FOURTH, THAT WHATEVER THE STATES TERM (PETITIONER'S OBLIGATION TO THE STATE) WILL BE CONCURRENT TO PETITIONER'S FEDERAL SENTENCE OF 272 MONTHS, LESS 15% OR 40.8 MONTHS FOR POST CONVICTION CREDIT, FOR A TOTAL TERM 231.2 MONTHS TO SERVE. (231.2 MONTHS IS EQUAL TO 19 YEARS, 3 MONTHS, 6 DAYS, ADD THAT

TO PETITIONER'S DATE OF ARREST, 10-21-1988 EQUALS 1-27-2008.)

FIFTH, THAT PETITIONER IS A MULTIJURISDICTION PRISONER REGUARDLESS OF WHERE HE MAY BE HOUSED.

SIXTH, THAT ANYTIME PETITIONER SERVES WOULD BE IN FEDERAL CUSTODY.

## EQUAL PROTECTION

OTHER CRIMINAL DEFENDANTS HAVE BEEN ABLE TO ENFORCE THE TERMS, AND INDUCEMENTS AND CONCOMMITANT OBLIGATIONS FLOWING FROM THEIR PLEA BARGAINS; AND OTHER MULTIJURISDICTION INMATES SERVING INDETERMINATE TERMS HAVE HAD THEIR RESPECTIVE PRISON SENTENCES DISCHARGED AT THEIR M.E.P.D. OR THEIR TERM SET; PROPORTIONATE TO THEIR CONVICTED OFFENSE WITHIN THE APPROPIATE MATRIX; AND RECEIVED THEIR POST CONVICTION CREDIT; IN ACCORDANCE WITH CLEARLY ESTABLISHED DEPARTMENTAL REGULATIONS. (TITLE 15 §§ 2270; 2404; AND 2410, RESPECTIVELY)

REGUARDLESS OF PETITIONER'S INITIAL MISUNDERSTANDING OF HIS SENTENCE, HE IS ENTITLE TO RELIEF PERSUANT TO HIS STATUS.

THIS IS A STATE CREATED LIBERTY INTREST PETITIONER IS ENTITLED TO. relief.

## CONCLUSSION

BASED UPON THE AFOREMENTIONED IRREFUTED FACTS, PETITIONER HAS DEMONSTRATED THAT HE IS ILLEGALLY CONFINED AND THUS ENTITLED TO RELIEF.

PETITIONER WILL SUFFER IRREPARABLE INJURY IF HE IS SUBJECTED TO CONTINUED CONFINEMENT RESULTING FROM THE STATES FAILURE TO ADHERE TO THE TERMS AND OBLIGATIONS FLOWING FROM THE PROMISES THAT INDUCED Petitioner's guilty Plea(s), or his U.S. Constitutional Rights.

THEREFORE, THE PETITIONER RESPECTFULLY PRAYS THIS COURT:

A. TAKE JUDICIAL NOTICE OF THE RECORDS AND EXHIBITS IN BOTH PEOPLE V. WALTERS, SAN DIEGO SUPERIOR COURT NO. CR-103749, AND UNITED STATES OF AMERICA V. MARTIN EDWARD WALTERS IN CASE # 88 0769 G-CRIMINAL IN THE UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF CALIFORNIA.

B. ISSUE THE WRIT OF HABEAS CORPUS, AND BRING PETITIONER TO THIS HONORABLE COURT; VACATE THE JUDGEMENTS, AND OR RENDER ANY APPROPIATE JUDGEMENT.

C. ORDER C.D.C.R. TO RELEASE PETITIONER TO THE CUSTODY OF THE FEDERAL GOVERNMENT, AND CONDUCT A MULTI JURISDICTION PRISONER INITIAL PAROLE HEARING WITH APPROPIATE DECISION, DESIGNED TO EFFECTUATE THE PLEA AGREEMENT.

D. GRANT SUCH OTHER AND FURTHER RELIEF AS THE COURT DEEMS JUST AND PROPER IN THE INTREST OF JUSTICE.

BACKGROUND (PROCEDURAL FACTS)

ON 10-21-88, PETITIONER WAS ARRESTED BY FEDERAL AUTHORITIES, CHARGED WITH VARIOUS CRIMINAL OFFENSES IN CASE # 88-0769-G-CRIMINAL. PETITIONER WAS HELD WITHOUT BAIL IN METROPOLITIN CORRECTIONAL CENTER (M.C.C.).

ON OR ABOUT 12-1-88, PETITIONER WAS CHARGED WITH VARIOUS CRIMINAL OFFENSES, INCLUDING MURDER, IN CALIFORNIA SUPERIOR COURT IN SAN DIEGO COUNTY, IN CASE # 103749.

JURISDICTION

SHOULD IT PLEASE THE COURT PETITIONER GRANTS THIS COURT JURISDICTION. THIS COURT HAS ORIGINAL SUBJECT MATTER AND PERSONAM JURISDICTION, OVER PETITIONER AND RESPONDENT. PETITIONER IS A CITIZEN OF THE UNITED STATES AND HAS PREVIOUSLY SWORN ALLIEGENCE TO THE

UNITED STATES. PETITIONER IS NOT A RESIDENT CITIZEN OF CALIFORNIA. PETITIONER IS SERVING A 272 MONTH SENTENCE IMPOSED BY THIS COURT, CURRENTLY. (ANTICIPATED RELEASE DATE 1-27-08)

PARTIES

PETITIONER WAS REPRESENTED BY JAMES POKORNY (ESQ.) ON THE FEDERAL CASE, AND LARRY AINBINDER (ESQ.) IN THE STATE CASE.

D. THOMAS FERRARO, ASSITANT UNITED STATES ATTORNEY (A.U.S.A.) REPRESENTED THE GOVERNMENT, AND EVAN MILLER, DEPUTY DISTRICT ATTORNEY (D.D.A.), REPRESENTED THE STATE OF CALIFORNIA, Martin E. Walters, Petitioner, real party of intrest. [A.U.S.A. is a witness too.]

PRESIDING JUDGES

IN THE UNITED STATES DISTRICT COURT, HONORABLE EARL B. GILLIAM IN PETITIONERS FEDERAL CASE, AND HONORABLE JESUS RODRIGUEZ, IN THE CALIFORNIA SUPERIOR COURT, IN PETITIONERS STATE CASE.

[NOTE: A.U.S.A. D.T. Ferraro, J. Pokorny, and Hon. E.B. Gilliam, knew the deal(s)]

PLEA NEGOTIATIONS

ON OR ABOUT MAY 2 1990, AFTER NUMEROUS REJECTED PLEA OFFERS, AND REJECTED COUNTER OFFERS, THE PROSECUTIONS OFFERED PETITIONER A "PACKAGE DEAL" PLEA BARGAINS, VIA PETITIONERS COUNSEL'S, THAT BOTH PROSECUTIONS WOULD BE SATISFIED IF PETITIONER WOULD SERVE 20 YEARS IN CUSTODY.

ALTHOUGH PETITIONER REJECTED THE OFFER'S, PETITIONER WANTED TO POINT OUT THAT WE NEGOTIATED FOR A "BOTTOM LINE" (NOT EFFECTUATING CHARGES) i.e. HOW MUCH TIME PETITIONER WAS WILLING TO SERVE FOR ALL HIS CRIMES IN BOTH JURISDICTIONS, NOT I'M WILLING TO PLEAD GUILTY TO THIS COUNT IF YOUR WILLING TO DISMISS THAT COUNT OR CASE.

THUS, ON 5-8-90 AND 5-9-90, PETITIONER ACCEPTED THE PROSECUTIONS OFFERS OF SERVING 20 YEARS IN CUSTODY, (THAT IS THE TRUE MEETING OF THE MINDS "AGREEMENT," THE COMPROMISE) IF THE PROSECUTIONS AGREED TO PETITIONERS CONDITIONS (SUPRA).

PETITIONER DID NOT DESIGN THE EFFECTUATING CHARGES OR THE EFFECTUATING INSTRUMENT USED TO EFFECTUATE OUR "20 YEARS IN CUSTODY" UNDERLYING AND TRUE AGREEMENT.

PETITIONER DID NOT DESIGN THE EFFECTUATING CHARGES, HE DID NOT DESIGN THE EFFECTUATING INSTRUMENT, THE PROSECUTIONS DID THAT, PETITIONER RELIED UPON THEIR (THE GOVERNMENTS) REPRESENTATIONS, HONOR AND INTEGRITY. (THEIR 'WORD' IF YOU WILL.)

APPROXIMATE CAUSE OF ACTION; INITIAL PAROLE HEARING

ON 2-24-05, PETITIONER SHOULD HAVE APPEARED FOR A "MULTIJURISDICTION PRISONER INITIAL PAROLE HEARING" (TITLE 15 §§ 2368, 2370), INSTEAD HE APPEARED FOR A "LIFE PRISONER PAROLE CONSIDERATION HEARING".

AT THIS HEARING CHAIRED BY MARGARITA PEREZ, AND DEPUTY COMMISIONER DANIELLE LOPEZ, WHO SHOULD HAVE EITHER DISCHARGED PETITIONER'S SENTENCE OR SET PETITIONER'S TERM (TITLE 15 § 2370 (d)(1), OR (d)(2).), DECIDED PETITIONER WAS UNSUITABLE FOR EARLY RELEASE VIA PAROLE. THEY ALSO (PROPOSED) DECIDED PETITIONER WOULD NOT BE SUITABLE FOR PAROLE FOR FIVE YEARS, AND SUBMITTED THE PROPOSED DECISION TO THE BOARD (B.P.H.) FOR REVIEW.

THE PANEL ADVISED PETITIONER THAT THE PROPOSED DECISION WOULD NOT BE FINAL UNTIL THE PROPOSED DECISION WAS REVIEWED.

TO PETITIONER'S KNOWLEDGE THE PROPOSED DECISION WOULD BE DISAPPROVED, VACATED AND SOME APPROPIATE DECISION WOULD BE MADE.

Petitioner has not received any documentation claiming the proposed decision has ever been reviewed, as required.

ON OR ABOUT SEPTEMBER 3, 2005, PETITIONER SUBMITTED AN APPEAL PER TITLE 15 § 2050, AS A MULTIJURISDICTIONAL PRISONER, TO THE P AND CSD INTERSTATE UNIT, AND THE C AND PR, PETITIONER DID NOT KNOW THE APPEALS FOR MULTIJURISDICTIONAL PRISONERS WERE REPEALED. (MAINLY, BECAUSE THE PRISON LAW LIBRARY DID NOT HAVE THE UPDATED DIVISION 2 TITLE 15, AND SUPPLIED)

ON OR ABOUT OCT. 29, 2005, PETITIONER WAS TRANSFERRED TO CALIFORNIA STATE PRISON IN SOLANO COUNTY. * PETITIONER WITH THE OUTDATED TITLE 15 THAT ALLOWED PRISONER'S TO APPEAL BOARD DECISIONS, PLUS THEY SUPPLIED PETITIONER WITH THE APPEAL FORMS, also, appealed again.

PETITIONER KNEW SOMETHING WAS WRONG, ONLY HE DID NOT KNOW EXACTLY WHAT IT (IS) WAS, SO WITH HELP, HE FILED A PETITION FOR Writ HABEAS CORPUS IN THE CALIFORNIA SUPERIOR COURT IN AND FOR THE COUNTY OF SAN DIEGO, ON 4-18-06, ON THE GROUND THAT, CALIFORNIA WAS VIOLATING THE TERMS OF PETITIONER'S PLEA AGREEMENT. THE PETITION WAS DENIED ON 6-21-06. [see exhibit 11 incorporated herein.]

OVER THE NEXT FEW MONTHS PETITIONER ATTEMPTED TO COMPLY WITH THE SUPERIOR COURTS ORDER, POINTING OUT THE PETITIONS DEFICENCIES SCOURING BOOKS, TRYING TO GO TO THE LAW LIBRARY EVERY CHANCE POSSIBLE SEARCHING FOR ANSWERS, AND DISCOVERING THE PARADOXES OF OF CALIFORNIA'S LAWS AND FEDERAL LAW AND BEING CONFUSED BY THEM (e.g. PAROLE, CREDITS, I.S.L., D.S.L., ETC.) ONLY TO CONCLUDE THAT CALIFORNIA IS OPERATING AN UNCONSTITUTIONALLY VAGUE INDETERMINATE SENTENCING STATUTE, WITHOUT THE MECHANICAL OPERATIONAL STATUTES REQUIRED TO VALIDLY OPERATE AN INDETERMINATE SENTENCING "SCHEME".)

ON 2-13-07, PETITIONER SUBMITTED A NEW PETITION FOR WRIT OF HABEAS CORPUS, IN THE APPROPIATE APPELLANT COURT ON THE GROUND THAT CALIFORNIA IS VIOLATING THE TERMS OF PETITIONER'S PLEA

AGREEMENT AND THE STATUTE PENAL CODE SECTION 190 IS UNCONSTITUTIONALLY VAGUE, ESSENTIALLY WITH FACTS ALLEGING CALIFORNIA'S PAROLE VIOLATES THE UNITED STATES SUPREMACY CLAUSE AND CALIFORNIA INCREASED PETITIONER'S FINE BY INCREASING HIS COURT IMPOSED RESTITUTION BY 10%, IN VIOLATION OF THE UNITED STATES EX POST FACTO / BILL OF ATTAINDER CLAUSES. PETITIONER WAS DENIED ON 5-24-07. [see exhibit 11 ]

PETITIONER SUBMITTED NEW APPEALS (ADMINISTRATIVE) IN REGUARDS TO POST CONVICTION CREDIT, RELEASE ON HIS TERM, REQUEST TO SERVE THE REMAINDER OF HIS TERMS IN FEDERAL CUSTODY, AND THE NOW IMPOSED LIFE TIME OF PAROLE WHEN PETITIONER IS RELEASED: NO RESPONSE; or refer Petitioner to Court.

THESE ISSUES ARE NOT BEING ADDRESSED, THE FEDERAL CUSTODY AND PAROLE PERIOD, ARE PART OF PETITIONER'S PLEA AGREEMENT AND ARE BEING VIOLATED TOO. (SEE PLEA AGREEMENT AND LEGAL STATUS SHEET EXHIBIT 2-A).

PETITIONER SUBMITTED A PETITIONER FOR REVIEW TO THE CALIFORNIA SUPREME COURT ABOUT 6-24-2007, PRESENTING ALL FOUR ISSUES, AND WAS DENIED ON 8-15-2007.

THUS, EXHAUSTING ALL CALIFORNIA'S JUDICIAL REMEDIES KNOWN TO PETITIONER. [see exhibit 11 incorporated herein.]

PETITIONER DOES NOT UNDERSTAND WHAT IS SO HARD TO UNDERSTAND PETITIONER WAS PROMISED HE WOULD NOT SERVE ONE DAY ON THE MURDER, BY D.D.A. MILLER AND COUNSEL, ON (5-8-90 AND) 5-9-90, IN SAN DIEGO COUNTY COURT, PRIOR TO ENTERING HIS GUILTY PLEAS, [H] E RELIED ON THAT, INTER ALIA, AND PLEADED GUILTY.

NOW C.D.C.R. AND B.P.H. TELL HIM HE HAS LIFE, AND THATS UNACCEPTABLE; LIFE TIME OF PAROLE WHEN PROMISED 5 YEARS (MAX)

PAROLE; AND IMPLICITLY IGNORE PETITIONER HAS MULTIJURISDICTION PRISONER STATUS, AND THE CONCURRENT TIME PROVISION THAT ENSURED PETITIONER WOULD BE FREE AT THE EXPIRATION OF HIS FEDERAL SENTENCE. NOW THIS WILL NOT HAPPEN, AND THAT IS UNACCEPTABLE, AND THE CAUSE OF THIS ACTION. The factual predicate for Concurrent time violation is on 1-28-2008, When fed. time expires.

PRAYER FOR RELIEF

1. PETITIONER RESPECTFULLY PRAYS THAT THIS COURT WILL ISSUE THE WRIT OF HABEAS CORPUS AND BRING PETITIONER'S BODY TO COURT.

2. DECLARE THE RIGHTS OF THE PARTIES.

3. SETTLE THE AMBIGUOS TERMS OF THE PLEA AGREEMENT.

4. ALLOW PETITIONER TO ENFORCE ALL THE TERMS, PROVISIONS, CONDITIONS ETC. OF HIS PLEA AGREEMENT. Specific Performance.

5. ORDER RESPONDENTS TO TRANSFER PETITIONER'S PHYSICAL BODY TO THE FEDERAL JURISDICTION, BECAUSE APPARENTLY THE STATE Will NOT CONDUCT THE MULTIJURISDICTION PRISONER HEARING REQUIRED TO RENDER A DECISION THAT WOULD EFFECTUATE THE PLEA AGREEMENT, AND PETITIONER HAS THIS PROVISION IN HIS PLEA AGREEMENT. Plus, he would not even be housed in the State prison had it not been for the fact Petitioner's father was a federal Probation Officer, and grace of the Honorable Judge Earl B. Gilliam.

6. Grant petitioner any relief he may be entitled to;

7. Order respondent to release Petitioner unconditionally.

8. Order an evidentiary hearing, and allow Petitioner to call witnesses to develop the facts.

(b) **GROUND TWO**: The Statute Under Which Petitioner was Convicted or Sentenced Under is Unconstitutionally Vague in Violation of the Due Process and or Equal Protection Clauses of the U.S. Constitution

**Supporting FACTS** (state *briefly* without citing cases or law): Petitioner contends that California is operating an Unconstitutionall invalid indeterminate Sentencing Statute, Cal. Penal Code Section 190, in Violation of the laws treaties and or Constitution of the United States because the language 25 years to life is to Vague under the Determinate Sentencing Law; Penal Code Section 190.4 provides for a determinate Sentence of 25 years for first degree murder; the Voter initiative nor the Statute itself claim the statute would be an indeterminate Sentence; California does not have the mechanical or operational Statutes to Validly operate and indeterminate Sentencing Scheme (as It had under the former Indeterminate Sentencing Law.); Transmogrifies Post conviction credit Statute and contravenes Legislative intent (P.C. §2930 et. seq.); and finally reduces other Statutes to Superflous. Based upon the above mentioned conclusions Petitioner respectfully intends to prove that the Language 25 years to Life (and 15 years to life) can not logically mean an indeterminate Sentence or Validly be operated as such.

Petitioner's Grounds for relief are not based on any misunderstanding of law.

Effective July 1, 1977 California's Indeterminate Sentencing Law, (I.S.L.) was repealed (represented by former P.C. §1168) and simultaneously the determinate Sentencing Law (D.S.L.) was enacted. During the transformation of California's Sentencing Schemes, the Legislature repealed the Key operational or Machanical Statutes that were utilized to operate a Valid and often challenged indeterminate Sentenceing Scheme, and enacted the Operational Mechanical Statutes designed to effectuate Determinate Sentence scheme. (i.e. no Ratio Legis)

**Did you raise GROUND TWO in the California Supreme Court?**

☒ Yes ☐ No.

(1) Nature of proceeding: Petition for review

(2) Case number: S 153765

(3) Result: Denied; See Exhibit

GRound 2, Supporting facts Continued.

Petitioner asserts that the Key I.S.L. Statutes That were repealed, inter alia, P.C. §§ 3020-25, were not only used to authorize the Executive Branch, the ability to determine the term a prisoner may receive between the minimum and maximum sentence imposed by law but also used to prevent Constitutional attacks upon the Validity of such a Scheme. Thus, on July 1 1977, no State Agency was statutorily authorized to fix a prisoner's term between the Minimum and Maximum terms provided by law. The Legislature enacted the new P.C. §§ 1168(b) and 1170.2 for the specific intent of being applied to prisoner's whose crimes were committed prior To July 1 1977, and further expressed its intent by enacting and amending the New P.C. § 3065. Thus, The Legislative intent was not to apply P.C. § 1168(b) to crimes committed after July 1 1977.

Further, Penal Code Section 671, the former law that required Judges to consider indeterminately Sentenced persons to be "Persons Sentenced to the maximum term" or "had the legal effect of life." was also repealed. Thus, there after, Judges could no longer Consider indeterminately Sentenced prisoner's as having a Life term. When Penal code Section 190 et. seq., was enacted in November of 1978, Surely the Legislature knew these facts.

Furthermore, the former law Statutes that provided for post conviction Credit for indeterminate Sentenced prisoners was also repealed, Penal Code §§ 2920, 2923-2926.

Finally, The former Sentencing rules of the Superior Court, for the Indeterminate Sentencing law (Division I-A) were abolished Prior to Jan. 2, 1978.

Is their any doubt that the Legislature had absolutely no intention of operating or enacting a new indeterminate Sentence after July 1 1977. Petitioner is NOT challenging the indeterminate sentencing law that operated from 1917 to 1977, That I.S.L. is abolished, P.C.§190 et. seq. is not of that era.

Determinate Sentencing Law

On July 1 1977, the Legislature enacted sweeping reform, and along with the intent, they enacted numerous Statutes to effectuate their intent. Although, Penal Code Section 1170 represents the main thrust of the D.S.L. Penal Code 1168(b) was created for a specific intent, in other words 1168(b) enacted in 1977, does embody the Legislative intent of former P.C.§1168. (Indeterminate sentence Law/Rehabilitation)

While former P.C. §1168, represented the intent of the 1917 Legislature the desire to impose indeterminate sentences, P.C.§1168(b) was intended to usher persons sentenced under former I.S.L., because they committed crimes under former law, or before July 1 1977, into the ambit of Penal Code § 1170.2, with the specific intent that the Authority would promptly fix the prisoner's (Indeterminte Sentenced) term, within the proportionate range. Presumably to meet the ends of the Legislative expression in Penal Code § 3065 enacted with the D.S.L..

Any doubt should be resolved when examinging the Legislative intent when They created P.C.§1168(b), 1170.2., 3065, etc..

Finally, The Sentencing rules for the Superior Courts, Div. III, adopted by the Judicial Council of California, effective July 1 1977. The only Sentencing rules of court, apply to D.S.L. Sentences and Rule 451, comment by the Counsel clearly indicate

that Indeterminate Sentences will continue for some years, Considering Parole Violaters. (See Advisory Committee comment) Indicating that not even the Judicial Counsel anticipated indeterminate Sentences for crimes committed after July 1 1977, in 1977, nor did they indicate: Penal Code Section 190, Provided for indeterminate Sentences in 1979 or 1980 either.

Penal Code Section 2930 et. Seq., also enacted with the D.S.L., expressly State that the Post Conviction Credit is to apply towards persons Sentenced Persuant to Penal code Section 1170, A.K.A. The D.S.L.. How do these credits reduce an indeterminate term without controverting the Legislative intent?

Petitioner asserts that Federal law requires some agency to be Statutorily empowered to fix terms, if the Courts are to be divested of the role (traditionally) of determining and imposing a proportionate punishment. This can not happen in California's System.

## Proposition 7

Proposition 7, Voter initiative, General election, November, 7 1978, was enacted.

Inside the Voters Pamphlet, the Drafters, undoubtedly knowing I.S.L. and mechanical Statutes were abolished,

On page 32, of the Legistive Analists Analysis, the Analyst clearly describes the Sentencing Court could sentence a defendant to Life (determinate) for first degree

murder; and 15 years (determinate) for second degree murder, then go on to describe a person sentenced for Burglary for six(6) years, and after earning post conviction credit (P.C.§2931) would be eligible for parole after serving four(4) years. Burglary is a determinate sentence and Parole is after the term, even though the language indicates that a person would be considered for parole Why would the Drafters use determinate sentence language and never once use the word "indeterminate" in the initiative or compare the interpreted "indeterminate" sentences with the determinate burglary sentence? Save that answer until you read Penal code Section 190.4.

After the enacting Prop. 7, the Legislature, amended Penal Code Section 190 et. seq.

## Penal Code Sections 190 - 190.5

This Juris Court is well aware that Penal Code Section 190(a)'s language "...a term of 25 years to life", could reasonably be interpreted (and has), under the D.S.L., as (i) an indeterminate Sentence; (ii) a determinate Life Sentence with a 25 year minimum term as argued by the California Attorney General; and (iii) a sentence range of 25 years to life as Petitioner proclaims the Drafters and Penal code Sections 190.4 and 190(a) Paragraph three indicate.

Petitioner contends the California Courts Construction is wrong and unreasonable, and the statute is obviously Vague,

Petitioner contends the statute can not be validly operated as indeterminate sentence, thus The statute is repugnant to the U.S. Constitution.

Penal Code Section 190(a) provides that the punishment for first degree murder is Death, Life without the possibility of parole or a term of 25 years to life. However, the most important language in the concluding sentence "The penalty to be applied shall be found in Sections 190.1, 190.2, 190.3, 190.4, and 190.5" is not being utilized. Petitioner contends this language clearly points to another section to find the applicable penalty.

Penal code Section 190.4(a) Paragraph 5, in pertinent part provides "... the Court (not B.P.H.) shall... impose... a term of 25 years.", for first degree murder where special circumstances were found untrue by virtue of a dead locked Jury. Is this a misprint because the judiciary has already determined that 25 years to life means an indeterminate sentence therefor both the Annalyst and Drafters of Prop. 7, and now the Legislature both made obvious errors, or could it be possible that the phrase 25 years to life means something else?

Assuming for a minute that a judge following the letter of the law in P.C. Section 190.4 did in fact impose a term of 25 years, that person would be eligible for D.S.L., Penal Code Section 2931, Post conviction credit, which would bring us right back to the concluding paragraph in P.C. § 190(a)

<u>Penal Code Section 190(a) paragraph 3</u>

Penal Code Section 190(a) paragraph 3, provides for post conviction credit (Commencing with Section 2930 et. Seq.) for determinate

Sentenced person says in pertinant part "... shall apply to any minimum term of 25 or 15 years...imposed pursuant to this Section...". Petitioner contends or comprehends this language clearly states that 25 and 15 years are the minimum terms, and the 25 year term imposed by the Court in P.C. 190.4, combined with the legislative intent for post conviction credit, and the Drafter's of prop. 7, pg. 32, show Petitioner's claim are either correct or at least provide another ambiguously vague proposition or construction.

Petitioner claims that penal code sections 12, 13, and 3065 also lend support to his contentions, but most importantly P.C. § 1170[4](g) or 1168(a), combined, indicated the Sentencing Court has a duty to determine and impose the term of punishment when left undetermined between certain limits, must be determined by the Court and the Court is able to pass sentence where only a single term is specified. Thus, the misconception that determinate sentences under the D.S.L./P.C§1170 consists of 3 prescribed terms or upper, lower, or middle terms is not true.

## Conclusion

Based upon the aforementioned facts, Petitioner has respectfully shown that the statute at large providing for both 25 year and 15 year terms, for first and second degree murder, (imposed by the court), Prop. 7, the D.S.L., the post conviction credits and the intent of the legislature, the repeal of I.S.L. and operational statutes, California sentencing rules of court, A.G. opinion, the Cal. Supreme Courts split decisions regaurding this controversey

Provide petitioner to reach the conclusion that the language "25 years (or 15 years-) to life", can not be an indeterminate sentence, and is far to ambigueous or Vague to be Constitutionally Valid. Thus Violating Petitioner's U.S. Constitutional Rights of Due Process or Equal Protection.

Petitioner is entitled to relief.

## Prayer for relief

Petitioner prays this Court will grant Petitioner any relief he may be entitled to.

(c) **GROUND THREE**: California enacted a new law increasing Petitioner's Punishment in Violation of the ex post facto clause or Equal Protection Clauses of the United States Constitution

**Supporting FACTS** (state *briefly* without citing cases or law): Summary.

Petitioner contends that either State Legislature added or amended Penal Code Section 2085.5, years after Petitioner's convicted offense, requireing Petitioner to pay (an extra) 10% administrative Fee that is not credited towards the amount of restitution Petitioner owes, in Violation of the ex post facto or Equal Protection Clauses of the United states Constitution.

On 1-17-91, when Petitioner was sentenced in the Superior Court of California, in and for the county of San Diego, The Superior Court Judge Honorable Jesus Rodriguez imposed, inter alia, The restitution fine and restitution to the Victims of $5000 and $ 3,269 respectively. Pursuant to Cal. G.C. § 13967 [see exhibit 6] At that time Cal. P.C. § 2085.5, Providing for collection of such Court ordered restitutions, Via the Department of Corrections, and also Providing a 10% administration fee for the Department, Required, "Any amount so deducted shall be credited against the amount oweing on such fine."

On or about 9-29-94, the legislation amended or added new language indicating the Administrative Fee of 10%, is no longer applied towards the restitution(s), consequently resulting in a 10% increase in Petitioner's, and all similarly situated Prisoners, punishment or obligations. Equal Protection

Other prisoners who paid their ~~fines~~ restitutions under the old law did not have to pay an additional 10%, to satisfy their obligations, Petitioner Should not be required to pay an extra 10% to satisfy his restitutions,

(Continued on next Page.)

**Did you raise GROUND THREE in the California Supreme Court?**

☒ Yes ☐ No.

(1) Nature of proceeding: Petition for review

(2) Case Number: S 153765

(3) Result: Denied; See Exhibit

Petitioner contends that No person should be requied to pay more money than the Court ordered, regaurdless of however many State Agencies are used to get the funds from Point A to Point Z within the Government.

Petitioner does not get to deduct the cost of delivering the monies to the State Agency (his Administrative Fee) therefor the State Agency should not be allowed to charge Petitioner. The State must grant them a portion of what is collected. As far as petitioner is concerned the State can give the Department 100%; Petitioner's issue is that he should not be subjected to paying more than that which was ordered by the Court.

Petitioner has become subjected to the new law and has suffered injury, by paying monies that were not accredited to the total amount owed and inexorably will be subjected to the new law should he receive money.

Thus, petitioner asserts that the New law (P.C. § 2085.5) in question is repugnant to the 10th Section of the first Article of the Constitution of the United States.

## Conclusion

Based upon the aforementioned uncontroverted facts Petitioner (and similarly situated prisoners) is entitled to relief.

### Prayer for Relief

1. order Respondent to stop over charging Petitioner and Prisoner's entitled to relief per fundamental fairness; credit all monies taken towards amount owed or refund the monies taken; and any appropriate remedy Petitioner may be entitled to.

(d) **GROUND FOUR**: California's "Penal consequence parole" is in direct conflict with clearly established United States Supreme Court law, defining Parole. Cal. used the artifice of Parole to induce Petitioner's guilty plea; and then uses the artifice to circument meaningful Judicial review, in violation of Petitioner's Due Process rights conferred by the U.S. Constitution.

**Supporting FACTS:**

1. The United States Supreme Courts definition of Parole, and former federal statutes, are what inspired Petitioner's understanding of what Parole means, when he entered his guilty plea, in case # 103749, on 5-9-90.

2. In California, parole is defined as a "penal consequence", to be served after a prisoner has served his entire prison Term similar to the "Supervised Release" program adopted by the federal System in november of 1988. (10 days after Petitioner's arrest, and housed in M.C.C.. Because this was a big deal to federal inmates, Petitioner learned how parole was administered and why it was important. The gift of parole to serve the remainder of a prisoner's term outside the prison walls, has a profound impact on a prisoner's mind.

3. On 5-9-90, in the San Diego County Superior Court, Petitioner was informed by his lawyer Larry Ainbinder, D.D.A. Evan Miller and the Honorable Judge Jesus Rodriguez, that Petitioner would be eligible for early release on parole, for a period up to 60 months, indicating the federal courts law.

(continued on Next page)

Did you raise GROUND FOUR in the California Supreme Court?

☒ Yes ☐ No.

If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition): Petition for review.

(2) Case number or citation: S 153765

(3) Result (attach a copy of the court's opinion or order if available): See exhibit 11.

On or about 7-28-06, Petitioner was told by C.D.C.R. Staff (Petitioner's assigned Counselor) that Petitioner will be on this Penal Consequence called parole for the remainder of Petitioner's life.

As said supra, Parole was offered and accepted as early release on the term, Petitioner will not accept a lifetime of being subjected to the conditional freedom under any pretext called parole.

Petitioner finds himself in an enigma wrapped inside a riddle or purplexing situation.

For example if parole (state) does not mean parole (Fed.) then why is he being considered for parole? If Parole (State) means parole (Fed.) why would he be subjected to it for the remainder of his life when the term can only be 30 years MAX.?

The only way parole (State) can mean parole (Fed.) and reasonably subject Petitioner to the rest of his life is if Petitioner was sentenced to life, which in turn, he would have had to plead guilty to receive Life. Which he was not sentenced to life nor did he agree to serve a life term, nor an indeterminate term, I.S.L., was repealed long before Petitioner's convicted offense.

Based upon these reasons any many more, Petitioner

uncovers the Sophism of (objective correlative) Why the State Lables prisoner's "Life Prisoner" Seeking Parole Suitability as a Life prisoner, because the State knows that the Courts will not Provide meaningful review, because the Courts are bound by the rules and principals regaurding the Presumptive "early release" parole, not the "Penal Consequence" California Simply calls parole. Therefor prisoner's seeking review by the Courts have basicly lost, unless the decision Violated the extremely high threshhold reguarding the early release. (i.e. "no one has a right to parole"; supervise release?)

For example, should the Court equate California's parole as meaning "Supervised release" the Court could see how the entire Process of "Parole Suitability" or Parole Consideration is a meaningless sham designed to circumvent the federal Courts review.

Further, California hides the "term" fixing ~~function~~ (obligation) for the convicted offense, behind the Prerequisite "Shield Policy" requireing a prisoner to be "found Suitible for parole" before a prisoner may receive his prescribed term. Thus, escaping Due Process and circumventing review.

Petitioner does not Seek Parole, his term has expired and because he is a multijurisdiction prisoner, Due Process of law forcloses the 'Shield Policy' of "Parole Suitibility" in order to receive his term. This fact is why the Prosecutor could make such a promise as or guarentee Petitioner would not serve one day on the murder.

Petitioner asserts that a plenary review of California's Version of Parole, indeterminate Sentence (Post-1977) do not comply with Controlling U.S. Supreme Court law, or the minimum Standards of operating an indeterminate Sentence.

Because Cal. Parole is basicly Mandatory and Served after the Court imposed term, and recognized as a penal conseque-nce, Petitioner urges this Court to recognize Parole is truely a supervised release (a wolf) program simply called Parole (Sheeps clothing).

For the Same reasons the U.S. Legislature did not simply call Supervised release, Parole, (Probably Legalese) Are the Same reasons why California Should not be allowed to escape the truth, meaningful Judicial review.

No Person should be sent back to prison for parole Violat-ion aftershe has served the entire term imposed by the Sentencing Court!

C.D.C.R. is creating over crowding and escaping review by abus-ing legalise and the Strict Principals or rules regarding "parole" and "indeterminate Sentence/Term", to the legal detriment of U.S. Citizens, i.e. Petitioner.

Petitioner seriously weighing the desires of The C.D.C.R. Agenda Vs. U.S. Supreme Court Law, concluded the Law must come first. Thus, California's "parole", subjecting U.S. citizens to it, is in Violation of clearly established U.S. Law, and therefor must be struck down for Violating Petitioner's United States Constitutionally Protected Rights.

Petitioner is not a citizen of California, The U.S. already occupies the field in this extraordinary case.

Petitioner wants this Court to know that none of Petitioner's Grounds for relief are based upon Petitioner's personal belief that his Sentence is not an indeterminate term or that P.C. § 190 he believes the Language "25 years to Life" could not logically be an indeterminate sentence. In other words his entitlement to relief is based upon existing law as adopted and understood under the current operation of law as it exists and is recognized as fact. Petitioner knows this Court may adopt the basic facts that he has an indeterminate term, that he is a multijurisdiction prisoner, and that B.P.H. has Term Fixing Power etc. etc., despite the conceptual fallacy. However, Petitioner is entitled to relief under either truth, and his conclusions are not based upon ~~the~~ Any false premise. Whatever misunderstandings petitioner may have about law, he had a perfect understanding of the ends; that he would be released from prison at the expiration of his federal Sentence.

## Conclusion

Petitioner is entitled to relief.

## Prayer for relief

1. Order respondents to either operate Parole as it is defined by Controlling U.S. Supreme Court law; or Change the name to reflect it's true nature (e.g. supervised release).
2. Order any relief Petitioner may be entitled to.

23. Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes ☒ No

24. If your answer to #23 is "Yes," give the following information:
(a) Name of Court: N/A
(b) Case Number: ______
(c) Date action filed: ______
(d) Nature of proceeding: ______
(e) Grounds raised: N/A
(f) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes ☒ No N/A

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing: Danniel Horwick, Address unknown
(b) At arraignment and plea: Plea: Larry Ainbinder, Public Defender San Diego
(c) At trial: N/A
(d) At sentencing: Larry Ainbinder, Public Defender San Diego
(e) On appeal: Handy Hoyrire
(f) In any post-conviction proceeding: NO
(g) On appeal from any adverse ruling in a post-conviction proceeding: NO

**26.** Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☐ Yes ☒ No

**27.** Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
☒ Yes ☐ No

(a) If so, give name and location of court that imposed sentence to be served in the future:
United States District Court, Southern District of California.

(b) Give date and length of the future sentence:
Sentenced on 1-17-91; for a term of 272 months.

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
☒ Yes ☐ No

**28.** Consent to Magistrate Judge Jurisdiction

In order to insure the just, speedy and inexpensive determination of Section 2254 habeas cases filed in this district, the parties may waive their right to procced before a district judge and consent to magistrate judge jurisdiction. Upon consent of all the parties under 28 U.S.C. § 636(c) to such jurisdiction, the magistrate judge will conduct all proceedings including the entry of final judgment. The parties are free to withhold consent without adverse substantive consequences.

The Court encourages parties to consent to a magistrate judge as it will likely result in an earlier resolution of this matter. If you request that a district judge be designated to decide dispositive matters, a magistrate judge will nevertheless hear and decide all non-dispositive matters and will hear and issue a recommendation to the district judge as to all dispositive matters.

You may consent to have a magistrate judge conduct any and all further proceedings in this case, including the entry of final judgment, by indicating your consent below.

Choose only one of the following:

☐ Plaintiff consents to magistrate judge jurisdiction as set forth above.

**OR**

☒ Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case.

**29.** Date you are mailing (or handing to a correctional officer) this Petition to this court:

January 2008

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

Martin Walters

(Pro Se) SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

1-10-2008 Martin Walters

(DATE) SIGNATURE OF PETITIONER

All rights reserved

# FORM D

# PROOF OF SERVICE

## BY A PERSON
## IN STATE CUSTODY

# PROOF OF SERVICE BY MAIL

## BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, Matthew Braden, declare:

I am over 18 years of age and Not a party to this action. I am a resident of P.O. Box 4000 Vacaville CA. 95696, Cal. State Prison at Solano Prison,

in the county of Solano,

State of California. My prison address is: California State Prison Solano, ~~P.O. Box~~ P.O. Box 4000, Vacaville CA. 95696.

On January 22 2008,
(DATE)

I served the attached: Petition for Writ of Habeas Corpus; Points and Authorities in support of Petition; Declaration in support of Petition; Motion for counsel and proceed in forma pauperis.
(DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional institution in which I am presently confined. The envelope was addressed as follows:

Clerk of U.S. District Court
Room 4290
880 Front Street
San Diego CA. 92101-8900

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 1-22-2008
(DATE)

Matt Braden
(DECLARANT'S SIGNATURE)

# Table of exhibits

Exhibits | Pages


1. Declaration in Support of petition for Writ of Habeas Corpus . . .
2. Change of plea form (promises) . . . . . . . . . . . . .
3. Motion to withdraw guilty plea . . . . . . . . . . . .
4. Opposition to withdraw guilty Plea . . . . . . . . . .
5. Denied; ~~Hearing transcripts~~ and sentencing . . . . . . .
6. Amended minute order, Judgement . . . . . . . . . .
7. Abstract of Judgement . . . . . . . . . . . . .
8. Federal Sentencing/Judgement . . . . . . . . . . .
9. multijurisdiction Prisoner Regulations; and Chapter 3, first degree Murder Matrix . . . . . . . . . . . . .
10. Proposed decision Parole Consideration (2-pages) . . . .
11. State Court Orders for Habeas Corpus (Denials) . . . .
12. C.D.C. officials term computation . . . . . . . .
13. excerpt, from fed. sentencing . . . . . . . . .
14. excerpt, J. Pokarny billing diary . . . . . . . .
15. excerpt, Fed. Plea bargain transcripts . . . . . . .


Note: Petitioner is unable to obtain Copy of Guilty Plea transcripts in State Case, # CR 103749.

# EXHIBIT COVER PAGE:

Exhibit: 1

Description of this exhibit: Declaration in Support of Petitioner's Petition for Habeas Corpus.

Number of pages of this exhibit: 18 pages

JURISDICTION: (Check only one)

_____ Municipal Court

_____ Superior Court

_____ Appellate Court

_____ State Supreme Court

X United States District Court

_____ United States Circuit Court

_____ United States Supreme Court

_____ California Department of Corrections, 602 Exhibit.

_____ Other: _______________

DECLARATION IN SUPPORT OF PETITIONERS PETITION FOR WRIT OF HABEAS CORPUS (AND EVIDENTIARY HEARING.)

I, MARTIN EDWARD WALTERS SWEAR ON MY SOLMN OATH AND DEPOSE THAT THE FOLLOWING FACTS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND SWEAR THIS TO BE TRUE UNDER THE PENALTY OF PERJURY.

1. PETITIONER WILL BE ILLEGALLY CONFINED IN A CALIFORNIA STATE PRISON UNDER C.D.C.R. # E-86183, BECAUSE THE MOMENT PETITIONERS FEDERAL TERM OF IMPRISONMENT HAS EXPIRED. (WHICH IS ANTICIPATED ON 2-28-08) THE STATES PROMISE; TO RUN "ANY TIME PETITIONER RECEIVED IN STATE COURT WOULD BE CONCURRENT TO ANY TIME PETITIONER RECEIVED IN FEDERAL COURT," INEXORABLY WILL BE BREACHED.

2. PETITIONER HAS SHOWN GOOD FAITH IN BRINGING THESE CONTRACTUAL ISSUES TO THE STATES COURTS, WHERE THEY REFUSE TO CONDUCT A CONTRACTUAL INTERPRETATION OF PETITIONERS PLEA AGREEMENT.

3. PETITIONER ASSERTS THAT HAD THE CALIFORNIA COURTS GRANTED PETITIONER AN EVIDENTIARY HEARING PETITIONER WOULD PROVE HE IS ENTITLED TO RELEASE, BECAUSE HIS STATE PRISON TERM HAS EXPIRED.

4 PETITIONER NEEDS A PLENARY REVIEW, BECAUSE PETITIONER CLAIMed FACTS, Made ON AND OFF THE RECORD by the State, entitle HIM TO RELIEF. HABEAS CORPUS IS THE PROPER MECHANISM, AND HE KNOWS OF NO OTHER APPROPRIATE OR SPEEDY REMEDY.

5. PETITIONER HAS A DUE PROCESS RIGHT TO ENFORCE THE TERMS OF HIS PLEA AGREEMENT.

6. ON OR ABOUT 4-19-1990, IN SOUTHERN DISTRICT OF CALIFORNIA, IN THE COUNTY OF SAN DIEGO, AT METROPOLITAN CORRECTIONAL CENTER (M.C.C.), WHERE AFFIANT (PETITIONER) WAS HOUSED (FEDERAL PROPERTY) IS WHERE PETITIONER WAS TOLD BY LARRY AINBINDER (PETITIONER'S LAWYER AND AGENT)

THAT DEPUTY DISTRICT ATTORNEY MR. EVAN MILLER (D.D.A.), OFFERED PETITIONER A PLEA BARGAIN, PETITIONER WOULD PLEAD GUILTY TO FIRST DEGREE MURDER OR HE WOULD PROSECUTE PETITIONERS MOTHER AND AUNT, WHO WERE ARRESTED ON DECEMBER 25, 1989, FOR VARIOUS FEDERAL CHARGES, BY FEDERAL AUTHORITIES. PETITIONER REFUSED, BECAUSE HE DID NOT THINK THAT THE D.D.A. COULD LEGALLY DO THAT THREAT.

7. ON OR ABOUT MAY 2, 1990, AT M.C.C., JIM POKORNY (PETITIONER'S FEDERAL LAWYER AND AGENT) TOLD PETITIONER THAT MR. FERRARO ASSISTANT UNITED STATES ATTORNEY (A.U.S.A.) HAD ALSO OFFERED PETITIONER A PLEA BARGAIN, PETITIONER REFUSED. IN BOTH CASES THE PROSECUTORS (FALSELY) CLAIMED PETITIONER FACED LIFE WITHOUT THE POSSIBILITY OF PAROLE IN THE FEDERAL CASE, BOTH PROSECUTIONS USED THE MISREPRESENTATION AS LEVERAGE WHEN PETITIONER WAS ADVISED BY BOTH LARRY AINBINDER AND JIM POKORNY THAT PETITIONER WOULD PROBABLY BE CONVICTED IN FEDERAL COURT, BASED UPON VIEWING VIDEO AND AUDIO TAPED CONVERSATION, ALLEGEDLY SHOWING PETITIONER NEGOTIATING THE PURCHASE OF LARGE QUANTITIES OF PRECURSER CHEMICALS, ALLEGED FOR THE PRODUCTION OF METHAMPHETAMINE.

8. DURING THE CONVERSATION BETWEEN PETITIONER AND MR. POKORNY, MR. POKORNY TOLD PETITIONER, THAT PETITIONER SHOULD SERIOUSLY CONSIDER TAKING DEALS IN BOTH STATE AND FEDERAL CASES, BECAUSE THE DEAL WOULD SAVE HIS FAMILY, AND PETITIONER WOULD BE FREE IN ABOUT 20 YEARS. MR. POKORNY SAID THAT HE AND LARRY AINBINDER HAD BEEN TALKING TO BOTH PROSECUTORS ABOUT RESOLVING ALL PETITIONERS CASES BY PLEA.

9. MR. POKORNY SAID THAT LARRY AINBINDER TOLD HIM THAT HIS (LARRY AINBINDERS) CALCULATIONS INDICATED THAT, IN PETITIONERS CASE, THE TERM FOR FIRST DEGREE MURDER WITH POST CONVICTION CREDITS WOULD RESULT IN A NINETEEN (19) YEAR PERIOD OF CONFINEMENT AND THAT THE ONLY WAY PETITIONER WOULD EXTEND THE ANTICIPATED PERIOD OF CONFINEMENT WAS VIA FORFEITURE OF CREDIT FOR MISBEHAVIOR. PETITIONER REFUSED THE OFFER, AND TOLD MR. POKORNY, HE WOULD THINK ABOUT IT.

/
/
/

10.) On or about, 5-4-90, AT THE FEDERAL JAIL HOUSE,

MR. POKORNY SAID THAT HE, MR. FERRARO, MR. MILLER, AND LARRY AINBINDER HAD AN IN CHAMBERS MEETING WITH HON. EARL B. GILLIAM, PRESIDING JUDGE IN PETITIONER'S FEDERAL CASE. ACCORDING TO MR. POKORNY, THE GROUP DISCUSSED THE STATUS OF THE CASES, DISCOVERY ISSUES, AND DISPOSITION OF THE CASES. AT SOME POINT JUDGE GILLIAM TOLD MR. POKORNY IN FRONT OF THE OTHER LAWYERS THAT HE WOULD ORDER PETITIONER TO STAND TRIAL; IMMEDIATELY, DESPITE THE FACT THAT MR. POKORNY DID NOT RECEIVE ALL THE DISCOVERY EVIDENCE THAT THE A.U.S.A. PLANNED ON INTRODUCING AT PETITIONER'S TRIAL, IF PETITIONER DID NOT DISPOSE OF BOTH CASES BY PLEA, AND THE CONVICTION WOULD MAKE THE STATE CASE GO AWAY, BECAUSE PETITIONER WOULD SPEND HIS NATURAL LIFE IN A FEDERAL PENITENTIARY. MR. POKORNY ALSO SAID THAT HON. JUDGE GILLIAM WOULD DENY ALL PETITIONER'S MOTIONS AND THUS, DEPRIVE PETITIONER OF ANY CHANCE OF SUCCESS AT A JURY TRIAL. AS A RESULT, THE PROSECUTIONS SAID THEY WOULD BE CONTENT IF PETITIONER SERVED 20 YEARS IN CUSTODY.

11.) AFTER THE INITIAL RANTS OF DEFIANCE AND ANGER PETITIONER EXPRESSED TO MR. POKORNY ABOUT THE LEGAL SYSTEMS DISGUSTING TACTICS, PETITIONER INQUIRED ABOUT THE "PACKAGE DEAL" PLEA BARGAIN THAT ENSURED PETITIONER WOULD BE FREE, (NOT ELIGIBLE FOR PAROLE!) IN 20 YEARS.

12.) OVER THE NEXT FEW DAYS (AT M.C.C.), PETITIONER WAS INFORMED BY BOTH LARRY AINBINDER AND POKORNY OF THE PROPOSED "PACKAGE DEAL" OFFERS, AND PROVED TO PETITIONER THAT HE WOULD BE RELEASED BETWEEN 19-21 YEARS. BY DOING CALCULATIONS UPON THE PRESCRIBED ANTICIPATED TERMS, POST CONVICTION CREDITS (P.C. § 2931) CONCURRENT TERMS, LOSS OF POST CONVICTION CREDIT (P.C. § 2932). THE FEDERAL CASE, COUNT 1, PRESENTED AN AMBIGUOS RANGE THAT EXPOSED PETITIONER TO L.W.O.P. A TERM LONGER THAN THE 20 YEARS, AND THE COURTS (FEDERAL) WERE SENTENCING OTHER INMATES TO LONGER TERMS THAN THOSE INMATES THOUGHT THEY BARGAINED FOR, AND DESPITE ASSURANCE BY MR. POKORNY THAT HON. E.B. GILLIAM WOULD HONOR OUR DEAL BECAUSE HE (GILLIAM) WAS THE ONE WHO WANTED THE DEAL TO GET DONE, PETITIONER STILL REFUSED THE PLEA BARGAIN.

13.) ON OR ABOUT 5-5-90,
DURING A MEETING, AT M.C.C., MR. AINBINDER TOLD PETITIONER THAT MR. MILLER CONVEYED TO HIM, TO TELL PETITIONER, THAT PETITIONER "WOULD NOT SERVE ONE DAY ON THE MURDER" AND THAT THE PLEA AGREEMENTS CONCURRENT TIME, AND "MULTIJURISDICTIONAL STATUS" ENSURED THAT PETITIONER DID NOT WANT A FIRST DEGREE MURDER CONVICTION ON HIS RECORD AND REQUESTED OTHER CHARGES.

14.) ON OR ABOUT THE NEXT DAY MR. AINBINDER SAID HE SPOKE TO D.D.A. MILLER AND MR. MILLER NEEDED THE FIRST DEGREE MURDER, TO "EFFECTUATE THE DEAL", AND MR. AINBINDER TOLD PETITIONER THAT THE DEAL WAS FOR TIME, THE CHARGE ITSELF DID NOT MATTER. Petitioner accepted the Statements as true.

15.) ON 5-8-90, AT THE FEDERAL COURT HOUSE, HONORABLE E.B. GILLIAM INDICATED ON THE RECORD, THAT PETITIONER SHOULD SERIOUSLY CONSIDER DISPOSING OF BOTH CASES BY PLEA OR PETITIONER COULD SPEND HIS NATURAL LIFE IN PRISON. PETITIONER UNDERSTOOD THIS TO MEAN YOUR GOING TO GET A L.W.O.P SENTENCE IF YOU DON'T RESOLVE THIS CASE BY PLEA. AFTER THE HEARING IN THE FEDERAL COURT HOUSE PETITIONER TOLD MR. POKORNY THAT HE "WOULD BE WILLING TO SERVE 20 YEARS YEARS IN CUSTODY" (i.e. PLEAD GUILTY) IF:

16.) FACTS PETITIONER'S CONDITIONS

1. THAT ANYTIME [HE] RECEIVED IN THE STATE CASE WOULD BE CONCURRENT TO ANY TIME HE RECEIVED IN THE FEDERAL CASE. (BECAUSE PETITIONER DID NOT WANT TO SERVE ANY STATE TIME, AND ACCORDING TO THE D.D.A. CONCURRENT TIME ENSURED PETITIONER WOULD BE FREE AT THE EXPIRATION OF HIS FEDERAL SENTENCE).
2. THAT ANY TIME HE RECEIVED IN (BOTH CASES) WOULD BE SERVED IN FEDERAL CUSTODY (BECAUSE [HE] DID NOT WANT TO SERVE ANY TIME IN STATE PRISON)

3. THE STATE WOULD NOT FILE CHARGES AGAINST PETITIONER'S MOTHER OR AUNT. (BECAUSE THE D.D.A. MILLER HAD THREATEND TO PRESS CHARGES AGAINST THEM EARLIER.) THE

4. PLEA WOULD DISPOSE OF ALL CASES, IN BOTH JURISDICTIONS, e.g. NO MORE SUPERCEDING INDICTMENTS, NOR BEING CHARGED IN STATE COURT FOR COUNTS PETITIONER WAS CHARGED WITH IN FEDERAL COURT THAT WOULD BE DISMISSED, BASICLY NO NEW CASES, A GIMMICK PROSECUTORS WERE USING, TO GET CONSECUTIVE TERMS. (BECAUSE THE STATE AND FEDERAL PROSECUTORS WERE PROSECUTING DISMISSED CHARGES FROM ONE JURISDICTION (CAL.) UNDER THE OTHERS CO-JURISDICTION, AND VICE VERSA, TO THE DEMISE OF UNSOPHISTICATED DEFENDANTS. (LIKE ME.)

17.) MR. POKORNY SAID HE WOULD CONTACT ALL THE "OFFICERS OF THE COURT", MR. AINBINDER, MR. FERRARO (A.U.S.A.), MR. MILLER (D.D.A.) AND TELL THEM PETITIONERS CONDITIONS, HIS FEARS, AND HIS REASONS WHY.

18.) ON 5-8-90, MR. POKORNY SAID HE CONTACTED MR. AINBINDER, AND MR. AINBINDER and He, TOGETHER, THEY WOULD ALL, IRON OUT THE LOGISTICS, ("They All", refer's to Prosecutors TOO.)" to effectuate" the 20 Years in Custody agreement.

# GUILTY PLEAS

19.) (a) ON 5-9-90 IN THE STATE SUPERIOR COURT, IN THE COUNTY OF SAN DIEGO, LARRY AINBINDER INFORMED PETITIONER, THAT, HE, AND MR. POKORNY HAD ADVISED THE D.A., THE D.D.A., THE JUDGES HON. JESUS RODRIGUEZ (STATE) AND HON. EARL B. GILLIAM (FEDERAL), OF PETITIONERS CONDITIONS, FEARS AND REASONS FOR THE CHANGE OF PLEA; (b) AND FURTHER THAT ALL PARTIES AGREED TO PETITIONERS CONDITIONS, AND D.D.A. MILLER WAS GETTING THE PLEA AGREEMENT FORM AND THE MURDER MATRIX, SO THAT HE (D.D.A. MILLER) COULD SHOW PETITIONER THE TERMS PETITIONER WOULD BE EXPOSED TO IN CALIFORNIA'S FIRST DEGREE MURDER MATRIX, IN D.D.A. MILLERS OWN WORDS.
(c) AFTER ABOUT 45 MINUTES, PETITIONER WAS TAKEN INTO COURT ROOM, # 9, AND SAT AT THE DEFENDANTS TABLE (NO JUDGE WAS PRESENT).
(D) MR. AINBINDER BEGAN TO EXPLAIN THE DEAL IN FRONT OF D.D.A. MILLER. WHO NODDED IN AFFIRMATIVE AGREEMENT. (E) PETITIONER ASKED MR. MILLER DIRECTLY IF, THE MURDER MATRIX APPLIED TO MURDERS COMMITTED IN 1988, BECAUSE THE MATRIX PAGE INDICATED AFTER NOV. 8, 1978, (F) D.D.A. MILLER WOULD NOT ANSWER PETITIONER DIRECTLY AND ANSWERED TOWARDS LARRY AINBINDER "YES."

20.) PERPLEXED, PETITIONER ASKED D.D.A. MILLER DIRECTLY IF HE IN FACT TOLD LARRY AINBINDER THAT PETITIONER "WOULD NOT SERVE ONE DAY ON THE MURDER BECAUSE THE STATE SENTENCE WOULD EXPIRE BEFORE THE FEDERAL SENTENCE"? AGAIN, D.D.A. MILLER ANSWERED "YES," TO LARRY AINBINDER.

MAYBE SENSING PETITIONER'S TREPIDATION, LARRY AINBINDER SAID TO D.D.A. MILLER, JUST TALK TO HIM EVAN, WITH ALL THATS GOING ON, HE DOESN'T TRUST THE GOVERNMENT.

21) D.D.A. MILLER HESITANTLY CONFIRMED CONCURRENT TIME; MULTI-JURISDICTIONAL STATUS; HOW HE THOUGHT THAT THERE WAS EVIDENCE INDICATING TORTURE, INDICATING HE BELIEVED PETITIONERS TERM WOULD BE IN THE 30-31-32 YEAR MATRIX BOX.

22) LARRY AINBINDER RESPONDED BY STATING THERE IS NO EVIDENCE OF TORTURE, ALL EVIDENCE INDICATES THIS WAS AN ACCIDENT.

23) D.D.A. MILLER SAID "YOU WILL GET A TERM IN ONE OF THOSE BOXES" (IN THE MURDER MATRIX) AND WHATEVER TERM (PETITIONER RECEIVED) WILL "BE REDUCED BY POST-CONVICTION CREDIT BY 33%". FURTHER, D.D.A. MILLER SAID PETITIONER WOULD BE ELIGIBLE FOR EARLY RELEASE ON PAROLE, HE CROSSED OUT THE 48 MONTHS ON THE FORM AND WROTE 60 (MONTHS), STATING THAT PAROLE WAS NOT A CERTAINTY, BUT POSSIBLE AND THAT WAS UP TO THE PAROLE BOARD.

24) IN PETITIONERS MIND HE WOULD GET ABOUT A 28-29 YEAR TERM, REDUCE THAT BY CREDITS (33%) AND PAROLE OF 2 YEARS. THUS, HIS AND LARRY AINBINDERS CALCULATIONS WERE CLOSE ENOUGH TO <u>BELIEVE</u> THAT, PETITIONERS MURDER SENTENCE WOULD EXPIRE BEFORE THE FEDERAL SENTENCE, AND THE CUSTOM MADE PACKAGE DEAL "CONCURRENT TIME" provision, and or "multijurisdiction status", <u>ENSURED it.</u>



34

DEPUTY DISTRICT ATTORNEY'S REPRESENTATION

ON 5-9-90, IN SAN DIEGO COUNTY SUPERIOR COURT, BY DEPUTY DISTRICT ATTORNEY EVAN MILLER, AND WITNESSED AND AFFIRMED AS TRUE BY LARRY AINBINDER (ESQ.), PETITIONER'S COURT APPOINTED COUNSEL, EXPLAINED HOW PETITIONER WOULD BE FREE FROM PRISON AT THE EXPIRATION OF HIS FEDERAL SENTENCE:

HERE IS HOW THE PROCESS WAS EXPLAINED TO PETITIONER (D.D.A.) MR. MILLER SAID:

1. IN ABOUT 3 YEARS [Y]OU WILL GET A PHONE CALL FROM CALIFORNIA AUTHORITIES AT WHAT EVER INSTITUTION YOU MAY BE AT (WE PRESUMED LOMPOC OR LEAVENWORTH), BASICALLY TELLING YOU THAT YOU CAN EARN POST CONVICTION CREDIT 4 MONTHS OFF EACH YEAR IN CUSTODY. (PETITIONER DID NOT KNOW THIS WOULD BE A "MULTIJURISDICTION PRISONER DOCUMENTATION HEARING PURSUANT TO CCR TITLE 15 § 2369").

2. IN ABOUT 15 YEARS, YOU WILL GET ANOTHER PHONE CALL FROM CALIFORNIA PRISON OFFICIALS AT THE PRISON, TELLING YOU THAT YOU'LL BE SCHEDULED FOR A MULTIJURISDICTION PRISONER INITIAL PAROLE HEARING. PETITIONER WAS TOLD THE PAROLING AUTHORITIES WOULD CALCULATE HIS EARNED POST CONVICTION CREDITS AND APPLY THE CREDITS TOWARDS PETITIONER'S TERM. (PETITIONER WAS NOT TOLD THIS WAS THE HEARING WHERE THE BOARD WOULD EITHER:

A.) DISCHARGE PETITIONER'S CALIFORNIA SENTENCE PURSUANT TO CCR TITLE 15 § 2370 (d)(1). OR

B.) SET PETITIONER'S (INDETERMINATE) CALIFORNIA TERM PURSUANT TO TITLE 15 § 2370 (d)(2).

3. HE ALSO SAID BETWEEN 6 TO 18 MONTHS LATER YOU'LL RECEIVE THE DOCUMENTATION TELLING YOU YOUR CALIFORNIA TERM HAS EXPIRED.

THE D.D.A., MR. MILLER NOR COUNSEL EXPLAINED TO PETITIONER THAT THE LAW WAS BASED UPON CALIFORNIA CODE OF REGULATIONS (CCR) TITLE 15, DIVISION 2, ARTICLE 10 FOUND IN SECTIONS 2368-2370. THEY DID NOT TEACH PETITIONER ENOUGH TECHNICAL INFORMATION TO ENSURE PETITIONER TRULY COMPREHENDED, THE SPECIFIC PORTION OF APPLICABLE LAW.

25.) ALTHOUGH PETITIONER SIGNED THE CHANGE OF PLEA FORM INDICATING HE UNDERSTOOD THE TERMS CONTAINED IN THE FORM. IN ALL HONESTY HE DID NOT KNOW:

1. FIRST DEGREE MURDER CARRIED AN INDETERMINATE TERM;

2.(A) THAT THE PROVISION SUGGESTING A 60 MONTH PERIOD OF PAROLE WAS NOT AN EARLY RELEASE (AS FEDERAL LAW STATES);

2.(B) HE DID NOT KNOW THAT PAROLE IN CALIFORNIA WAS A PENAL CONSEQUENCE AND ACCORDING TO C.D.C.R. AND POSSIBLY STATUTE THE APPROPRIATE PAROLE PERIOD IS FOR THE REMAINDER OF PETITIONERS LIFE. (P.C. § 3000.1) NOW, SUBJECTING PETITIONER TO A LIFE TIME OF CONDITIONAL RELEASE.

3. THAT THE TERM PETITIONER OBSERVED WITHIN THE FIRST DEGREE MURDER MATRIX, THAT HE PRESUMABLY BARGAINED FOR, WAS (maybe) CONTINGENT UPON A FINDING OF "PAROLE SUITABILITY".

4. THAT THE CONCURRENT SENTENCE PROVISION MAY NOT ENSURE HIS FREEDOM AT THE EXPIRATION OF HIS FEDERAL SENTENCE.

PETITIONER DID NOT AGREE TO SERVE AN INDETERMINATE SENTENCE, NOR DID HE AGREE TO SERVE A LIFE SENTENCE WITH A MINIMUM TERM OF 25 YEARS, AS C.D.C.R. NOW CLAIMS OR SUGGESTS.

26.) PETITIONER DID NOT AGREE TO SERVE A PENAL CONSEQUENCE, MERELY CALLED "PAROLE", FOR 5 YEARS, NOR DID HE AGREE TO SPEND THE REST OF HIS LIFE ON, THE SUPERVISED RELEASE CALLED, PAROLE.

27.) PETITIONER DID NOT AGREE TO HAVE HIS PRESCRIBED TERM OF IMPRISONMENT, <u>CONDITIONED</u>, UPON A PAROLE BOARDS "FINDING HIM SUITABLE FOR PAROLE" AS A LIFE TERM PRISONER OR AN INDETERMINATE SENTENCED PRISONER "CONSIDERED" A LIFE TERM PRISONER. (WHICH IN EFFECT IS THE SAME SITUATION)

28.) PETITIONER DID NOT AGREE TO HAVE HIS FEDERAL SENTENCE TO RUN CONCURRENT TO HIS STATE SENTENCE, or up TO A POINT IN TIME, WHERE HE WOULD THEN GO TO STATE PRISON.

## PREJUDICE

29.) PETITIONER WOULD NOT HAVE PLEADED GUILTY TO THE CHARGES HAD HE KNOWN OF ANY, ONE, OF THE ABOVE MENTIONED CONDITIONS, FACTS, MISREPRESENTATIONS OR OMISSIONS.

30.) IN GROUND 1 PETITIONER SEEKS TO ENFORCE THE TERMS, HE SUBJECTIVELY BARGAINED FOR i.e. SPECIFIC PERFORMANCE, BECAUSE THE STATE, MISADVISED, OMITTED, AND MISREPRESENTED THE TERMS, PROMISES, CONDITIONS AND AMBIGUITIES THAT THE STATE CREATED, IN ORDER TO OBTAIN PETITIONERS GUILTY PLEA. PETITIONER SHOULD NOT NOW BE SUBJECTED TO THOSE PREJUDICIAL CONDITIONS, OMISSIONS, MISREPRESENTATIONS ETC. THAT ARE NOW BEING USED TO KEEP HIM IN CUSTODY FOR LONGER THAN HE AGREED TO SERVE, AND POSSIBLY FOR THE REST OF HIS NATURAL LIFE, WHICH FRUSTRATES THE PURPOSE OF THE PLEA.

31.) AlterNATIVELY, SHOULD THE COURT REFUSE TO ALLOW PETITIONER TO ENFORCE THE TERMS THAT HE BARGAINED FOR THEN PETITIONER SEEKS RECISSION OF THE CONTRACTS, BECAUSE THE OMISSIONS (e.g. THE PREREQUISITE OF "FINDING PETITIONER SUITABLE FOR PAROLE" PRIOR TO DETERMINING HIS PRESCRIBED TERM OF PUNISHMENT OR CALCULATING HIS POST CONVICTION CREDITS, IS REDICULOUS.) AND, ARE UNACCEPTABLE CONDITIONS THAT FRUSTRATE THE PURPOSE OF THE PLEA BARGAIN (i.e. LIFETIME INCARCERATION). (Cal. Civ. Code §§ 3390, 3391)

32.) PETITIONER DID NOT PLEAD TO SERVE A LIFE SENTENCE, HE DID NOT PLEAD GUILTY FOR THE MERE HOPE OF RELEASE OR TO BE CONSIDERED FOR PAROLE RELEASE AT AGE 40. HE PLEADED GUILTY TO BE RELEASED FROM INCARCERATION AT THE AGE OF 40!

33.) THUS, ON 5-9-1990, PETITIONER PERFORMED AS THE PROSECUTIONS DEMANDED. IN GOOD FAITH PETITIONER PLEADED GUILTY IN BOTH STATE COURT IN FRONT OF HON. JESUS RODRIGUEZ AND IN FEDERAL DISTRICT COURT (SOUTHERN DISTRICT) IN FRONT OF HON. EARL B. GILLIAM. PETITIONER BELIEVED HE WOULD BE RELEASED FROM CUSTODY BETWEEN 2007-2008.

34.) ON 5-9-90, AFTER PETITIONER SIGNED THE CONTRACT/INSTRUMENT/FORM, D.D.A. MILLER AND LARRY AINBINDER WENT TOGETHER TO GET HON. JESUS RODRIGUEZ, SAN DIEGO COUNTY, SUPERIOR COURT JUDGE FOR THE FORMAL CHANGE OF PLEA PROCEEDINGS, AND TO CALL MR. POKORNY AND D.T. FERRARO (A.U.S.A.) AND GET THE FEDERAL JUDGE HONORABLE EARL B. GILLIAM TO SCHEDULE THE FORMAL CHANGE OF PLEA HEARING FOR THAT SAME DAY.

35.) ACCORDING TO LARRY AINBINDER, EVERYONE WAS READY TO PROCEED AND AFTER THE STATES FORMAL PROCEEDING THE U.S. MARSHALS WOULD TAKE PETITIONER DIRECTLY TO THE SOUTHERN DISTRICT FEDERAL COURT AND PETITIONER WOULD HAVE TO PLEAD GUILTY THERE TOO.

36) THE JUDGE HON. JESUS RODRIGUEZ, PERFORMED THE CHANGE OF PLEA PROCEEDINGS, CLAIMED HE UNDERSTOOD PETITIONERS CONDITIONS AND PROSECUTIONS PROMISES, READ ME SOME CONSTITUTIONAL TRIAL RIGHTS, BASICLY READ THE FORM, AND PETITIONER PLEAD GUILTY, THE JUDGE FOUND PETITIONER GUILTY. (See change of plea form, incorporated herein, annexed as exhibit 2)

37.) EVERYONE EXCEPT BALIFF AND STAFF LEFT THE COURTROOM, PETITIONER SAT IN THE COURTROOM HOLDING ROOM, ALONE AND CRIED, BECAUSE HE WOULD BE IN PRISON FOR 20 YEARS, WHICH WAS LONGER THAN HIS EARLIEST MEMORY IN LIFE.

38.) ON 5-9-90, 30 MINUTES LATER, THE U.S. MARSHALS CAME, HAND CUFFED PETITIONER AND TOOK HIM DIRECTLY TO THE FEDERAL COURTROOM, WHERE ALL THE FEDERAL AND STATE LAWYERS AND HONORABLE EARL B. GILLIAM WERE WAITING, FOR PETITIONER, TO PROCEED IN THE CHANGE OF PLEA HEARING IN PETITIONERS FEDERAL CASE.

## IN FEDERAL COURT ON 5-9-90

39.) AS INDICATED BY LARRY AINBINDER, EVERYONE, THE LAWYERS, THE JUDGE, PROSECUTOR APPEARED TO BE READY TO PROCEED, PETITIONER CONSULTED WITH MR. J. POKORNY AND HE ASSURED PETITIONER AGAIN THAT EVERYONE WAS FULLY APPRAISED OF THE PACKAGE DEALS TERMS / CONDITIONS, ON THE FEDERAL SIDE.

40.) PETITIONER SIGNED THE PLEA BARGAIN FORM (THAT ERRONEOUSLY ADVISED EVERYONE THAT PETITIONER FACED L.W.O.P. FOR COUNT ONE) AND WAS FORMALLY ADVISED BY A JUDGE OR MAGISTRATE THAT PETITIONER COULD BE SENTENCED TO LIFE FOR COUNT ONE OF THE INDICTMENT, 88-0769-G-CRIMINAL.

41) PETITIONER HESITATED AND MR. POKORNY ADVISED HIM THAT THE COLLAQUAY WAS A FORMALITY AND TO TRUST HIM.

42) PETITIONER PLEADED GUILTY AS INSTRUCTED IN GOOD FAITH.

43.) HONORABLE EARL B. GILLIAM, STATED ON THE RECORD THAT HIS UNDERSTANDING OF THE PLEA BARGAIN IN STATE AND FEDERAL CASES WERE DEPENDANT UPON EACH OTHER AND INQUIRED INTO THE TERMS AND PROMISES THAT OCCURED IN THE STATE COURT AND BOTH JIM POKORNY AND LARRY AINBINDER BRIEFLY SPOKE OF THE CONDITIONS AND SO DID D. THOMAS FERRARO (A.U.S.A.). THE TERMS OF THE STATES PLEA AGREEMENT WERE BASICALLY STATED ON THE RECORD, THAT ANY TIME PETITIONER RECEIVED IN STATE COURT WOULD BE RUN CONCURRENT TO ANY TIME PETITIONER RECEIVED IN FEDERAL COURT. AND SINCE PETITIONER WAS A "FEDERAL PRISONER AND WOULD REMAIN A FEDERAL PRISONER," HONORABLE EARL B. GILLIAM "WOULD SENTENCE (PETITIONER) UNDER FEDERAL LAW," THESE TRANSCRIPTS ARE IN THE RECORD. (Please see federal guilty plea transcripts, incorporated herein and annexed hereto as exhibit 15)

## PETITIONERS REASONABLE BELIEF

44.) ON 5-9-90, AFTER ALL WAS SAID AND DONE, PETITIONER BELIEVED THE FOLLOWING: (FEDERAL CASE 88-0769-G-CRIMINAL).

A.) ALTHOUGH FORWARNED HE COULD RECEIVE A LIFE SENTENCE IN COUNT ONE, THE JUDGE WOULD HONOR THE PACKAGE DEAL, And PETITIONER WOULD RECEIVE 219 MONTHS; FOR COUNT TEN HE WOULD RECEIVE 120 MONTHS, RUN CONCURRENT, WHICH MEANT THAT, HE WOULD NOT SERVE ONE DAY ON THAT CONVICTION, BECAUSE PRESUMABLY PETITIONER WOULD RECEIVE A LONGER SENTENCE FOR COUNT 1. THUS, IT WOULD DEFY LOGIC TO PRESUME COUNT 10 WOULD BE A LONGER PERIOD OF CONFINEMENT, AND HE WOULD, RECEIVE 60 MONTHS for count 13, run consecutive, for a TOTAL OF 279 MONTHS.

B.) FURTHER, PETITIONER BELIEVED HE WOULD EARN 15% POST CONVICTION CREDIT TO REDUCE THAT 279 MONTHS.

PETITIONER CONCLUDED THAT THIS WOULD GET HIM OUT OF PRISON AT 20 YEARS. THUS, EFFECTUATING THE 20 YEARS IN CUSTODY HE AGREED TO SERVE. THIS WAS THE WAY JIM POKORNY EXPLAINED THE EFFECTUATION PROCESS.

45.) IN STATE CASE FOR FIRST DEGREE MURDER, PETITIONER THOUGHT HE WOULD RECEIVE A 28 TO 29 YEAR TERM, NOT AN INDETERMINATE SENTENCE. FURTHER, HE BELIEVED HE WOULD REDUCE THAT TERM BY 33% FOR A PERIOD OF INCARCERATION AT 19 YEARS AND A FEW MONTHS AND HE WOULD BE ELIGIBLE FOR PAROLE FOR UP TO 60 MONTHS ON ANY TERM HE ULTIMATELY RECEIVED. THIS IS HOW PETITIONER understood THE PLEA AGREEMENT AT THE MOMENT HE SIGNED WHAT HE CONSIDERED THE CONTRACT OR INSTRUMENT.

46.) AS INCREDIBLE AS THAT MIGHT SOUND TO AN EXPERIENCED JURIS, AN OBJECTIVE REVIEW OF THE CODES, THE RECORDS, LEGISLATIVE HISTORY, D.S.L., INSTRUMENT AND MANY MORE REASONS, WOULD JUSTIFY PETITIONERS BELIEF.

47.) REGUARDLESS, OF PETITIONERS MISUNDERSTANDING THE FACTS (OR MISINTERPRETATION OF THE STATUTE BY THE CALIFORNIA COURTS OR EXECUTIVE BRANCH) OR THE LAWS OF CALIFORNIA, HE REASONABLY BELIEVED HE WOULD BE RELEASED FROM CUSTODY AT THE EXPIRATION OF HIS FEDERAL SENTENCE BECAUSE,

48.) NO MATTER HOW MUCH TIME PETITIONER WOULD RECEIVE IN STATE COURT WOULD BE CONCURRENT TO WHATEVER TIME HE RECEIVED IN THE FEDERAL COURT,

49.) PETITIONER BELIEVED THE STATE SENTENCE WOULD EITHER BE:

1. SHORTER THAN THE FEDERAL SENTENCE; (19 YEARS ACCORDING TO LARRY AINBINDER; 20 BY MR. POKORNY)

2. EQUAL TO THE FEDERAL SENTENCE WITH POST CONVICTION CREDIT; OR

3. THEY USED THE PROMISED "CONCURRENT TIME" PROVISION TO CONTAIN THE LENGTH OF AN INDETERMINATE SENTENCE TO EFFECTUATE THE UNDERLYING AGREEMENT.

4. PETITIONER'S 'MULTIJURISDICTIONAL' STATUS AS DEFINED PURSUANT TO CALIFORNIA'S RULES AND REGULATIONS, TITLE 15, DIVISION 2, CHAPTER 1-3, SECTION 2000 (68). REQUIRED THE BOARD TO EITHER: "DISCHARGE" PETITIONER AT HIS INITIAL PAROLE HEARING PURSUANT TO TITLE 15 § 2730 (d)(1), OR "SET the Term" § 2730 (d)(2) WITHIN THIS CHAPTER, WHICH WOULD BE THE FIRST DEGREE MURDER MATRIX FOUND IN TITLE 15 § 2204.

WHICH THE BOARD FAILED TO DO, AS CLEARLY ESTABLISHED POLICY AND DUE PROCESS REQUIRED.

5. THEY BELIEVED THAT THE ORDER OF CALIFORNIA SUPREME COURT PURSUANT TO IN RE RODRIGUEZ, (1975) 14 CAL. 3d 639, 653-54 N. 18, REQUIRING THE AUTHORITY TO PROMPTLY FIX A "PRIMARY TERM" TERM BASED SOLELY UPON THE CONVICTED OFFENSE AND REGUARDLESS OF PAROLE SUITIBILITY, WITHIN 120 DAYS OF RECEPTION INTO THE DEPARTMENT. (AS PETITIONERS COUNSELOR LARRY AINBINDER TOLD PETITIONER ON 1-10-91, AFTER SENTENCING.) AND THE DEPARTMENT DID, ON 2-26-91, AND SET THE TERM AT 25 YEARS. (see exhibit 12 incorporated herein and attached hereto)

50.) PETITIONER WAS (AND IS) NO LAWYER, HE DID NOT DRAFT THE EFFECTUATING INSTRUMENT HE CAN ONLY ATTEMPT TO UNDERSTAND WHY HIS COUNSEL, THE STATES D.D.A. AND THE JUDGE WOULD BELIEVE THAT AN INDETERMINATE SENTENCE COULD REALISTICLY EFFECTUATE PETITIONERS CONDITIONS, UNLESS THEY ALL BELIEVED THAT THE 25 YEARS TO LIFE, PURSUANT TO P.C. § 190 WAS IN FACT A TRUE (I.S.L.) INDETERMINATE SENTENCE, AS THE 60 MONTH PAROLE PERIOD SUGGESTS. (P.C. § 3000) NOTWITHSTANDING THE FACT THAT CALIFORNIA DOES NOT HAVE THE OPERATIONAL MECHANICAL STATUTES TO OPERATE AN INDETERMINATE SENTENCING SCHEME. (FORMER P.C. §§ 3020-25; 671; 2920 ET. SEQ.; 2940 ET. SEQ., ETC.) WITHOUT THE STATUTORY UNDERPINNINGS TO SUPPORT THE ANTIQUATED DECISSIONAL OPINIONS, HOW DOES CALIFORNIA VALIDLY OPERATE SUCH A SPECIES INTELLIGIBILIS?

PETITIONER DID NOT DISCOVER THAT THE STATE WOULD ACTUALLY BREACH THE TERMS OF PETITIONERS PLEA AGREEMENT UNTIL JULY OF 2005. WHEN THE PAROLE BOARD DECISSION May be FINAL', DENYING HIM PAROLE CONSIDERATION FOR 5 YEARS WHICH WOULD MEAN PETITIONER WOULD BE INCARCERATED BEYOND NOT ONLY THE 25 YEAR DETERMINATE TERM THE STATE COMPUTATED IF PETITIONER WOULD WORK; BUT ALSO LONGER THAN THE FEDERAL TERM; And matrix term; too! PETITIONERS. PETITION IS NOT ONLY TIMELY, TECHNICLY IT IS EARLY, BECAUSE TECHNICLY PETITIONERS FEDERAL TERM HAS NOT EXPIRED, and this court has the power to remedy this controversy before the actual injury occurs.

---

FN 1) Petitioner did not receive a multijurisdiction prisoner Initial Parole hearing; appropriate NoTice, decission (proposed), review, or appeal response. (see title 15, §§ 2000 (68)(70 Now), 2368-70(d); 2040 et seq.)

52.) C.D.C. TOLD PETITIONER, AT RECEPTION CENTER ON 2-26-91, THAT HE HAD A DETERMINATE 25 YEAR TERM, WITH A "RELEASE DATE" ANTICIPATED AT 8-2-2005. ; IN 2006 THE CAL. SUPREME COURT APPEARED TO SUGGEST THE TERM WAS TRUE, NOT THE "LIFE TERM" C.D.C.R. WAS INDICATING IN 2003.

53.) prayer for relief

1. PETITIONER SEEKS TO ENFORCE THE TERMS, PROVISIONS, PROMISES THAT INDUCED HIS GUILTY PLEAS, OR RECISSION OF THE CONTRACT, BECAUSE IT WAS INDUCED UPON UNFULLFILLABLE PROMISES.

2. PETITIONER SEEKS A CONTRACTUAL INTERPRETATION OF HIS PLEA AGREEMENTS TO RESOLVE THE AMBIGUITIES AND SETTLE THIS CONFLICT.

3. PETITIONER SEEKS HIS TRANSFER FROM THE CUSTODY OF THE DIRECTOR OF CORRECTIONS, OR WARDEN OF SOLANO STATE PRISON, TO THE CUSTODY OF THE FEDERAL AUTHORITIES IN ORDER THAT HE MAY SERVE HIS SENTENCE UNDER HIS FEDERAL JUDGEMENT OF CONVICTION AND THEREBY GAIN THE BENEFIT OF THE PROVISIONS OF HIS GUILTY PLEA.

54.) IT IS WELL ESTABLISHED, THAT HABEAS CORPUS IS THE PROPER MECHANISM TO ENFORCE THE TERMS OF A BROKEN PLEA AGREEMENT; SECURE CONFINEMENT UNDER THE PROPER AUTHORITY; AND FREE PETITIONER FROM THE ILLEGALITY OF RESTRAINT; AND ULTIMATELY DETERMINE FACTUAL ISSUES NOT CONTAINED ON THE RECORD DURING PLEA BARGAINING.

## VERIFICATION

55.) I, MARTIN E. WALTERS, PRISONER AND PETITIONER UNDER THE PENALTY OF PERJURY SWEAR ON MY SOLMN OATH THAT THE ABOVE MENTION FACTS CONTAINED HEREIN ARE TRUE AND CORRECT, TO THE BEST OF MY KNOWLEDGE;

Martin Walters

MARTIN Walters

Executed on: 1-9-2008

# EXHIBIT COVER PAGE:

Exhibit: 2

Description of this exhibit: Change of Plea form;

Number of pages of this exhibit: 2-3 pages

JURISDICTION: (Check only one)

_____ Municipal Court

_____ Superior Court

_____ Appellate Court

_____ State Supreme Court

_____ United States District Court

_____ United States Circuit Court

_____ United States Supreme Court

_____ California Department of Corrections. 602 Exhibit.

_____ Other: ______________________________

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

FILED
KENNETH E. MARTONE
Clerk of the Superior Court
0253
MAY -9 1990
By: A. PECK, Deputy

People vs. Martin Walters CR No. 103749

DA No. B 46516

## PLEA OF GUILTY/NO CONTEST - FELONY

The defendant in the above-entitled action, in support of his/her motion to change his/her plea(s) in open Court, personally and by his/her attorney, does declare as follows:

1. Of those charges now filed against me in this case, I plead guilty (Guilty/No Contest) to the following violations: (List Crimes and Code Sections) [MW]

P.C. § 187 Murder, 1st degree (Count 8) Amended Information

1a. **(If Applicable)** I also admit the following enhancement(s)/prior conviction(s) with which I am charged: (List Court, Docket No. and Date of any Prior Conviction) [crossed out]

N/A

2. I have not been induced to enter the above plea by any promise or representation of any kind, except: (Briefly state any agreement with the District Attorney.) [MW]

Dismiss all remaining counts + allegations; D.A. has no opposition to serving sentence in federal custody; concurrent to federal sentence in 89-0769 G; DA agrees to file no charges against either Martha Walters or Carmen Fonseca (Martin Walters's mother and aunt); Dismiss the companion drug case

**RIGHT TO A LAYWER**

3. I understand that I have the right to be represented by a lawyer at all stages of the proceedings. I can hire my own lawyer, or the Court will appoint a lawyer for me if I cannot afford one. [MW]

**CONSTITUTIONAL RIGHTS**

I understand that I also have the following constitutional rights, which I now give up to plead either Guilty/No Contest:

| | I understand this right. | I give up this right. |
|---|---|---|
| 4. The right to be tried by a jury, in a speedy, public trial. | MW | MW |
| 5. The right to confront and to cross-examine all the witnesses against me. | MW | MW |
| 6. The right to remain silent (unless I choose to testify on my own behalf). | MW | MW |
| 7. The right to present evidence and to have witnesses subpoenaed to testify in my behalf at no cost to me. | MW | MW |

**CONSEQUENCES OF PLEA OF GUILTY OR NO CONTEST**

8a. I understand that I may receive this maximum penalty as a result of my plea: 25 yrs to life years in State Prison, $ 10,000 fine and ~~48~~ 60 months parole, with up to one year return to prison for every parole violation. If I should receive probation (for up to five years), I understand that I may be given up to a year in local custody, plus the fine, and any other conditions deemed reasonable by the Court. I understand that if I violate any terms or conditions of probation I can be sent to State Prison for the maximum term as stated above. [MW]

8b. My attorney has explained to me that other possible consequences of this plea may be: [MW]

(Circle applicable consequences.)

(a) Consecutive sentences.
(b) Loss of driving privileges.
(c) Commitment to the Youth Authority.
(d) Registration as a sex offender.
(e) Registration as an arsonist.
(f) Ineligibility for probation/presumptive prison. [circled]
(g) Registration as a narcotics offender.
(h) Restitution and/or a restitution fine. ($100-$10,000) [circled]
(i) Serious felony prior/prison prior. [circled]
(j) Priorable [circled]

9. I understand that if I am not a citizen of the United States a plea of Guilty or No Contest could result in deporation, exclusion from admission to this country, and/or denial of naturalization. N/A [crossed out]

10. I understand that my plea of Guilty or No Contest in this case could result in revocation of my probation or parole in other cases. N/A [crossed out]

11. I now plead guilty (Guilty / No Contest) to the charges(s) described in #1 above and admit that on the date charged I: (Describe facts as to each charge in #1.) MW

~~[illegible]~~ lawfully murdered Christine Reyes, alone, my brother Vincent did not aid or assist in any way with her death 0254

11a. **(If Applicable)** I understand that as to any and all prior convictions(s)/enhancements(s) alleged against me in this case, I have all the constitutional rights listed in #3-#7 above. As to any prior convictions alleged, I understand that if I request a jury trial on the current case, the jury would not learn of or decide, the prior conviction(s) unless and until the jury found me guilty on the current charges. N/A

11b. **(If Applicable)** I herby admit the prior conviction(s)/enhancement(s) listed in this form, and give up my constitutional rights, including the right to separate jury determination on the issue of the prior conviction(s) N/A

12. I do understand that the matter of probation and sentence is to be determined solely by the Court. MW

13. **(Harvey Waiver)** The sentencing judge may consider my prior criminal history and the entire factual background of the case, including any unfiled, dismissed or stricken charges or allegations or cases when granting probation, ordering restitution or imposing sentence. MW

14. I am entering my plea freely and voluntarily, without threat or fear to me or anyone closely related to me. MW

15a. I am pleading Guilty because in truth and in fact I AM GUILTY MW

15b. I understand that a plea of No Contest is the same as a plea of Guilty in this criminal case and for all purposes has the same consequences as a plea of Guilty. N/A

16. I am now sober. I have not consumed any drug, alcohol or narcotic within the past 24 hours to the extent that my judgment is impaired. MW

17. I declare under penalty of perjury, under the laws of the State of California, that I have read, understood, and initialed each item above, and everything on the form is true and correct. MW

Dated: 5-9-90 Defendant's Signature Martin Walters.

Defendant's Address ______ Street ______ City ______ State ______ ZIP

Defendant's Telephone No. ( ) - ______

## ATTORNEY'S STATEMENT

The undersigned states that (s)he is the attorney for defendant in the above-entitled action; that (s)he personally read and explained the contents of the above declaration to the defendant and each item thereof; that no meritorious defense exists to the charge(s) to which defendant is pleading Guilty/No Contest; that (s)he personally observed the defendant fill in and initial each item, or read and initial each item to acknowledge explanation of the contents of each item; that (s)he observed defendant date and sign said declaration; that (s)he concurs in defendant's above plea and in defendant's waiver of constitutional rights.

Dated: 5-9-90 Larry Ainbinder

Attorney for Defendant

## INTERPRETER'S STATEMENT (If Applicable)

I, the interpreter in this proceeding, having been duly sworn, truly translated this form and all the questions therein to the defendant in the ______ language. The defendant indicated that (s)he understood the contents of the form and (s)he then initialed and signed the form.

Dated: ______ ______

Court Interpreter

## PROSECUTOR'S STATEMENT

The People of the State of California, plaintiff in the above-entitled criminal action, by and through its attorney, EDWIN L. MILLER, JR., District Attorney, concurs in the defendant's plea of Guilty/No Contest as set forth above.

Dated: 5.9.90 Evan Miller

Deputy District Attorney

## COURT'S FINDINGS AND ORDER

The Court, having questioned the defendant concerning the defendant's constitutional rights, finds that defendant has voluntarily and intelligently waived his/her constitutional rights. The Court finds that defendant's pleas and admissions are freely and voluntarily made, that defendant understands the nature of the charges and the consequences of the plea, and that there is a factual basis for the plea. The Court accepts defendant's plea, and the defendant is hereby convicted on his plea.

Dated: 5/9/90 [signature]

Judge of the Superior Court

# EXHIBIT COVER PAGE:

Exhibit: 3

Description of this exhibit: D.D.A.'s opposition to Petitioner's Motion to withdraw guilty Plea; Evidencing promises made to petitioner.

Number of pages of this exhibit: 4 pages

JURISDICTION: (Check only one)

_____ Municipal Court

_____ Superior Court

_____ Appellate Court

_____ State Supreme Court

_____ United States District Court

_____ United States Circuit Court

_____ United States Supreme Court

_____ California Department of Corrections, 602 Exhibit.

_____ Other: ___________________________

0344

In this case, the defendant, Martin Walters, is attempting to withdraw the state portion of a federal/state plea bargain package he entered into with the United States Government and the People of the State of California.

The basis for this request is the defendant's contention that he mistakenly believed he would be facing life without possibility of parole for the primary count charged in his federal indictment. The defendant claims that for this reason alone, he accepted the plea bargain package. [See defendant's moving papers at p.2, lines 21 through 26].

However, the People must point out that this defendant had other reasons for accepting this plea bargain. The defendant was charged in Counts 7 and 8 of the state information with kidnapping for ransom with allegations of bodily injury (PC 209(a)) and murder in the first degree (PC 187(a)), respectively. Count 7 mandated a sentence of life without parole. Count 8 had a sentence range of 25 years to life.

In exchange for his plea of guilty to Count 8 of the information (PC 187(a)) the People dismissed Count 7, thereby saving the defendant from the possibility of life without parole in state prison. Furthermore, the People did not oppose the defendant's wish to serve his sentence in federal custody; concurrent with his federal sentence. The People agreed to file no charges against the defendant's mother, Martha Walters, or his aunt, Carmen Fonsica, and also to assist in limiting the amount of time they would serve in federal custody. Finally, the People dismissed the companion drug cases against the defendant that had been trailing along with the

/ / / / /

0343

in its examination of the circumstances before it. (Mendieta v. Municipal Court (1980) 109 Cal.App.3d 290, 294; People v. McDonough (1961) 198 Cal.App.2d 84, 90.) "While the section is to be liberally construed, and a plea withdrawn for mistake, ignorance, inadvertence, or any other factor overreaching the defendant's free and clear judgment, the facts of such grounds must be established by clear and convincing evidence." (People v. Roper (1983) 144 Cal.App.3d 1033, 1044; People v. Knight (1987) 194 Cal.App.3d 337, 344.)

Prob. Report./plea

The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering his decision. Brady v. United States (1970) 397 U.S. 742, 756-757. Post plea apprehension (buyer's remorse) regarding the anticipated sentence, even if it occurs well before sentencing, is not sufficient to compel the exercise of judicial discretion to permit withdrawal of the plea of guilty. Id.

The court's discretion is to be exercised only after a consideration of all factors necessary to a just result. (Ibid.) In determining whether its ruling will "promote justice," the court is required to consider the rights of the People. Leave to withdraw a plea which will result in inconvenience and expense to the state should not be granted lightly. (Id., at p. 331.)

The court is not bound to give full credence to the statements of a defendant in support of his motion to withdraw his plea, even if uncontradicted, in view of the defendant's obvious interest in the outcome of the proceeding. (People v. Beck (1961) 188 Cal.App.2d 549, 553.)

/ / / / /

112

0342

FILED
KENNETH E. MARTONE
Clerk of the Superior Court

JAN 08 1991

By: C. BURGESS, Deputy

EDWIN L. MILLER, JR.
District Attorney
EVAN MILLER
Deputy District Attorney
STACY RUNNING
Law Clerk
6002 County Courthouse
San Diego, California 92101
531-4473

Attorneys for Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

SAN DIEGO JUDICIAL DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, Plaintiff, v. MARTIN WALTERS, Defendant. | No. CR103749/DA B46516<br>POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO WITHDRAW HIS PLEA OF GUILTY<br>DATE: January 10, 1991<br>TIME: 10:00 A.M.<br>DEPT: S9 |

I

**THE BURDEN IS ON DEFENDANT TO DEMONSTRATE GOOD CAUSE FOR WITHDRAWING HIS GUILTY PLEA BY CLEAR AND CONVINCING PROOF.**

Penal Code section 1018 allows for the withdrawal of a previously entered plea at any time before judgment for good cause. The standard upon which said motion should be granted is a strong showing of clear and convincing proof. (People v. Cruz (1974) 12 Cal. 3d 562, 566; People v. Fratianno (1970) 6 Cal.App.3d 211, 222.)

The broad discretion vested in a court in connection with an evaluation of a motion pursuant to Penal Code section 1018 means a sound judicial discretion, and it will not be an abuse of discretion unless the court's decision exceeds the bounds of reason

COPY

# EXHIBIT COVER PAGE:

Exhibit: 4

Description of this exhibit: Petitioner's Motion to withdraw guilty Plea; Evidencing Petitioner's expectation of being released from incarceration at the age of 40. (20 years later)

Number of pages of this exhibit: 6 pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ____________________

the light most favorable to the government, these tapes show Martin Walters purchasing enormous quantities of precursor chemicals and supplies for the production of multi-hundred pound shipments of methamphetamine.

It was counsel's opinion, communicated to Mr. Walters, that the state of the federal prosecutor's evidence was extremely strong. It was also counsel's opinion, again communicated to Mr. Walters, that as a result of these videotapes, (and despite the fact that the People's evidence was nowhere near so strong), that even if we should prevail completely on all of the state charges, it was a near certainty that Mr. Walters would spend the rest of his natural life in a federal penitentiary should he elect to go to trial on those charges. The same opinions were communicated to him by his federal defense attorney, James Pokorny.

This information obviously had a profound effect on Martin. He was 20 years old when arrested. And because of the mutually mistaken belief that he faced an LWOP sentence in federal court on charges he would almost certainly be convicted of, he was under the impression that if he accepted the plea bargains offered and entered pleas of guilty to both cases, including a plea to the instant P.C. § 187 charge, he would in all likelihood walk out of prison at the age of 40 with most of his life in front of him; but if he did not resolve the cases by plea, he would serve the rest of his natural life incarcerated in a federal prison. This impression was the motivating factor in deciding to enter his plea of guilty to murder in the case now before your honor. It was obviously based on an extremely material misunderstanding of the true consequences of electing trial over entering a plea of guilty.

0336

III

A MUTUAL MISTAKE OF FACT ON SOMETHING AS MATERIAL AS FAILING TO UNDERSTAND THE CONSEQUENCES OF GOING TO TRIAL OVER PLEADING GUILTY JUSTIFIES WITHDRAWAL OF THE PLEA

"A plea of guilty cannot stand unless the record indicates a free and intelligent waiver of the three constitutional rights specified in Boykin v. Alabama (1969) 395 U.S. 238, and indicates so far as the defendant is concerned an understanding of the 'nature of the charge and the consequences of his plea.' (In re Tahl)." People v. Tabucchi, (1976) 64 Cal.App.3d 133, 142. Mere inferences that the defendant may have understood the consequences of entering a plea are insufficient. People v. Rizer, (1971) 5 C.3d 35. Understanding the permissible range of punishment provided by the statutes with which the defendant is charged is part and parcel of understanding the "consequences" of a plea of guilty. Bunnell v. Superior Court (1975) 13 C.3d 592.

"Generally a plea of guilty may be withdrawn for mistake, ignorance, inadvertence or any other factor overriding a defendant's free and clear judgment." People v. Tabucchi, supra, at 143, citing People v. Cruz (1974) 12 C.3d 562, 566. See also, People v. Barteau (1970) 10 Cal.App.3d 486, 486; People v. Brotherton (1966) 239 Cal.App.2d 195, 200-1. Moreover, trial courts are required to give a liberal construction to the provisions of Penal Code Section 1018 in the interests of promoting justice. People v. Superior Court (Giron) (1974) 11 C.3d 793, 796-7.

The sorts of "mistake" or "ignorance" that have formed the basis for having an appellate court order the withdrawal of a guilty plea have included a mistake of 16 months on the actual

an Diego County

earliest parole date on a sentence of five years to life. People v. Tabucchi, supra. If, as in Tabucchi, where the record demonstrated that the defendant understood every potential consequence other than the initial parole eligibility date, the law mandates allowing the withdrawal of a guilty plea, then surely Mr. Walters' belief that he was facing separate LWOP sentences in state and federal court, (and resolving his cases because of that belief), when in truth his federal case carried a term of years, compels the conclusion that Mr. Walters should be allowed to withdraw his plea.

IV

CONCLUSION

For these and all the foregoing reasons, Mr. Walters respectfully requests this court to allow him to withdraw his previously entered plea of guilty.

Dated: 12/4/90

By: [signature]
LARRY AINBINDER
Attorney for MARTIN WALTERS

FILED
KENNETH E. MARTONE
Clerk of the Superior Court
0332
DEC - 4 1990
By: A. WOODS, Dep.

FRANCIS J. BARDSLEY
Public Defender
Law Offices of the Public Defender
233 "A" Street, Suite 300
San Diego, California 92101
Telephone: (619) 338-4774

LARRY AINBINDER
Attorney for Defendant
MARTIN WALTERS

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, Plaintiff, v. MARTIN WALTERS, Defendant. | ) | CASE NO. CR 103749<br>C.A. NO. B 46516<br><br>**NOTICE OF MOTION TO WITHDRAW PLEA OF GUILTY (PENAL CODE §1018)**<br><br>DATE: December 18, 1990<br>TIME: 10:00 a.m.<br>DEPT: Superior 9 |

TO: EDWIN L. MILLER, DISTRICT ATTORNEY, AND HIS DESIGNATED REPRESENTATIVE, EVAN MILLER, DEPUTY DISTRICT ATTORNEY

PLEASE TAKE NOTICE that on December 18, 1990, at 10:00 a.m., defendant MARTIN WALTERS, by and through his attorney, LARRY AINBINDER, and the Office of the Public Defender, will move this Court to enter an order allowing him to withdraw his previously entered plea of guilty. This motion is based on the instant Notice of Motion, the Points and Authorities in Support of the Motion, and the attached Declaration and Affidavit.

I

PROCEDURAL STATUS

On May 9, 1990, MARTIN WALTERS entered a plea of guilty to first degree murder before this Honorable Court (P.C. § 187). The

COPY
San Diego County



EXHIBIT

offense carries a mandatory sentence of 25 years to life. It is a parolable offense, however, and Mr. Walters would first be eligible for release on parole after service of approximately 18 years. At the time of the plea, Mr. Walters was 22 years old.

The plea of guilty in the instant case was the result of extensive negotiations between not only the parties to this case, but also the prosecuting and defending lawyers involved in a federal criminal case then pending against Mr. Walters. The four lawyers, Evan Miller for the People, Thomas Ferraro for the United States, James Pokorny for Mr. Walters in the federal case, and counsel, had met and discussed a "package" settlement on a number of occasions.

As a result, on the same date, May 9, 1990, Mr. Walters also entered a plea of guilty to some of the federal charges contained in indictment number 89-0769-G. By reason of the plea agreements reached it was understood that the sentences in the two cases would run concurrent to one another, and it was anticipated that Mr. Walters would serve no more than 20 actual years on the federal charges to which he had plead guilty.

Mr. Walters is set to be sentenced on both cases pursuant to his negotiated pleas of guilty. He is moving to withdraw his guilty plea, however, for one very basic reason: There was throughout the negotiations and up through and including the time of his entering his plea, a mutual mistake of fact regarding the potential consequences involved should he have elected to go to trial.

////

////

II

FAILURE TO UNDERSTAND THE CONSEQUENCES

Mr. Walters was charged by indictment in federal court with committing a number of weapon and drug-related offenses. The indictment was filed in October of 1988. Some of the drug and weapons offenses formed a part of the overt acts charged in the instant cases' conspiracy counts. The two cases were and are integrally related.

Effective November 1, 1988, was a change in the penalties' section of the federal statutes which Mr. Walters was alleged to have violated. Important for this discussion was the addition of a life without the possibility of parole penalty for the primary count charged in his indictment. The life without provision, however, was not retroactive. In other words, it did not affect pre-November 1, 1988, offenses. Nevertheless, the lawyers involved in the federal case operated under the mistaken belief that Mr. Walters was facing life without the possibility of parole (hereinafter LWOP) if convicted of these same charges. This belief was communicated to those of us involved in the state case. It was also communicated to Mr. Walters. In fact, facing two separate LWOP cases, one in state court and one in federal, was the central theme of all of the discussions about resolving the two cases by plea.

The possibility of an LWOP sentence in the federal case took on an even greater significance in counsel's conversations with Mr. Walters when counsel had the opportunity to review the federal videotape evidence obtained by the DEA which the federal prosecutor planned on introducing at Mr. Walters' trial. Viewed in

# EXHIBIT COVER PAGE:

Exhibit: 5

Description of this exhibit: Hearing on Plea withdrawl motion evidencing Petitioner's expectation of serving 20 years in Custody; and Sentence transcripts. (altered by the state)

Number of pages of this exhibit: 31 pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections. 602 Exhibit.

_____Other: ____________________

HAVE THE REPORT IN FRONT OF ME.

THE QUESTION THOUGH, YOUR HONOR, IS ALSO DID HE RECEIVE THE BENEFIT OF HIS BARGAIN OVER IN STATE COURT. AS I POINT OUT IN MY MOVING PAPERS, HE WAS ALSO LOOKING AT A LIFE WITHOUT THE POSSIBILITY OF PAROLE IN STATE COURT. SO WHEN HE PLED TO THE FIRST DEGREE MURDER, HE GOT THE BENEFIT OF NO LONGER BEING EXPOSED TO A LIFE WITHOUT THE POSSIBILITY OF PAROLE IN STATE COURT.

IN ADDITION TO THAT, WE AGREED THAT HE COULD SERVE HIS TIME IN FEDERAL CUSTODY AS OPPOSED TO A STATE FACILITY. WE ALSO AGREED THAT ANY TIME HE GOT IN THE STATE CASE COULD BE CONCURRENT WITH THE FEDERAL TIME.

WE AGREED TO FILE NO CHARGES AGAINST BOTH HIS MOTHER AND HIS AUNT ON A SOLICITATION FOR MURDER CASE. WE ALSO AGREED - AND THE FEDERAL PROSECUTOR WAS HERE AT THE TIME OF THE CHANGE OF PLEA - THAT THE AMOUNT OF TIME THAT BOTH HIS MOTHER AND HIS AUNT WOULD GET ON THEIR FEDERAL CASE RELATED TO THE SOLICITATION OF MURDER, THAT WE WOULD PUT A LID ON THAT TIME AND ALL OF THAT HAS HAPPENED.

THERE HAVE BEEN NO CHARGES FILED AGAINST THE MOTHER. NO CHARGES AGAINST THE AUNT. AND, IN FACT, THE MOTHER AND AUNT WERE SENTENCED IN FEDERAL COURT TO THE LIMIT THAT WE DISCUSSED HERE IN STATE COURT. SO HE HAS RECEIVED THE BENEFIT OF THAT BARGAIN.

IN ADDITION TO THAT, THERE WAS A COMPANION DRUG CASE THAT WAS DISMISSED IN STATE COURT. SO HE HAS RECEIVED CONSIDERABLE -- A CONSIDERABLE AMOUNT OF BENEFIT OVER IN STATE COURT FOR THE PLEA THAT HE ENTERED.

Petitioner accepted These Statements by [illegible] For Value, as our Agreement These Words were used.

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br>PLAINTIFF AND RESPONDENT,<br>VS.<br>MARTIN E. WALTERS,<br>DEFENDANT AND APPELLANT. | CA NO.<br>CASE NO. CR 103749<br>MOTION TO WITHDRAW PLEA |

FROM SAN DIEGO COUNTY
HON. JESUS RODRIGUEZ, JUDGE

JANUARY 10, 1991
VOLUME ____ OF ____
PAGES 1 THROUGH 31

APPEARANCES:

FOR THE PLAINTIFF AND RESPONDENT: DANIEL LUNGREN, ATTORNEY GENERAL, STATE OF CALIFORNIA, 110 WEST A STREET, SAN DIEGO, CALIFORNIA 92101

FOR THE DEFENDANT AND APPELLANT: IN PROPRIA PERSONA

REPORTED BY: YVONNE A. MORENO, CSR 5366, OFFICIAL COURT REPORTER, SAN DIEGO SUPERIOR COURT

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

DEPARTMENT NO. 15 HON. PERRY LANGFORD, JUDGE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, PLAINTIFF, vs. MARTIN E. WALTERS, DEFENDANT. | CASE NO. CR 103749<br>MOTION TO WITHDRAW PLEA<br>PAGES 1 - 31 |

REPORTER'S TRANSCRIPT

JANUARY 10, 1991

APPEARANCES:

FOR THE PLAINTIFF: EDWIN L. MILLER, JR.
DISTRICT ATTORNEY
BY: EVAN MILLER
DEPUTY DISTRICT ATTORNEY
220 WEST BROADWAY
SAN DIEGO, CALIFORNIA 92101

FOR THE DEFENDANT: LARRY AINBINDER
DEPUTY PUBLIC DEFENDER
233 A STREET
SAN DIEGO, CALIFORNIA 92101

REPORTED BY: YVONNE A. MORENO, CSR 5366
OFFICIAL COURT REPORTER
SAN DIEGO SUPERIOR COURT

STATE OF CALIFORNIA )
) SS:
COUNTY OF SAN DIEGO )

THE PEOPLE OF THE STATE OF CALIFORNIA

VS.

MARTIN E. WALTERS

CASE NO. CR 103749

I, YVONNE A. MORENO, AN OFFICIAL REPORTER FOR THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF SAN DIEGO, DO HEREBY CERTIFY:

THAT AS SUCH REPORTER I REPORTED STENOGRAPHICALLY THE PROCEEDINGS HAD IN THE ABOVE-ENTITLED CASE, AND THAT THE FOREGOING TRANSCRIPT, CONSISTING OF PAGES NUMBERED FROM 1 TO 31, INCLUSIVE, IS A FULL, TRUE, AND CORRECT TRANSCRIPTION OF MY SHORTHAND NOTES TAKEN DURING THE PROCEEDINGS HAD ON JANUARY 10, 1991.

DATED AT SAN DIEGO, CALIFORNIA, THIS 23RD DAY OF MAY, 1991.

YVONNE A. MORENO, CSR 5366
OFFICIAL COURT REPORTER

SAN DIEGO, CALIFORNIA - THURSDAY, 01/10/91 - 10:00 A.M.

--oOo--

THE COURT: WE ARE IN CHAMBERS ON THE WALTERS MATTER, AND WE HAVE THE MR. AINBINDER AND ALSO MR. MILLER FROM THE D.A.'S OFFICE AND --

MS. RUNNING: AND STACY RUNNING ALSO WITH THE DISTRICT ATTORNEY'S OFFICE.

THE COURT: OKAY.

I BELIEVE WE TALKED YESTERDAY ABOUT WE WANTED TO PUT ON THE RECORD REGARDING SOME INFORMATION THAT WE OBTAINED FROM A DETECTIVE --

MR. MILLER: THAT'S CORRECT.

THE COURT: -- FROM THE SAN DIEGO POLICE DEPARTMENT APPROXIMATELY TWO WEEKS AGO.

MR. MILLER: I RECEIVED THE INFORMATION, YOUR HONOR, ON DECEMBER 26TH.

THE COURT: OKAY. THAT SOUNDS ABOUT RIGHT.

MR. MILLER: AND THE DETECTIVE INDICATED TO ME IT WAS ON THAT MORNING THAT HE RECEIVED THE INFORMATION.

THE COURT: IT WAS DURING THE CHRISTMAS HOLIDAYS THAT I RECEIVED THE INFORMATION. I WAS INFORMED BY THE DETECTIVE AND THE U.S. MARSHALS THAT AN INFORMANT HAD GIVEN THE DETECTIVE INFORMATION THAT IT WAS THE WORD OUT ON THE STREET THAT WALTERS' BROTHER, WHICH IS VINCENT WALTERS, WHO IS A FUGITIVE AND ALSO A PERPETRATOR IN THESE CASES, WAS GOING TO KIDNAP AN OFFICIAL THAT WAS RELATED TO THE CASE AND KIDNAP HIM AND HOLD HIM FOR EXCHANGE OF HIS BROTHER, MARTIN WALTERS. THAT INFORMATION WAS -- THAT'S THE EXTENT OF THE INFORMATION

THAT I GOT.

IT WAS NOT DETERMINED WHO THAT PARTICULAR OFFICIAL IS; WHETHER IT WAS THE D.A., MYSELF, THE FEDERAL PROSECUTOR, OR THE FEDERAL JUDGE.

IT'S MY UNDERSTANDING FROM THE INFORMATION THAT I HAVE GOTTEN EVEN TODAY THAT THE U.S. MARSHALS TRIED TO VERIFY ANY OF THE INFORMATION. NONE OF THE INFORMATION WAS VERIFIED. IT WAS MOSTLY A RUMOR THAT CAME ABOUT THROUGH THIS INFORMANT AND THEY -- THE INFORMATION THAT WAS GIVEN TO THE U.S. MARSHAL'S OFFICE, THEY DID NOT FEEL THAT IT WAS TO THE EXTENT THAT THEY HAD TO TELL EITHER THE PROSECUTOR, FEDERAL PROSECUTOR, OR THE JUDGE ABOUT IT. SO THEY LEFT IT AT THAT. THEY DIDN'T FEEL THAT THERE WAS ANY SUBSTANCE TO IT.

AS -- AS IT APPLIES TO ME, I WAS OFFERED ANY PROTECTION THAT I WANTED WITHIN OUR OWN DEPARTMENT OF THE MARSHAL'S DEPARTMENT, THE COUNTY. NO PROTECTION WAS GIVEN. I ALSO FELT THAT THERE WAS BASICALLY NO SUBSTANCE TO THE RUMORS AND THAT I FELT THAT, YOU KNOW, I DIDN'T NEED A BODYGUARD OR ANY PROTECTION, AND WITHOUT ANY VERIFICATION OF THE RUMORS, THERE WAS REALLY NOTHING.

I WILL ALSO TELL YOU THAT, TO MY KNOWLEDGE, THE PERSON THAT GAVE THE INFORMATION TO THIS DETECTIVE HAS A PENDING CASE IN THE STATE COURT SYSTEM. SO THAT, YOU KNOW, KIND OF ALSO GIVES SOME -- OR LITTLE WEIGHT TO THE INFORMATION THAT WE GOT.

BUT AS TO MR. MILLER, I DON'T KNOW WHAT INFORMATION YOU GOT, IF YOU CAN JUST STATE IT FOR THE RECORD.

MR. MILLER: THE ONLY THING I WOULD ADD, YOUR HONOR,

THIS INFORMANT WAS AN UNTESTED, NEVER USED BEFORE INFORMANT AND HAS NOT BEEN USED SUBSEQUENT TO THIS INFORMATION. THIS WAS A ONE TIME SHOT. AND AS THE COURT INDICATED, THE SOURCE OF THE INFORMATION WAS JUST THE WORD ON THE STREET, WHATEVER THAT MEANS.

THE COURT: SO I WOULD LIKE TO MAKE THAT CLEAR ON THE RECORD FOR WHATEVER HAPPENS TODAY, FOR YOUR INFORMATION OR WHATEVER.

MR. AINBINDER: I GUESS TO ROUND OUT THE RECORD, I SHOULD STATE THAT, YOUR HONOR AND MR. MILLER BOTH INFORMED ME OF THIS YESTERDAY EVENING WHEN WE WERE HERE TRYING TO JUST FIGURE OUT SCHEDULING PROBLEMS, AND I TOLD MR. WALTERS ABOUT IT, AS WELL AS HIS FEDERAL ATTORNEY, MR. POKORNY, ABOUT IT.

I TOLD MR. POKORNY ABOUT IT LAST NIGHT AND MARTIN ABOUT IT JUST NOW, AND I RELAYED TO MR. WALTERS THAT I DON'T BELIEVE THAT IT WILL COLOR IN ANY WAY THE PROCEEDINGS THAT WE ARE ABOUT TO ENGAGE IN THIS MORNING AND THAT MY PERCEPTION LAST NIGHT, WHICH WAS JUST A PERCEPTION AND NOTHING MORE, WAS THAT YOUR HONOR VIEWED IT IN SIMILAR LIGHT. AND HAVING HEARD WHAT YOU HAD TO SAY THIS MORNING, THAT SEEMS TO CONFIRM WHAT I HAVE JUST RELAYED TO MR. WALTERS.

I UNDERSTAND THE SECURITY MEASURES OUTSIDE, BUT --

THE COURT: THE SECURITY MEASURES IS BASICALLY NOT ONLY BECAUSE MR. WALTERS IS HERE -- PRESENT. WE HAVE HAD SECURITY MEASURES, BUT THE EXTENT OF THE SECURITY MEASURES IS BECAUSE, TO MY UNDERSTANDING, THE U.S. MARSHALS, THE FEDERAL AUTHORITIES ARE REALLY AFTER HIS BROTHER, VINCENT WALTERS.

AND FOR SOME REASON OR ANOTHER THEY FEEL THAT IF HE SHOWS UP IN DISGUISE OR WHATEVER, THEY HAVE PEOPLE HERE THAT CAN RECOGNIZE HIM AND TAKE HIM INTO CUSTODY.

MR. MILLER: IN ADDITION, YOUR HONOR, I BELIEVE THE FEDERAL AUTHORITIES ALSO BELIEVE THAT HE IS AN ESCAPE RISK AND THAT'S ONE OF THE REASONS THAT THEY HAVE ADDED SECURITY.

THE COURT: THAT'S ALSO TRUE.

APPARENTLY THEY HAVE HAD SOME INCIDENTS IN THE FEDERAL MCC. I DON'T KNOW IF THEY ARE RELATED OR NOT TO MR. WALTERS, BUT THEY HAVE HAD SOME INCIDENTS AND THEY ARE HERE TO PROTECT SOMEBODY THAT'S IN THEIR CUSTODY.

OKAY.

(THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT:)

THE COURT: 112, WALTERS.

MR. MILLER: EVAN MILLER AND STACY RUNNING FOR THE PEOPLE.

MR. AINBINDER: GOOD MORNING, YOUR HONOR. LARRY AINBINDER, OFFICE OF THE PUBLIC DEFENDER, ON BEHALF OF MARTIN WALTERS.

YOUR HONOR, MR. WALTERS IS NOW PRESENT BEFORE YOU AND IN CUSTODY.

THE COURT: OKAY.

LET'S TAKE UP YOUR FIRST ISSUE OR YOUR MOTION, MOTION TO WITHDRAW THE PLEA.

MR. AINBINDER: YOUR HONOR, I SHOULD INDICATE THAT I HAVE HERE FOR THE COURT AND I HAVE COPIES FOR MR. MILLER, ALTHOUGH I THINK HE HAS THEM ALREADY, BUT I WILL PROVIDE

COPIES TO BOTH YOUR HONOR AND TO MR. MILLER OF THREE DIFFERENT DOCUMENTS.

I HAVE HIGHLIGHTED WITH YELLOW UNDERLINING FELT PEN THE PORTIONS THAT ARE RELEVANT TO THE MOTION THAT I HAVE FILED.

LET'S SEE; I HAVE THE ORIGINAL OF THE TRANSCRIPT, BUT I THINK THAT THERE IS NO DISPUTE AS TO AUTHENTICITY.

AND I WOULD ASK THE COURT FIRST TO AT LEAST PERUSE THOSE LINES THAT HAVE BEEN HIGHLIGHTED BECAUSE THEY ARE GERMANE TO THE ISSUE.

(COURT READING.)

THE COURT: OKAY.

FOR THE RECORD, I HAVE -- THE DOCUMENTS -- ONE DOCUMENT HAS AN ENTRY DATE OF MAY 9TH, 1990, AND IT WAS SUBMITTED BY THE U.S. ATTORNEY'S OFFICE, WHICH CONTAINS A WRITTEN PLEA AGREEMENT IN THE FEDERAL CASE NUMBER 88-0769-G.

AND I HAVE A DOCUMENT DATED MAY 9TH, 1990, WHICH BEGINS AT PAGE 25 IN THE TRANSCRIPTS OF THE HEARING BEFORE THE FEDERAL COURT ON PAGES 25 TO 30.

I HAVE ANOTHER DOCUMENT BEFORE JUDGE GILLIAM OF THE FEDERAL DISTRICT COURT DATED MAY THE 8TH, 1990, AND THAT'S A DOCUMENT THAT'S MADE UP OF NINE PAGES.

I HAVE GONE THROUGH THE DOCUMENTS AND READ THE RELEVANT PARTS AS MARKED OUT BY MR. AINBINDER.

MR. AINBINDER, YOU MAY PROCEED WITH YOUR MOTION.

MR. AINBINDER: THANK YOU, YOUR HONOR.

I THINK IT'S IMPORTANT THAT WE BEGIN BY HAVING

SOME UNDERSTANDING OF THE HISTORY OF THIS CASE, BECAUSE IT IS A LENGTHY ONE, AND THEN FOCUSING NEXT ON THE EVENTS THAT TOOK PLACE ON MAY 7TH, 8TH, AND 9TH OF 1990.

THE CASES BEFORE YOUR HONOR THAT WE HAVE THE MOTION ON, AS WELL AS THE CASE THAT WAS BEFORE JUDGE GILLIAM, WERE STILL BEFORE JUDGE GILLIAM THAT'S REFERENCED IN BOTH THE MOTION AND IN THE DOCUMENTS NOW BEFORE YOU. BOTH BEGAN IN THE FALL OF 1988.

WE HAVE HAD A NUMBER OF DIFFERENT LAWYERS ON THE CASE. I WAS THE THIRD LAWYER ON MR. WALTERS' STATE CASE. MR. POKORNY, WHO WAS HIS LAWYER AT THE TIME OF THE ENTRY OF THE PLEAS, WAS HIS SECOND LAWYER ON THE FEDERAL CASE.

BUT WHAT'S REALLY IMPORTANT IS THIS: BOTH STATE AND FEDERAL OFFICIALS ARE WORKING TOGETHER IN TERMS OF LAW ENFORCEMENT OFFICIALS ARE WORKING TOGETHER AND SHARING INFORMATION AND COLLECTIVELY ASSISTING MR. MILLER OVER HERE IN A STATE CASE AND MR. FERRARO IN THE FEDERAL CASE IN WHAT IS LITERALLY A JOINT PROSECUTION OF TWO CASES INTERTWINED BOTH FACTUALLY AND LEGALLY.

NOW, THE PROBLEM REALLY BEGINS AS FAR AS THE MOTION IS CONCERNED WITH THIS: THE INDICTMENT FILED IN FEDERAL COURT IS FILED IN THE LAST FEW DAYS OF OCTOBER 1988. IT CHARGES, AMONG A NUMBER OF OFFENSES -- THE ESSENCE OF IT BEING A CONSPIRACY TO MANUFACTURE SEVERAL HUNDRED POUNDS OF METHAMPHETAMINE, THE USE OF WEAPONS, AND THE FACT THAT DURING THE COURSE OF THIS CONSPIRACY A KIDNAP AND MURDER TOOK PLACE.

THAT IS THE VERY SAME KIDNAP AND MURDER WHICH WAS ALLEGED IN THE STATE INFORMATION AND WHICH HAS BEEN THE

PEOPLE'S THEORY FROM THE BEGINNING, WHICH WAS THAT MR. WALTERS WAS INVOLVED WITH SOME OTHER PEOPLE IN THE MANUFACTURE OF METHAMPHETAMINE AND THE DISTRIBUTION OF METHAMPHETAMINE. AND THAT DURING THE COURSE OF HIS CONSPIRACY AS A METHAMPHETAMINE MANUFACTURER AND DEALER, SOMEONE GOT A HOLD OF SOME OF THEIR METHAMPHETAMINE AND IN AN EFFORT TO RETRIEVE IT, TWO PEOPLE WERE KIDNAPPED, ONE OF THEM WAS ULTIMATELY KILLED, AND THAT'S THE BASIC SCENARIO OF THE STATE CASE.

IT IS ALSO THE THEORY OF THE FEDERAL COURTS, WHICH IS THAT THERE IS A CONSPIRACY TO MANUFACTURE AND DISTRIBUTE METHAMPHETAMINE, AND THAT DURING THE COURSE OF IT KIDNAPS TOOK PLACE AND ULTIMATELY A MURDER TOOK PLACE.

NOW, THE STATE OR RATHER THE FEDERAL SYSTEM HAD BEEN UNDERGOING SOME RATHER MAJOR CHANGES IN TERMS OF CONGRESSIONAL AMENDMENTS TO THE WHOLE CRIMINAL JUSTICE SYSTEM OVER THERE. '84, '86, AND '88 ARE ESSENTIALLY LANDMARKS IN COMPLETE REVISIONS AND REVAMPINGS OF THE FEDERAL CRIMINAL SYSTEM. EFFECTIVE IN NOVEMBER '86 IS A NEW ANTIDRUG ACT, AND PORTIONS OF IT DO NOT BECOME EFFECTIVE UNTIL NOVEMBER 1, 1988.

THE INDICTMENT IN FEDERAL COURT CHARGING MR. WALTERS WITH THE CONSPIRACY TO MANUFACTURE AND DISTRIBUTE METHAMPHETAMINE DURING THE COURSE OF WHICH HE WAS ALLEGED IN THAT INDICTMENT TO HAVE COMMITTED THE VERY ACTS CHARGED IN THE STATE CASE, THAT INDICTMENT WAS FILED IN THE LAST DAYS OF OCTOBER 1988.

AT THE TIME IT WAS FILED, ALL THE PARTICIPANTS

ON THE FEDERAL SIDE BELIEVED THAT THE NEW PENALTY PROVISIONS REGARDING THE CONSPIRACY TO MANUFACTURE IN EXCESS OF ONE HUNDRED GRAMS OF METHAMPHETAMINE HAD ALREADY BECOME EFFECTIVE.

THE NEW PENALTY PROVISIONS WOULD HAVE PROVIDED LIFE WITHOUT THE POSSIBILITY OF PAROLE AS THE MAXIMUM SENTENCE, AND FROM THE BEGINNING OF THE FEDERAL CASE IN OCTOBER OF 1988 IT WAS THE FIRM BELIEF OF THE ASSISTANT UNITED STATES ATTORNEY, TOM FERRARO, OF THE JUDGES WHO HANDLED THE CASE BOTH ON THE MAGISTRATE LEVEL AND ULTIMATELY JUDGE GILLIAM IN DISTRICT COURT AND ALL OF THE CRIMINAL DEFENSE LAWYERS INVOLVED WITH THE MANY DEFENDANTS, BUT PARTICULARLY THOSE FOR MR. WALTERS, THAT WHAT HE WAS FACING AS A RESULT OF BEING CHARGED WITH CONSPIRACY TO MANUFACTURE IN EXCESS OF A HUNDRED GRAMS OF METHAMPHETAMINE WAS A LIFE SENTENCE.

AND BECAUSE IN 1984 CONGRESS HAD ABOLISHED PAROLE IN THE FEDERAL SYSTEM, THAT MEANT LIFE WITHOUT THE POSSIBILITY OF PAROLE.

MOREOVER, BECAUSE OF THE GUIDELINES SYSTEM THAT HAD KICKED INTO THE FEDERAL DECISION-MAKING PROCESS AS FAR AS THE IMPOSITION OF SENTENCES WENT AND BECAUSE OF THE ADDITION OF WHAT ARE CALLED MINIMUM MANDATORIES, MR. WALTERS WAS UNDER THE IMPRESSION THAT HE FACED A MINIMUM MANDATORY TEN NONPAROLABLE YEARS, A GUIDELINE RANGE OF 420 MONTHS TO LIFE, AND THE POSSIBILITY OF LIFE WITHOUT THE POSSIBILITY OF PAROLE AS A SENTENCE FOR THE CONSPIRACY TO MANUFACTURE METHAMPHETAMINE FOR WHICH HE WAS CHARGED. THAT'S BASICALLY

WHERE WE BEGIN.

NOW, I STEPPED INTO THE CASE IN NOVEMBER OF 1989, 13 MONTHS AFTER HE WAS INDICTED, AND A GOOD 13 MONTHS AFTER HE WAS CHARGED HERE IN STATE COURT.

AND FROM THE MOMENT THAT I GOT INTO THE CASE, AND AS I DO IN EVERY CASE, I WAS LOOKING AT BOTH ASPECTS OF WHAT A CRIMINAL DEFENSE ATTORNEY DOES: LOOKING ON THE ONE HAND TO SEE IF THE CASE COULD BE RESOLVED, AND, IF SO, HOW. AND ON THE OTHER HAND, LOOKING TO DEFEND THE CHARGES AND KEEPING AN EYE ON HOW THIS CASE MIGHT BE PLAYED OUT IN FRONT OF 12 PEOPLE FROM A JURY.

ON THE ONE HAND, IN TERMS OF LOOKING AT HOW IT MIGHT BE RESOLVED, IT WAS CLEAR THAT THE CASES HAD TO BE RESOLVED JOINTLY, BOTH STATE AND FEDERAL. THEY WERE RELATED TO ONE ANOTHER. THERE WAS A LIFE WITHOUT POSSIBILITY OF PAROLE PROVISION IN THE STATE CASE. I WAS TOLD AND BELIEVED THERE WAS A LIFE WITHOUT POSSIBILITY OF PAROLE POSSIBILITY IN THE FEDERAL CASE, AND SO IN ATTEMPTING TO NEGOTIATE ANY SORT OF RESOLUTION OF THE CASES, IT WAS THAT THAT WAS OUR STARTING POINT.

NOW, DESPITE A NUMBER OF DISCUSSIONS, BOTH WITH MR. WALTERS AS HIS ATTORNEY, DISCUSSIONS WITH MR. POKORNY, DISCUSSIONS WITH THE PEOPLE AND WITH THE UNITED STATES ATTORNEY'S OFFICE THROUGH TOM FERRARO, DESPITE ALL OF THOSE NEGOTIATIONS, ON MAY 7TH WE APPEARED IN THIS COURT ON MR. WALTERS' ZERO DAY, AFTER A NUMBER OF CONTINUANCES HAD BEEN GRANTED, BUT ULTIMATELY HIS ZERO DAY FOR TRIAL, AND WE ANSWERED UP READY.

AND ON MAY 7TH, UNFORTUNATELY, JUDGE GILLIAM HAD PHYSICAL CUSTODY OF MR. WALTERS OVER IN THE MCC AND WOULD NOT ALLOW HIM TO BE RELEASED, AND DESPITE THE FACT THAT THE FEDERAL CASE HAD BEEN DECLARED COMPLEX, WHICH IS A TERM OF ART WITHIN THEIR SPEEDY TRIAL ACT, MEANING THAT THERE IS NO SPEEDY TRIAL ACT ANYMORE, THERE IS NO SPEEDY TRIAL PROVISION, IT WAS JUDGE GILLIAM'S INTENTION TO KEEP MR. WALTERS IN FEDERAL CUSTODY AND TO PROCEED WITH THE FEDERAL TRIAL, WHICH WAS SCHEDULED TO BEGIN THE FOLLOWING MORNING, THE MORNING OF MAY 8TH.

I APPEARED IN JUDGE GILLIAM'S DEPARTMENT ON THE MORNING OF MAY 8TH, AND MR. POKORNY WAS THERE, MR. MILLER WAS THERE. SO WAS MR. FERRARO. AND WE DISCUSSED WITH JUDGE GILLIAM WHICH CASE WOULD BE ALLOWED TO PROCEED FIRST.

IN GETTING INVOLVED IN THE DISCUSSIONS AS TO WHO WAS PREPARED AND WHO WAS NOT, BECAUSE MR. POKORNY WAS REPRESENTING TO THE COURT THAT HE WAS NOT PREPARED TO PROCEED ON THE FEDERAL CASE, JUDGE GILLIAM WANTED TO KNOW WHY THE CASE HADN'T RESOLVED. AND AS A RESULT, WE HAD SOME DISCUSSIONS ON THE RECORD, AND THOSE DISCUSSIONS ARE REFLECTED IN THE ONE DOCUMENT BEFORE YOUR HONOR DATED MAY 8, 1990, AT 10:00 O'CLOCK A.M..

AND IN THOSE DISCUSSIONS, WITH AN EYE TOWARDS RESOLVING THE CASE, MARTIN WALTERS IS CLEARLY INFORMED, BOTH BY THE JUDGE, BY THE FEDERAL PROSECUTOR, AND BY MYSELF AND MR. POKORNY, THAT WHAT HE WAS LOOKING AT WAS LIFE WITHOUT THE POSSIBILITY OF PAROLE IN FEDERAL COURT.

I DON'T NEED TO REREAD THEM SINCE I AM ASKING

THAT THOSE BE MADE EXHIBITS FOR THE COURT, BUT HE'S CLEARLY INFORMED THAT THE PENALTIES THAT HE'S LOOKING AT ARE LIFE WITHOUT THE POSSIBILITY OF PAROLE AND, MORE THAN THAT, THE FEDERAL PROSECUTOR IS SAYING THAT ALTHOUGH HE CAN'T FORECAST WHAT THE COURT IS GOING TO DO, IT IS HIS FIRM POSITION THAT GIVEN THE AMOUNT OF METHAMPHETAMINE THAT THESE GENTLEMAN WERE ALLEGED TO HAVE CONSPIRED TO PRODUCE AND THE FACT OF A KIDNAP AND DEATH, HE WAS ADAMANTLY GOING TO PURSUE LIFE WITHOUT PAROLE AS THE APPROPRIATE SENTENCE.

NOW, ALL THIS INFORMATION IS BEING GIVEN TO MR. WALTERS AND IT IS OBVIOUSLY VERY POWERFUL. YOU'RE DEALING WITH A FELLOW WHO WAS ARRESTED AT THE AGE OF 20, WHO HAS BASICALLY A NONEXISTENT RECORD. WE DON'T HAVE SOMEBODY WHO'S VERSED IN THE SYSTEM OR EXTREMELY EXPERIENCED AND WHO'S NOW BEEN IN CUSTODY SOME 20 MONTHS, WHO'S BEING TOLD, AND IN NO UNCERTAIN TERMS, "SON, WHAT YOU'RE TALKING ABOUT IS LITERALLY YOUR LIFE." THAT'S WHAT JUDGE GILLIAM IS TELLING HIM AND ALL OF HIS LAWYER AND ALL OF THE OPPOSING LAWYERS ARE TELLING HIM. "WHAT YOU'RE LOOKING AT IS LIFE; THE REST OF YOUR NATURAL LIFE IN A FEDERAL PENITENTIARY."

AS A RESULT OF THIS DISCUSSION ON THE RECORD ON MAY 8TH, JUDGE GILLIAM ASKS MR. WALTERS TO CONSIDER AGAIN WHETHER HE REALLY WANTS TO GO TO TRIAL OR WHETHER HE SHOULDN'T RESOLVE THE CASE.

THOSE DISCUSSIONS CONTINUE ALL THE WAY UNTIL THE FOLLOWING DAY, MAY 9TH, AND ULTIMATELY MAY 9TH, THE CASE RESULTED IN GUILTY PLEAS, BOTH HERE IN STATE COURT TO THE PC 187 CHARGE, AS WELL AS IN FEDERAL COURT TO THE CONSPIRACY

TO MANUFACTURE AND TO THE USE OF A FIREARM DURING THE COURSE OF A DRUG TRANSACTION.

THAT'S WHAT YOUR HONOR SEES IN THE PAGES 25 THROUGH 30 OF THE MAY 9TH DOCUMENT IN FRONT OF YOU AS WHATEVER THE SECOND EXHIBIT.

AND EVEN AT THAT POINT IN TIME IT'S CLEAR THAT ALL THE PARTICIPANTS WERE OPERATING UNDER THE BELIEF THAT MR. WALTERS WAS FACING LIFE WITHOUT THE POSSIBILITY OF PAROLE, AND THE PLAIN FACT OF THE MATTER IS THE MAXIMUM SENTENCE FOR THE CRIME HE WAS CHARGED WITH IN FEDERAL COURT AT THAT TIME WAS 20 YEARS. THERE WAS NO TEN YEAR MINIMUM MANDATORY. THERE WAS NO 420 MONTHS TO LIFE GUIDELINES SYSTEM. IT WAS A MAXIMUM 20 YEARS STATUTORY LID ON THAT. IT WAS NOT A LIFE TOP.

AND IN FACT IN THE PLEA AGREEMENT, THEY HAVE THE FORMAL AGREEMENT SYSTEM IN FEDERAL COURT THAT HE SIGNED. ON PAGE TWO PREPARED BY THE ASSISTANT U.S. ATTORNEY LAM ON THE CASE INDICATES THAT THE MAXIMUM POTENTIAL PENALTY IS LIFE IMPRISONMENT AND THAT SAME U.S. ATTORNEY THE MORNING BEFORE MAKES VERY CLEAR THAT THAT MEANS LIFE WITHOUT THE POSSIBILITY OF PAROLE, AND THAT MEANS THE REST OF HIS NATURAL LIFE IN CUSTODY.

SO WHAT WE BEGIN WITH IS A FELLOW WITH BASICALLY NO PRIOR CRIMINAL HISTORY WHO'S BEEN INFORMED BY ALL OF HIS DEFENSE ATTORNEYS, BY THE PROSECUTORS INVOLVED, BY THE JUDGE INVOLVED, BY EVERYONE WHO IS ADVISING HIM AND TALKING TO HIM THAT "YOU HAVE TWO LIFE WITHOUT THE POSSIBILITY OF PAROLE CASES AND YOU BETTER SERIOUSLY CONSIDER WHAT YOU'RE DOING

HERE BEFORE YOU GO TO TRIAL."

AND DESPITE THE FACT THAT WE HAD HAD SIMILAR DISCUSSIONS ALL ALONG, HE TOOK THE CASE RIGHT TO THE ZERO DAY AND WAS PREPARED TO ANSWER UP READY. IT WAS ONLY AFTER THESE DISCUSSIONS IN FRONT OF JUDGE GILLIAM THAT WE ULTIMATELY WERE ABLE TO RESOLVE THE CASE.

NOW, FIRST AS TO SOME STANDARDS HERE, THE PEOPLE STATE IN THEIR MOVING PAPERS THAT THE STANDARD IS ON THE DEFENSE TO PROVE BY CLEAR AND CONVINCING EVIDENCE CERTAIN THINGS AND THAT IS TRUE, BUT WHAT WE ARE NOT REQUIRED TO DO IS CONVINCE YOUR HONOR TO GRANT THE MOTION BY CLEAR AND CONVINCING EVIDENCE.

WE ARE REQUIRED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE FACTS WHICH WE ALLEGE SUPPORT A MOTION TO WITHDRAW DRAW A PLEA ARE TRUE, AND I THINK IT'S OBVIOUS THAT WE HAVE MET THAT BURDEN. IT'S CLEAR THAT MR. WALTERS WAS, IN FACT, INFORMED AND HAD BEEN ALL ALONG THAT THE PENALTIES IN THE FEDERAL CASE WERE LIFE WITHOUT THE POSSIBILITY OF PAROLE AND NOT THE 20 YEAR STATUTORY LIMIT WHICH WAS THE STATE OF THE LAW AT THE TIME THAT HE WAS CHARGED.

ON THE OTHER HAND, THERE IS A SECOND STANDARD WHICH OPERATES IN CASES LIKE THIS AND THAT IS THAT YOUR HONOR IS TO LIBERALLY CONSTRUE A MOTION TO WITHDRAW A GUILTY PLEA IN FAVOR OF THE DEFENDANT, AND THAT PARTICULARLY IN CASES THAT HAVE NOT GONE TO JUDGMENT, THAT THE 171018 SHOULD BE LIBERALLY CONSTRUED AND LIBERALLY APPLIED WITH RESPECT TO A MOVING DEFENDANT, AND THAT STANDARD IS NOT REFLECTED IN THE PEOPLE'S PAPERS AND IT IS REFLECTED IN OURS.

SO FIRST I AM GOING TO SUGGEST TO YOU THAT WE HAVE MET OUR BURDEN, WHICH IS TO ESTABLISH BY CLEAR AND CONVINCING EVIDENCE THE FACTS WHICH WE ALLEGE SUPPORT WITHDRAWING THE PLEA; THOSE FACTS BEING THAT MR. WALTERS WAS INFORMED ALL ALONG AND HAD BEEN UP TO THE MOMENT OF ENTERING HIS PLEAS THAT HE WAS FACING LIFE WITHOUT THE POSSIBILITY OF PAROLE IN FEDERAL COURT.

THEN ADDRESSING THE QUESTION OF YOUR HONOR'S DISCRETION, WHAT I WANT TO TELL YOU IS THIS: THIS WAS A CASE IN WHICH LITERALLY THERE WERE HUNDREDS OF HOURS OF DISCUSSION. PARTICULARLY NOT BEING THE INITIAL LAWYER ON THE CASE AND NOT PARTICIPATING IN THE PRELIM, WHAT I WILL TELL YOUR HONOR IS IT WAS 17 VOLUMES. THERE WAS A LOT OF EVIDENCE TO REVIEW. THERE WAS A LOT OF FEDERAL EVIDENCE; LITERALLY BOXES OF IT.

AND IN THAT PART OF MY JOB WHICH RELATES TO RESOLVING THE CASE, IF IT CAN BE RESOLVED, MR. WALTERS AND I HAD A VERY CLEAR UNDERSTANDING, AND I AM RESPONSIBLE FOR IT, AND THIS UNDERSTANDING WAS WITNESSED AND SHARED BY OTHER LAWYERS; BY MR. POKORNY, BY MR. CORTEZ, AND ULTIMATELY BY ALEX LANDON, WHO REPRESENTED MARTIN'S MOTHER, AND THAT UNDERSTANDING IS THIS:

AS BETWEEN THE TWO CASES, WHILE THE PEOPLE'S EVIDENCE WAS CERTAINLY NOTHING TO BE SET ASIDE LIGHTLY IN THIS CASE, THE EVIDENCE THAT THE FEDERAL PROSECUTOR HAD AS TO THE FEDERAL CHARGES WAS ABSOLUTELY OVERWHELMING. THAT WAS THE ADVICE THAT I GAVE MARTIN. THAT WAS THE ADVICE THAT MR. POKORNY GAVE HIM, THAT MR. CORTEZ GAVE HIM, AND THAT WAS

SHARED WITH HIM ALSO BY MR. LANDON.

AND THE REASON WE GAVE THAT COUNSEL TO HIM WAS THAT THE FEDERAL AUTHORITIES IN THE SCOPE OF THEIR TRIPLE NECK INVESTIGATION HAD INSTALLED VIDEO CAMERAS AND HAD ON SEVERAL OCCASIONS VIDEOTAPED MR. WALTERS PARTICIPATING IN -- AS I HAVE DESCRIBED IT, VIEWED IN THE LIGHT MOST FAVORABLE TO THE FEDERAL GOVERNMENT, PARTICIPATING IN DISCUSSIONS TO PURCHASE LITERALLY THOUSANDS OF POUNDS OF PRECURSOR MATERIALS FOR THE PRODUCTION OF METHAMPHETAMINE.

ON SEPTEMBER 9, 1988, THERE IS A VIDEOTAPE SHOWING HIM NEGOTIATING THE PURCHASE OF 270 55 GALLON DRUMS OF FREON AND LITERALLY THOUSANDS OF POUNDS OF OTHER MATERIALS.

BECAUSE OF THOSE VIDEOTAPES, THE COUNSEL GIVEN TO HIM BY MYSELF AND BY THE OTHER LAWYERS UNEQUIVOCALLY WAS THAT EVEN IF WE WERE TO GO TO TRIAL ON THE STATE CHARGES, EVEN IF WE WERE TO REJECT ANY NEGOTIATION ON THE STATE CHARGES AND HE WERE TO BE COMPLETELY EXONERATED OF EVERY SINGLE COUNT, THAT HE WOULD IN FACT, BY REASON OF THE VIDEOTAPES, BE CONVICTED OF THE FEDERAL CHARGES.

AND BECAUSE HE WAS FACING LIFE WITHOUT THE POSSIBILITY OF PAROLE, AND BECAUSE IF ANY CASE THAT WE HAD EVER SEEN IN FEDERAL COURT WAS GOING TO GET IT, THIS WAS THE ONE, IT WAS UNANIMOUS ADVICE TO MR. WALTERS THAT "EVEN IF YOU WALK AWAY ENTIRELY FROM THE STATE CHARGES, YOU WILL BE CONVICTED OF THE FEDERAL CHARGES AND YOU WILL RECEIVE A SENTENCE OF LIFE WITHOUT THE POSSIBILITY OF PAROLE."

AND IF THAT WAS THE CASE, THEN IT WAS OUR ADVICE

TO HIM THAT "WHY WOULD YOU WANT TO DO THAT." AND FOR THAT REASON WE SUGGESTED TO HIM THAT THE OFFERS MADE ON BOTH SIDES OF THE STREET, A PLEA TO FIRST DEGREE MURDER OVER HERE, A PAROLABLE OFFENSE, PLEAS TO THE CONSPIRACY TO MANUFACTURE METHAMPHETAMINE AND TO THE GUN COUNTS OVER IN FEDERAL COURT, RUN CONCURRENT WITH A RELEASE DATE ANTICIPATED AT 20 YEARS, WERE SOMETHING THAT MADE A LOT MORE SENSE.

IT WAS ESSENTIALLY OUR JOINT ADVICE TO THE OPINION THAT FACING LIFE WITHOUT PAROLE IN A FEDERAL CASE, WHERE THERE WAS VIDEOTAPE EVIDENCE AS STRONG AS THAT VIDEOTAPE EVIDENCE APPEARED, THAT THAT WAS JUST SUICIDAL. AND SO THAT NO MATTER WHAT THE STRENGTHS OR WEAKNESSES OF THE PEOPLE'S EVIDENCE IN THIS CASE, IT MADE NO SENSE TO REJECT THE OFFER AND TO BE ACQUITTED, LET'S SAY, OVER HERE AND TO TURN AROUND AND BE CONVICTED IN FEDERAL COURT AND SPEND THE REST OF HIS NATURAL LIFE IN FEDERAL PRISON.

THAT WAS THE MOTIVATING FACTOR AND THE RECURRENT REASON FOR HIS ENTERING HIS PLEA TO THIS CHARGE, AND IT'S FOR THAT REASON THAT IT'S MY READING OF THE LAW HE SHOULD BE ENTITLED TO WITHDRAW HIS PLEA IN THIS CASE.

I WILL SIT DOWN BASICALLY WITH THIS LAST THOUGHT: TO TELL HIM THAT THAT FACT DOES NOT JUSTIFY WITHDRAWING HIS PLEA IS ESSENTIALLY TO SAY "WELL, 20 YEARS OR LIFE WITHOUT THE POSSIBILITY OF PAROLE, YOU BASICALLY UNDERSTOOD THE PARAMETERS OF THE PLEA, WHICH IS THAT YOU'RE GOING TO DO A LOT OF TIME AND REALLY WHAT'S THE DIFFERENCE."

AND IN MY MIND WHEN YOU'RE TALKING ABOUT A FELLOW WHO THEN WAS 22 YEARS OLD AND TRYING TO MAKE SOME

DECISIONS BASED UPON WHETHER HE WOULD WALK OUT OF PRISON ROUGHLY AT THE AGE OF 40 OR SPEND THE REST OF HIS NATURAL LIFE IN PRISON, PARTICULARLY AS IT HAD BEEN IMPRESSED UPON HIM BY BOTH THE FEDERAL JUDGE, THE FEDERAL PROSECUTOR, MYSELF, HIS FEDERAL DEFENSE ATTORNEY AND THE PRECEEDING LAWYERS, IT'S JUST MIND-BOGGLING TO BELIEVE THAT THAT DID NOT AFFECT AND DID NOT CONTROL HIS DECISIONS IN THIS CASE, AND FOR THESE REASONS WE BELIEVE IT'S APPROPRIATE TO ALLOW HIM TO WITHDRAW HIS PLEA.

THE COURT: OKAY.

BEFORE I ASK THE PEOPLE TO RESPOND, LET ME ASK YOU THIS, MR. AINBINDER. IT'S YOUR POSITION THAT AS BORNE OUT BY THE DOCUMENTS THAT YOU SUBMITTED FROM THE FEDERAL COURT THAT ALL PARTIES, THE JUDGE IN THE FEDERAL SYSTEM, AS WELL AS ALL THE PARTIES IN THE STATE SYSTEM AND THE PROSECUTOR AND EVERYBODY INVOLVED IN THE CASE AS TO THE FEDERAL CASE, THEY WERE UNDER THE MISTAKEN BELIEF THAT THE MAXIMUM PUNISHMENT AT THAT TIME WAS LIFE IMPRISONMENT.

MR. AINBINDER: THAT IS CORRECT.

THE COURT: JUST LIFE WITHOUT POSSIBILITY OF PAROLE UNDER THE FEDERAL SYSTEM.

MR. AINBINDER: THAT'S CORRECT.

THE COURT: NOW, MY QUESTION IS, FIRST OF ALL, IS WAS THAT A QUESTION, WHETHER HAD IT -- WHERE THERE WAS AN OPEN ISSUE IN THE FEDERAL SYSTEM WHETHER OR NOT THE NEW TERM APPLIED TO YOUR CLIENT OR CASES RELATED SIMILAR TO YOUR CLIENT, OR WAS IT SOMETHING THAT CAME ABOUT IN TERMS OF A CASE WHICH CLARIFIED THE ISSUE OF RETROACTIVITY.

MR. AINBINDER: NO. THAT'S AN INCISIVE QUESTION, YOUR HONOR. IS IT NOT THE RESULT OF A CASE WHICH CAME DOWN WHICH SAYS THESE 1986 CHANGES ARE NOT RETROACTIVE EXCEPT AS TO THOSE OFFENSES OCCURRING AFTER NOVEMBER 1. IT IS JUST A SIMPLE OVERSIGHT, MISTAKE.

THE INDICTMENT WAS FILED IN FEDERAL COURT. I DON'T HAVE THE EXACT DATE IN FRONT OF ME BECAUSE I DON'T HAVE THE DOCUMENT IN FRONT OF ME, BUT IT WAS IN THE LAST WEEK OF OCTOBER FOR 1988, AND IT WAS JUST AN ABSOLUTE OVERSIGHT.

THERE HAS BEEN NO DECISION ON RETROACTIVITY. IT WAS JUST A CLEAR STATEMENT OF THE LAW BEGINNING NOVEMBER 1, 1988, ON ANY OFFENSES OCCURRING NOVEMBER 1, 1988, ON CONSPIRACY TO MANUFACTURE METHAMPHETAMINE IN EXCESS OF A HUNDRED GRAMS WILL BE PUNISHABLE BY A MINIMUM TEN YEARS UP TO LIFE.

AND FOR SOME REASON I DON'T KNOW, SINCE I WASN'T INVOLVED IN THE FIRST 13 MONTHS, IT WAS JUST A MISTAKEN ASSUMPTION THAT THIS CASE FIT THE POST-NOVEMBER 1, AND NO ONE QUESTIONED IT, NO ONE THOUGHT ABOUT IT, AND IT WAS NOT THE RESULT OF ANY DECISION THAT CAME DOWN EITHER FROM THE 9TH CIRCUIT OR FROM THE SUPREME COURT CLARIFYING IT. IT WAS JUST AN ABSOLUTE OVERSIGHT, MISTAKE.

THE COURT: OKAY.

LET ME ASK YOU THIS: WHEN WAS THE MISTAKE DISCOVERED IN THE FEDERAL SYSTEM AS IT RELATED TO THIS CASE?

MR. AINBINDER: IT WAS DISCOVERED WHEN THE PROBATION REPORT WAS BEING PREPARED IN THE FEDERAL SYSTEM, BECAUSE YOUR HONOR CAN SEE THAT -- I SHOULD CLARIFY ONE LAST MATTER.

WE ANSWERED UP READY ON THE 7TH ON MR. WALTERS' ZERO DAY. WE SPENT THE 8TH BASICALLY OVER IN FEDERAL COURT TRYING TO NEGOTIATE MR. WALTERS' RELEASE FROM JUDGE GILLIAM'S CUSTODY OVER HERE, AND ON THE AFTERNOON OF THE 9TH THE MATTER WAS RESOLVED, BOTH CASES.

THE PLEA HERE IN STATE COURT TOOK PLACE IN THE MIDDLE OF THE AFTERNOON. IT WAS FOLLOWED IMMEDIATELY BY THE PLEA IN FEDERAL COURT; ROUGHLY A HALF AN HOUR, 45 MINUTES LATER.

THE PLEA AGREEMENT WHICH YOUR HONOR HAS BEFORE YOU DATED MAY 9TH WAS TYPED AFTER MR. WALTERS HAD PLED TO THE 187 BEFORE YOUR HONOR. IN FACT, I WAS PRESENT WITH MR. FERRARO IN HIS OFFICE AFTER WE LEFT THIS COURTROOM AND WENT OVER TO FEDERAL COURT BECAUSE HE DID NOT HAVE A PLEA AGREEMENT PREVIOUSLY TYPED.

AND THE TRANSCRIPT PAGES 25 THROUGH 30, THE CHANGE OF PLEA IN FRONT OF JUDGE GILLIAM, THAT WAS LATE IN THE AFTERNOON AND I THINK IT WAS ABOUT 5:00 O'CLOCK OR SO. AND SO IT WAS NOT DISCOVERED UNTIL A NUMBER OF WEEKS AFTER THE PLEAS HAD BEEN ENTERED.

THE COURT: OKAY.

WHEN WAS THE SENTENCING SET IN THE FEDERAL COURT?

MR. AINBINDER: IT'S NOW SET, I THINK, FOR --

THE COURT: WHEN WAS THE FIRST SENTENCING DATE?

MR. MILLER: ORIGINALLY, YOUR HONOR, IT WAS SET FOR -- I BELIEVE IT WAS SOME TIME IN AUGUST.

MR. AINBINDER: AUGUST.

MR. MILLER: OF LAST YEAR.

MR. AINBINDER: WHAT HAPPENED WAS MR. WALTERS HAD A -- HE THOUGHT IT WAS A KIDNEY STONE OR SOME OTHER CONDITION AND THEY SENT HIM FIRST TO TERMINAL ISLAND TO THEIR HOSPITAL FACILITY, THEN TO LOMPOC'S HOSPITAL FACILITY, AND HE BASICALLY REMAINED IN THE HOSPITAL FACILITY FOR A NUMBER OF MONTHS BEYOND THE ORIGINAL SENTENCING DATE.

THE MISTAKE WAS NOT DISCOVERED UNTIL THE PROBATION HEARING OR THE PROBATION OFFICER WRITING THE REPORT, I BELIEVE, DISCOVERED IT.

THE COURT: OKAY.

IT'S MY UNDERSTANDING THAT HE DOES NOT HAVE A PENDING MOTION TO WITHDRAW HIS PLEA IN FEDERAL COURT.

MR. AINBINDER: HE DOES NOT HAVE A FORMAL MOTION TO WITHDRAW HIS PLEA. I HAVE DISCUSSED THE MATTER WITH HIS ATTORNEY, HOWEVER, AND IT'S MY UNDERSTANDING FROM TALKING WITH HIM THAT IF YOUR HONOR GRANTS THIS MOTION, HE WILL FILE SUCH A MOTION IN FRONT OF JUDGE GILLIAM, AND JUDGE GILLIAM HAS INDICATED THAT HE'S MORE THAN WILLING TO GRANT IT.

THE COURT: OKAY.

I WILL HEAR FROM MR. MILLER.

MR. MILLER: YOUR HONOR, THERE IS NO QUESTION THAT AT THE TIME THAT HE ENTERED INTO THE PLEA IN FEDERAL COURT HE WAS TOLD THAT HE WAS FACING A LIFE SENTENCE, AND IT TURNS OUT THAT THAT IS NOT THE CORRECT MAXIMUM SENTENCE THAT HE WAS LOOKING AT. I DON'T BELIEVE IT'S AS LOW AS MR. AINBINDER SAYS; THAT IT'S ONLY A 20 YEAR MAXIMUM. IN TALKING WITH MR. FERRARO I BELIEVE IT WAS HIGHER THAN THAT, BUT I DON'T

HAVE THE REPORT IN FRONT OF ME.

THE QUESTION THOUGH, YOUR HONOR, IS ALSO DID HE RECEIVE THE BENEFIT OF HIS BARGAIN OVER IN STATE COURT. AS I POINT OUT IN MY MOVING PAPERS, HE WAS ALSO LOOKING AT A LIFE WITHOUT THE POSSIBILITY OF PAROLE IN STATE COURT. SO WHEN HE PLED TO THE FIRST DEGREE MURDER, HE GOT THE BENEFIT OF NO LONGER BEING EXPOSED TO A LIFE WITHOUT THE POSSIBILITY OF PAROLE IN STATE COURT.

IN ADDITION TO THAT, WE AGREED THAT HE COULD SERVE HIS TIME IN FEDERAL CUSTODY AS OPPOSED TO A STATE FACILITY. WE ALSO AGREED THAT ANY TIME HE GOT IN THE STATE CASE COULD BE CONCURRENT WITH THE FEDERAL TIME.

WE AGREED TO FILE NO CHARGES AGAINST BOTH HIS MOTHER AND HIS AUNT ON A SOLICITATION FOR MURDER CASE. WE ALSO AGREED - AND THE FEDERAL PROSECUTOR WAS HERE AT THE TIME OF THE CHANGE OF PLEA - THAT THE AMOUNT OF TIME THAT BOTH HIS MOTHER AND HIS AUNT WOULD GET ON THEIR FEDERAL CASE RELATED TO THE SOLICITATION OF MURDER, THAT WE WOULD PUT A LID ON THAT TIME AND ALL OF THAT HAS HAPPENED.

THERE HAVE BEEN NO CHARGES FILED AGAINST THE MOTHER. NO CHARGES AGAINST THE AUNT. AND, IN FACT, THE MOTHER AND AUNT WERE SENTENCED IN FEDERAL COURT TO THE LIMIT THAT WE DISCUSSED HERE IN STATE COURT. SO HE HAS RECEIVED THE BENEFIT OF THAT BARGAIN.

IN ADDITION TO THAT, THERE WAS A COMPANION DRUG CASE THAT WAS DISMISSED IN STATE COURT. SO HE HAS RECEIVED CONSIDERABLE -- A CONSIDERABLE AMOUNT OF BENEFIT OVER IN STATE COURT FOR THE PLEA THAT HE ENTERED.

YOUR HONOR, I THINK THAT ALL THE ARGUMENTS THAT COUNSEL ARE MAKING, HE'S MAKING IN THE WRONG PLACE. THIS IS AN ARGUMENT THAT SHOULD BE MADE OVER IN FEDERAL COURT BECAUSE OBVIOUSLY FROM HIS PAPERS IT WAS MISREPRESENTED TO HIM IN FEDERAL COURT, NOT IN STATE COURT.

WHEN WE TOLD HIM THAT HE WAS LOOKING AT LIFE WITHOUT THE POSSIBILITY OF PAROLE IN STATE COURT, THAT'S WHAT HE WAS LOOKING AT. THERE IS NO ARGUMENT THAT THAT WAS THE MAXIMUM, AND HE DID GET THE BENEFIT OF THAT.

I WOULD INDICATE TO THE COURT THAT AT ONE TIME HE DID MAKE AN ORAL MOTION IN FEDERAL COURT THAT HE WANTED TO WITHDRAW HIS PLEA, BUT IN FACT ON THE RECORD WITHDREW THAT MOTION.

NOW, I THINK FOR HIM TO STAND BEFORE THIS COURT AND SAY YOU SHOULD GRANT HIS MOTION, BUT HE'S NOT GOING TO -- HE HASN'T FILED SUCH A MOTION IN FEDERAL COURT WHEN THIS WAS LEARNED WAY BACK IN AUGUST OF LAST YEAR, AND HE'S DONE NOTHING TO SET ASIDE THAT -- THE FEDERAL PLEA, I THINK THAT HE'S IN THE WRONG PLACE. AND I THINK THAT UNLESS -- STRIKE THAT.

YOUR HONOR, AS I INDICATED, MY POSITION IS THAT THIS PLEA SHOULD STAND. I SEE NO REASON FOR THIS COURT TO SET THE PLEA ASIDE. HE RECEIVED THE BENEFIT OF HIS BARGAIN OVER HERE IN STATE COURT, AND NOW I JUST THINK HE JUST DOESN'T LIKE WHAT'S GOING TO HAPPEN TO HIM AND WANTS TO BACK OUT OF IT.

MR. AINBINDER: VERY BRIEFLY.

THE COURT: LET ME ASK A QUESTION, MR. MILLER.

THE CASE IN REFERENCE TO HIS MOTHER AND HIS AUNT FOR WHICH THEY PLED GUILTY AND WERE SENTENCED, THEY HAVE BEEN SENTENCED AND ARE SERVING THEIR TIME IN FEDERAL CUSTODY; IS THAT CORRECT?

MR. MILLER: THAT'S CORRECT. IN LINE WITH THIS PLEA BARGAIN.

THE COURT: WHEN DID THAT OCCUR?

MR. MILLER: THE MOTHER AND THE AUNT I THINK IT WAS -- I DON'T RECALL EXACTLY WHEN IT WAS THAT THEY WERE SENTENCED, BUT THEY WERE SENTENCED AFTER HE ENTERED THE PLEA IN THIS PARTICULAR CASE. THEY WERE FACING THOSE CHARGES IN FEDERAL COURT, AND I BELIEVE -- I BELIEVE IT WAS IN JULY OR AUGUST THAT THEY FINALLY ENTERED THEIR PLEA AGREEMENT BASED ON THE NEGOTIATIONS THAT TOOK PLACE THAT CONCERNED THIS DEFENDANT, AND THOSE NEGOTIATIONS WOULD LIMIT THEIR TIME IN FEDERAL CUSTODY.

AND WE ALSO PUT ON THE RECORD THAT I WOULD NOT FILE STATE CHARGES AGAINST THE MOTHER AND THE AUNT, AND SOME TIME AFTER JULY OR AUGUST, IT MIGHT HAVE BEEN SEPTEMBER, THE MOTHER AND THE AUNT WERE SENTENCED IN LINE WITH THAT PLEA AGREEMENT.

THE COURT: OKAY.

MR. AINBINDER.

MR. AINBINDER: JUST VERY BRIEFLY.

THERE IS NO QUESTION BUT THAT THE PEOPLE HAVE LIVED UP TO THEIR END OF THE BARGAIN, AND THAT'S NOT WHERE THE DISPUTE IS AT. THEY MADE CERTAIN PROMISES IN RETURN FOR THIS PLEA OF GUILTY AND THEY HAVE LIVED UP TO THEM.

THE REAL QUESTION HERE IS CAN A FELLOW WHO DID NOT UNDERSTAND EVEN CLOSELY THE CONSEQUENCES OF THE TWO CASES THAT HE WAS DEALING WITH, CASES THAT I AM NOT TALKING ABOUT HOW THEY JUST GOT -- THAT HE'S GOT AN AUTO THEFT HERE AND HE'S GOT A CONSPIRACY TO IMPORT MARIJUANA OVER THERE. I AM TALKING ABOUT TWO CASES THAT ARE FACTUALLY AND LEGALLY AND INVESTIGATIONALLY INTERTWINED.

CAN A FELLOW WHO HAS THIS KIND OF MATERIAL MISUNDERSTANDING AS TO THE CONSEQUENCES OF HIS ACTIONS BE FORCED TO LITERALLY ABIDE BY WHAT HE CHOSE TO DO ON THE BASIS OF COMPLETELY MISTAKEN INFORMATION.

AND THAT QUESTION IS REALLY COMPOUNDED BY THE STATE OF THE EVIDENCE ISSUE WHICH I RAISED EARLIER, WHICH IS KNOWING THAT THE -- AS BETWEEN THE TWO CASES THAT IN THE FEDERAL CASE, HOWEVER INTEGRALLY RELATED IT WAS, THAT ON THEIR ISSUE OF CONSPIRACY TO MANUFACTURE, THE FEDS HAD VIDEOTAPED EVIDENCE WHICH WAS EXCEEDINGLY POWERFUL, AND THAT DESPITE WHATEVER HAPPENED OVER HERE IN STATE COURT, HE WOULD FACE THE CONSEQUENCES IN FEDERAL.

IT SEEMS TO ME THAT THE QUESTION OF WHETHER OR NOT MR. WALTERS HAS, AS THE LAW REQUIRES, ENTERED A PLEA WITH A CLEAR UNDERSTANDING OF THE NATURE OF THE CHARGE AND THE CONSEQUENCES OF HIS PLEA, IT JUST HASN'T BEEN MET.

WE'RE NOT TALKING ABOUT A MINOR DIFFERENCE OR SOMETHING THAT CAN, I THINK, BE JUST SET ASIDE AS SOMETHING TECHNICAL. WE'RE TALKING ABOUT THE DIFFERENCE BETWEEN A STATUTORY LIMIT OF 20 YEARS AND AN ADVISEMENT AND A CLEAR AND UNEQUIVOCAL ADVISEMENT BY JUDGES, BY PROSECUTORS, AND DEFENSE

LAWYERS ALIKE: "MR. WALTERS, YOU'RE FACING THE REST OF YOUR LIFE IN THE FEDERAL PENITENTIARY IF YOU DON'T RESOLVE THESE CASES." AND I JUST DON'T SEE HOW WE CAN SAY THAT THAT'S SOMETHING THAT'S NOT IMPORTANT OR HAS NO EFFECT ON THIS CASE.

FINALLY, I WOULD TELL YOUR HONOR THIS: IT IS SIMPLY A MATTER OF TIMING, I SUPPOSE, THAT WE'RE HERE IN THIS FORUM BEFORE THE FEDERAL, BECAUSE IT WOULD MAKE AS LITTLE SENSE AS IT MADE TO GO TO TRIAL ON THE STATE CHARGES WHEN THE FEDERAL GOVERNMENT WAS ONLY GOING TO PUT HIM AWAY FOR THE REST OF HIS LIFE. IT MADE EQUALLY LITTLE SENSE TO MOVE TO WITHDRAW HIS FEDERAL PLEA IF YOUR HONOR WAS GOING TO GO AHEAD AND SENTENCE HIM TO 25 TO LIFE ON THIS.

THE TWO CASES WERE AND REMAIN TIED TOGETHER. IF YOUR HONOR GRANTS THIS MOTION, AS I BELIEVE YOU SHOULD, THEN HE WILL HAVE THE OPPORTUNITY TO -- AND JUDGE GILLIAM HAS INDICATED HE WILL GRANT MR. WALTERS THE OPPORTUNITY TO WITHDRAW HIS PLEA OVER THERE.

MR. MILLER: TWO QUICK POINTS, YOUR HONOR.

HE WAS IN FEDERAL COURT AS RECENTLY AS LAST MONDAY AND DID NOT FILE SUCH A MOTION. IN ADDITION TO THAT, RECALLING MY CONVERSATIONS WITH MR. FERRARO, I BELIEVE HE INDICATED TO ME THAT IT WAS NOT A LIFE SENTENCE, BUT THAT IT WAS IN FACT SOMEWHERE AROUND 35 YEARS THAT HE WAS LOOKING AT, NOT THE 20 YEARS. THAT'S MY RECOLLECTION OF THE CONVERSATION WITH MR. FERRARO.

THE COURT: ANYTHING ELSE?

MR. AINBINDER: NO.

THE COURT: OKAY.

THE MOTION TO WITHDRAW THE PLEA WILL BE DENIED FOR THE FOLLOWING REASONS:

I THINK IT'S CLEAR ON THE RECORD THAT YOU HAVE SHOWN THAT HE WAS GIVEN MISTAKEN INFORMATION BY ALL THE AUTHORITIES INVOLVED IN THE FEDERAL SYSTEM AS TO WHAT THE MAXIMUM PUNISHMENT WOULD BE FOR THE FEDERAL CRIME.

HOWEVER, IN LOOKING AT THE FACTS AND THE SEQUENCE OF EVENTS THAT HAVE OCCURRED IN THIS CASE, HE WAS LOOKING AT A LIFE TOP IN THIS -- IN THE CHARGES IN THE STATE COURT. SO HE'S GOTTEN THE BENEFIT OF NOT FACING A LIFE WITHOUT POSSIBILITY OF PAROLE REGARDING THE STATE -- THE STATE CHARGES.

HOWEVER, IF YOU LOOK AT ALSO OTHER FACTORS, IT IS CLEAR THAT THE MISTAKE REGARDING THE PENALTIES IN THE FEDERAL SYSTEM WERE DISCOVERED WITHIN WEEKS AFTER THE ENTRY OF THE PLEA. IT APPEARS THAT WITHIN WEEKS OR EVEN A COUPLE OF MONTHS THAT BECAME EVIDENT THAT THERE WAS MISTAKEN INFORMATION GIVEN TO HIM.

HE DOES NOT MAKE ANY EFFORTS TO WITHDRAW HIS PLEA EITHER IN THE FEDERAL SYSTEM OR THE STATE COURT SYSTEMS. HE ALLOWS THE DISTRICT ATTORNEY, AS WELL AS THE FEDERAL COURT AUTHORITIES, TO PROCEED WITH THE CASE AGAINST THE MOTHER AND AUNT IN FEDERAL COURT. AND THE AGREEMENT IS CARRIED OUT NOW THAT YOU CHARGED HIM IN THE STATE COURT BY MR. MILLER, AND THE AUNT AND THE MOTHER ARE BOTH IN THE STATE PEN -- OR THE FEDERAL SYSTEM, IN THE FEDERAL PENITENTIARY, AND THAT OCCURRED SOME TIME IN AUGUST OR SEPTEMBER. THAT'S WELL AFTER THE TIME THAT HE KNEW OF THE MISTAKE. HOWEVER, HE JUST

WAITED AND SAT AND LET THE EVENTS OR THE COURSE OF EVENTS TAKE ITS COURSE REGARDING THE BENEFIT THAT HIS MOTHER AND HIS AUNT OBTAINED.

THE FIRST THAT I FOUND OUT OR ANY INFORMATION THAT I GOT THAT THERE WAS A MOTION TO WITHDRAW THE PLEA OCCURRED, I BELIEVE, IN DECEMBER; SOME TIME IN DECEMBER, ABOUT A MONTH AGO.

SO HE ENTERED THE PLEA IN MAY 9TH. NOW WE'RE AT JANUARY. WE'RE DOING THE MOTION. THE FIRST TIME HE'S EVER GOT ANY CONCERN ABOUT HIS BASIS FOR ENTERING THE PLEA UPON THE MISTAKEN INFORMATION OCCURRED APPROXIMATELY FIVE OR SIX MONTHS AFTERWARDS. THAT LEADS ME TO BELIEVE THAT HIS ARGUMENT THAT THE CENTRAL FACTOR IN ENTERING INTO THE PLEA WAS THE FACT OF THE LIFE TOP IN FEDERAL SYSTEM LEADS ME TO BELIEVE THAT THAT IS NOT THE CASE.

I THINK THAT MR. WALTERS HAS PRETTY MUCH DISCOVERED HOW TO PLAY THE SYSTEM, HOW TO TAKE ADVANTAGE OF THE SYSTEM, AND THAT'S WHAT HE'S TRYING TO DO.

HE'S ALREADY OBTAINED SUBSTANTIAL PORTIONS OF HIS BENEFIT AND WHAT HE'S TRYING TO DO IS TRYING TO UNDO WHAT HE KNEW WHAT HE GOT INTO IN ORDER TO TRY TO TAKE THE BENEFIT AND PUT THE FEDERAL SYSTEM, AS WELL AS THE STATE SYSTEM, IN A DISADVANTAGE IN THE EXTENT THAT HOPING THAT BECAUSE ALL THE OTHER PARTIES, WHETHER IT BE HIS AUNT AND HIS MOTHER, HAVE ALREADY BEEN TAKEN CARE OF AND OUT OF THE SYSTEM.

HIS CO-DEFENDANTS IN THIS CASE HAVE ALREADY BEEN TAKEN CARE OF AND OUT OF THE SYSTEM, HOPING THAT THE PEOPLE, FOR SOME REASON OR ANOTHER, MAY NOT BE ABLE TO PROVE NOT ONLY

THIS CASE BUT, HOPEFULLY, THAT THE CASE IN THE FEDERAL SYSTEM WILL BE JEOPARDIZED.

IT'S RATHER INTERESTING THAT HE HAS NOT MADE A MOTION TO WITHDRAW HIS PLEA EVEN IN THE FEDERAL COURT ON THIS BASIS AND HAS ATTACKED THE CHARGES IN THE STATE COURT, WHICH CARRY A 25 YEARS TO LIFE.

SO THE MOTION IS DENIED. WE WILL PROCEED WITH SENTENCING TODAY.

MR. AINBINDER.

MR. AINBINDER: CAN I HAVE JUST ONE SECOND?

THE COURT: SURE.

MR. AINBINDER: AS YOUR HONOR KNOWS, THE PLEA AGREEMENT CALLS FOR THIS SENTENCE TO RUN CONCURRENT TO THE SENTENCE IN FEDERAL COURT. HE IS NOW SCHEDULED FOR SENTENCING IN FEDERAL COURT ON THE 17TH. I AM NOT SURE IF YOUR HONOR CAN GO AHEAD AND IMPOSE THE SENTENCE AND ORDER THAT IT BEGIN ON THE 18TH OR WHETHER YOUR HONOR WANTS TO HAVE HIM HERE ON THE 18TH FOR RESENTENCING CONSISTENT WITH THE PLEA AGREEMENT. I UNDERSTAND IT'S A -- I HAVE NOTHING TO SAY ON THE SENTENCE. IT'S MANDATORY 25 TO LIFE.

THE COURT: WHAT WE WILL DO IS WE WILL PROCEED WITH THE SENTENCING TODAY. I WILL ORDER THAT THE SENTENCE BE CONCURRENT AND THE SENTENCE TO COMMENCE OR BE EFFECTIVE ON THE 18TH.

MR. AINBINDER: I WOULD APPRECIATE THAT. I WANTED TO SUBMIT IT, OTHER THAN THAT.

THE COURT: ANYTHING FROM THE PEOPLE?

MR. MILLER: THE ONLY THING I NEED TO CLARIFY, YOUR

HONOR, IS ON THE ORIGINAL CHANGE OF PLEA FORM IN PARAGRAPH 8B, WE CIRCLED LETTER "F," WHICH SAID THAT HE'S INELIGIBLE FOR PROBATION.

IT'S PRESUMPTIVE PRISON. A CHECKING OF THE RULES INDICATE, AND ALSO WITH THE PROBATION REPORT ON PAGE 16, IN FACT, HE IS ELIGIBLE FOR PROBATION.

SO WE NEED TO TAKE CARE OF THE ONE HOUSEKEEPING MATTER THAT, IN FACT, WHEN WE INDICATED ON THE CHANGE OF PLEA FORM THAT IT WAS PRESUMPTIVE PRISON, IN FACT IT IS NOT PRESUMPTIVE PRISON.

MR. AINBINDER: MY UNDERSTANDING IS IT'S A MANDATORY NONDISCRETIONARY SENTENCE OF 25 TO LIFE.

THE COURT: THAT'S MY UNDERSTANDING IS IT'S 25 YEARS TO LIFE, AND THAT WAS PART OF THE PLEA BARGAIN. IT WAS PART OF THE PLEA BARGAIN THAT NOBODY EVER CONTEMPLATED ANY PROBATION IN THIS CASE, WHILE TECHNICALLY HE MAY BE ELIGIBLE.

WHAT WE HAVE TO DO IS HAVE THE -- THE ONLY WAY I CAN SEE HE WOULD BE ELIGIBLE IS IF THE PEOPLE WOULD BE WILLING TO GIVE UP THE BASIC STIPULATION OF 25 YEARS TO LIFE.

MR. MILLER: THAT'S CORRECT, YOUR HONOR, BUT I JUST WANTED TO CLARIFY FOR THE RECORD THAT, IN FACT, IT IS NOT -- I AGREE WITH THE COURT, BUT I WANTED TO MAKE SURE THAT THE RECORD IS CLEAR THAT IT IS NOT A PRESUMPTIVE STATE PRISON, BUT THE 25 TO LIFE IS BASED ON THE AGREEMENT THAT WE ENTERED INTO.

THE COURT: OKAY.

I THINK THAT THE RECORD IS CLEAR, AND I THINK THAT THE INTENT OF WHY YOU'RE BRINGING UP TO THE COURT IS

THIS WAY IT WILL PREVENT ANY FURTHER MOTIONS TO WITHDRAW THE PLEA BASED ON THAT ISSUE. THAT IS REALLY NOT AN ISSUE.

MR. AINBINDER: JUST TO MAKE IT CLEAR, I DON'T SEE IT AS AN ISSUE EITHER BECAUSE I THINK IT GOES BEYOND PRESUMPTIVE PRISON. MY READING OF THE PENALTY SECTIONS FOR 187 IS THAT IT IS MANDATORY.

THE COURT: OKAY.

THE COURT HAS READ AND CONSIDERED THE PROBATION REPORT. PROBATION WILL BE DENIED FOR THE FOLLOWING REASONS: AS INDICATED, THIS WAS AN AGREED UPON FIRST DEGREE MURDER, 25 YEARS TO LIFE.

IN ANY EVENT, PROBATION WILL BE DENIED IN LIGHT OF THE CIRCUMSTANCES AND FACTORS THAT OCCURRED IN THIS CASE REGARDING THE VIOLENCE AND THE LOSS OF LIFE TO THE VICTIM. UNDER RULE 414(C) PROBATION WILL BE DENIED.

DEFENDANT WILL BE COMMITTED TO THE DEPARTMENT OF CORRECTIONS FOR THE TERM PRESCRIBED BY LAW OF 25 YEARS TO LIFE.

WHAT ARE HIS CREDITS?

THE PROBATION OFFICER: YOUR HONOR, 771 ACTUAL, 385 4019, FOR A TOTAL OF 1156.

THE COURT: OKAY.

THOSE WILL BE THE CREDITS.

FURTHER, THAT HE PAY RESTITUTION PURSUANT TO GOVERNMENT CODE SECTION 13967(C) IN THE AMOUNT OF $3,629 TO THE VICTIMS LISTED ON THE PROBATION REPORT.

AND, FURTHER, THAT HE PAY A FINE IN THE AMOUNT OF $5,000 PURSUANT TO GOVERNMENT CODE SECTION 13967, TO BE

PAID AS PROVIDED IN PENAL CODE SECTION 2085.5.

I WILL ORDER THAT THIS BE CONCURRENT TO HIS FEDERAL SENTENCE AND THAT THE JUDGMENT ENTERED TODAY WILL BE EXECUTED ON JANUARY THE 18TH OR THEREAFTER AFTER HE IS SENTENCED ON HIS FEDERAL CASE.

OKAY.

MR. AINBINDER: COULD THE RECORD JUST REFLECT THAT THAT'S FEDERAL CASE 88-0769-G.

THE COURT: SO REFLECT.

(CONCLUSION OF PROCEEDINGS.)

--OOO--

# EXHIBIT COVER PAGE:

Exhibit: 6

Description of this exhibit: Both minute order and Ammended minute order, showing Petitioner is to serve his sentence concurrent and in Fed. custody.

Number of pages of this exhibit: 2 pages

JURISDICTION: (Check only one)

_____ Municipal Court

_____ Superior Court

_____ Appellate Court

_____ State Supreme Court

_____ United States District Court

_____ United States Circuit Court

_____ United States Supreme Court

_____ California Department of Corrections, 602 Exhibit.

_____ Other: ______________________________

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CR 103749 DA B4651602

AMENDED MINUTES

PROB HEARING-SENTENCING/PLEA WITHDRAWAL HEARING

DATE 01-10-91 AT 10:00 A. M

PRESENT: HON. JESUS RODRIGUEZ JUDGE PRESIDING DEPARTMENT 009

CLERK MAUREEN COLAHAN REPORTER YVONNE MORENO

THE PEOPLE OF THE STATE OF CALIFORNIA
VS

E. MILLER ✓ S. RUNNING CLI ✓
DEPUTY DISTRICT ATTORNEY

WALTERS MARTIN E
DEFENDANT

L. AINBINDER ✓ PUB DEF
ATTORNEY FOR DEFENDANT (APPT'D/RETAINED)

VIOLATION OF PC187(A)

DEFENDANT ☒ ~~NOT~~ PRESENT ☐ ARRAIGNED FOR JUDGMENT ☐ WAIVES ARRAIGNMENT
☐ DEFENDANT ADVISED OF RIGHTS AND (ADMITS/DENIES) A VIOLATION OF PROBATION. ☐ WAIVES HEARING
PROBATION IS: ☐ DENIED ☐ REVOKED ☐ REINSTATED ☐ CONTINUED ☐ MODIFIED ☐ GRANTED ____ YEARS (FORMAL/SUMMARY)

**PROBATION**

☐ IMPOSITION OF SENTENCE IS SUSPENDED. ☐ DEFENDANT SENTENCED TO STATE PRISON, EXECUTION SUSPENDED (SEE BELOW FOR TERM).
CONDITIONS OF PROBATION INCLUDE, BUT ARE NOT LIMITED TO:
☐ COMMITMENT TO SHERIFF FOR ____ DAYS. ☐ ADULT INSTITUTIONS RECOMMENDED. ☐ PAROLE NOT TO BE GRANTED.
☐ FINE OF $ ____ INCLUDING PENALTY ASSESSMENT AT $ ____ PER MONTH, COMMENCING ____ THROUGH REVENUE AND RECOVERY.
☐ RESTITUTION OF $ ____ TO VICTIM/RESTITUTION FUND AT $ ____ PER MONTH, COMMENCING ____ THROUGH REVENUE AND RECOVERY.
XX RESTITUTION/FINE OF $ 5000 PER GC 13967, ~~XXXXXXXXXXXXXXXXX~~ per PC2085.5
☐ PARTICIPATION IN COMMUNITY SERVICES PROGRAM IN LIEU OF RESTITUTION.
☐ FOURTH AMENDMENT WAIVER OF PERSON/AUTO/RESIDENCE/PERSONAL EFFECTS. 25 Years to Life
☐ REGISTRATION PER PC 290/H&S 11590. ☐ TEST PER PC 290.2

**STATE COMMIT**

XX DEFENDANT IS COMMITTED TO DEPARTMENT OF CORRECTIONS FOR LOWER/MIDDLE/UPPER TERM OF ^ YEARS. COUNT 8
(SEE BELOW FOR ADDITIONAL COUNTS)
☐ DEFENDANT IS COMMITTED TO CALIFORNIA YOUTH AUTHORITY. ☐ PER W&I 707.2 ☐ PER W&I 1737
(SEE BELOW FOR FINDINGS)
☐ DEFENDANT IS ADVISED OF APPEAL RIGHTS ☐ DEFENDANT IS ADVISED REGARDING PAROLE

CREDIT FOR TIME SERVED
771 DAYS LOCAL
___ DAYS STATE INST.
385 DAYS PC 4019
1156 TOTAL DAYS CREDIT

**CUSTODY STATUS**

DEFENDANT REMAINS AT LIBERTY:
☐ ON BOND POSTED $ ____
☐ ON OWN RECOGNIZANCE
☐ ON PROBATION

DEFENDANT REMANDED TO CUSTODY:
☒ WITHOUT BAIL
☐ WITH BAIL SET AT $ ____

☐ DEFENDANT ORDERED RELEASED FROM CUSTODY

**FUTURE HRNGS**

☐ DEFENDANT WAIVES STATUTORY TIME FOR PRONOUNCEMENT OF JUDGMENT
____ CONTINUED TO/SET FOR ____ AT ____ M IN DEPT. ____ ON MOTION OF
COURT/DDA/DEFENDANT/PROBATION OFFICER. REASON:
☐ DEFENDANT REFERRED FOR DIAGNOSTIC EVALUATION PER PC 1203.03. FURTHER HEARING SET FOR ____ AT ____ M IN DEPT. ____

**BONDS WRRNTS**

☐ BENCH WARRANT TO ISSUE, BAIL SET AT $ ____. SERVICE WITHHELD TO ____.
☐ BENCH WARRANT, ISSUED ____ IS RECALLED.
☐ BOND FORFEITED. BOND AMOUNT ____. BOND NO. ____. BOND COMPANY ____. AGENT ____
☐ BOND IS EXONERATED.

**MH**

☐ PROCEEDINGS SUSPENDED PER: ☐ PC 1368, MENTAL COMPETENCY. (SEE BELOW FOR DATES OF EXAMINATION AND HEARING.)
☐ W&I 3051 ADDICTION OR DANGER OF ADDICTION. (SEE BELOW FOR DATE OF SERVICE OF PETITION AND ORDER.)

OTHER: ☐ REFERRED TO DEPT. OF REVENUE AND RECOVERY ☐ REPORT TO REGISTRAR OF VOTERS ☐ DMV ABSTRACT

Plea Withdrawal Hearing - Court receives Copy of Plea Agreement Federal Court dated 5-9-90 as Court Exhibit 1, Copy of Supplemental Transcript of Proceedings Federal Court dated 5-8-90 as Court Exhibit 2, Copy of Pages 25-30 of Federal Case 88-0769 Transcript dated 5-9-90, as Court Exhibit 3. The Court denies the defendant's motion for withdrawal of guilty plea.

Probation Hearing & Sentencing - Restitution of $3,629.00 to the victims listed in the Probation Report per GC13967(c). This judgment to be executed on 1-18-91 or after the sentencing in Federal Case 88-0769G. Concurrent to the Federal Case. Committment to be served in Federal Institution.

88-2026 84

SDS

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CR CR103749 DA B4651602

DATE 01-10-91 10:00 AT ____M PROB HEAR-SENTENCING

PRESENT: HON. JESUS RODRIGUEZ JUDGE PRESIDING DEPARTMENT 009

CLERK MAUREEN COLAHAN REPORTER YVONNE MORENO

THE PEOPLE OF THE STATE OF CALIFORNIA VS E. Miller ✓ S. Running C.LI ✓

DEPUTY DISTRICT ATTORNEY

WALTERS MARTIN ✓ E L. AINBINDER ✓

DEFENDANT ATTORNEY FOR DEFENDANT (APPT'D/RETAINED). P.O. R. Fairchild.

VIOLATION OF PC187(A)

DEFENDANT ☒ ~~NOT~~ PRESENT ☐ ARRAIGNED FOR JUDGMENT ☐ WAIVES ARRAIGNMENT

☐ DEFENDANT ADVISED OF RIGHTS AND (ADMITS/DENIES) A VIOLATION OF PROBATION. ☐ WAIVES HEARING

**PROBATION IS:** ☐ DENIED ☐ REVOKED ☐ REINSTATED ☐ CONTINUED ☐ MODIFIED ☐ GRANTED ____ YEARS (FORMAL/SUMMARY)

**PROBATION**

☐ IMPOSITION OF SENTENCE IS SUSPENDED. ☐ DEFENDANT SENTENCED TO STATE PRISON, EXECUTION SUSPENDED (SEE BELOW FOR TERM).

**CONDITIONS OF PROBATION INCLUDE, BUT ARE NOT LIMITED TO:**

☐ COMMITMENT TO SHERIFF FOR ____ DAYS. ☐ ADULT INSTITUTIONS RECOMMENDED. ☐ PAROLE NOT TO BE GRANTED.

☐ FINE OF $____ INCLUDING PENALTY ASSESSMENT AT $____ PER MONTH, COMMENCING ____ THROUGH REVENUE AND RECOVERY.

☐ RESTITUTION OF $____ TO VICTIM/RESTITUTION FUND AT $____ PER MONTH, COMMENCING ____ THROUGH REVENUE AND RECOVERY.

☒ RESTITUTION/FINE OF $ 5000 PER GC 13967, ~~STAYED PER PC 1203.1(b).~~ per PC 2085.5

☐ PARTICIPATION IN COMMUNITY SERVICES PROGRAM IN LIEU OF RESTITUTION.

☐ FOURTH AMENDMENT WAIVER OF PERSON/AUTO/RESIDENCE/PERSONAL EFFECTS. 25 years to life

☐ REGISTRATION PER PC 290/H&S 11590. ☐ TEST PER PC 290.2

**STATE COMMIT**

☒ DEFENDANT IS COMMITTED TO DEPARTMENT OF CORRECTIONS FOR LOWER/MIDDLE/UPPER TERM OF ~~8~~ YEARS. (SEE BELOW FOR ADDITIONAL COUNTS) COUNT 8

☐ DEFENDANT IS COMMITTED TO CALIFORNIA YOUTH AUTHORITY. ☐ PER W&I 707.2 ☐ PER W&I 1737 (SEE BELOW FOR FINDINGS)

☐ DEFENDANT IS ADVISED OF APPEAL RIGHTS ☐ DEFENDANT IS ADVISED REGARDING PAROLE

CREDIT FOR TIME SERVED
771 DAYS LOCAL
____ DAYS STATE INST.
385 DAYS PC 4019
1156 TOTAL DAYS CREDIT

**CUSTODY STATUS**

DEFENDANT REMAINS AT LIBERTY:
☐ ON BOND POSTED $____
☐ ON OWN RECOGNIZANCE
☐ ON PROBATION

DEFENDANT REMANDED TO CUSTODY:
☒ WITHOUT BAIL
☐ WITH BAIL SET AT $____

☐ DEFENDANT ORDERED RELEASED FROM CUSTODY

**FUTURE HRNGS**

☐ DEFENDANT WAIVES STATUTORY TIME FOR PRONOUNCEMENT OF JUDGMENT

____ CONTINUED TO/SET FOR ____ AT ____M IN DEPT. ____ ON MOTION OF COURT/DDA/DEFENDANT/PROBATION OFFICER. REASON:

☐ DEFENDANT REFERRED FOR DIAGNOSTIC EVALUATION PER PC 1203.03. FURTHER HEARING SET FOR ____ AT ____M IN DEPT. ____

**BONDS WRRNTS**

☐ BENCH WARRANT TO ISSUE, BAIL SET AT $____. SERVICE WITHHELD TO ____.

☐ BENCH WARRANT, ISSUED ____ IS RECALLED.

☐ BOND FORFEITED. BOND AMOUNT ____. BOND NO. ____. BOND COMPANY ____. AGENT ____

☐ BOND IS EXONERATED.

**MH**

☐ PROCEEDINGS SUSPENDED PER: ☐ PC 1368, MENTAL COMPETENCY. (SEE BELOW FOR DATES OF EXAMINATION AND HEARING.)
☐ W&I 3051 ADDICTION OR DANGER OF ADDICTION. (SEE BELOW FOR DATE OF SERVICE OF PETITION AND ORDER.)

OTHER: ☐ REFERRED TO DEPT. OF REVENUE AND RECOVERY ☐ REPORT TO REGISTRAR OF VOTERS ☐ DMV ABSTRACT

Restitution of $3,629.00 to the victims listed in the probation report. per GC 13967(c)
This judgment to be executed on 1-18-91 or after the Sentence in Federal Case 88-07696.
..? - Concurrent to the Federal case.

# EXHIBIT COVER PAGE:

Exhibit: 7

Description of this exhibit: Abstract of Judgement; showing Concurrent time, in Fed. custody.

Number of pages of this exhibit: 2 pages

JURISDICTION: (Check only one)

_____ Municipal Court

_____ Superior Court

_____ Appellate Court

_____ State Supreme Court

_____ United States District Court

_____ United States Circuit Court

_____ United States Supreme Court

_____ California Department of Corrections, 602 Exhibit.

_____ Other: ____________________

F KENNETH E. MARTONE, Clerk of the Superior Court
JAN 10 1991
By: S. TALBOTT, Deputy
D
0346

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
## ABSTRACT OF JUDGMENT
## FOR COMMITMENT TO STATE PRISON

THE PEOPLE OF THE STATE OF CALIFORNIA
PLAINTIFF

VS

MARTIN EDWARD WALTERS
DEFENDANT

DATE JANUARY 10, 1991
CASE NUMBER: L CR 103749
PRESENT
HON. JESUS RODRIGUEZ
JUDGE OF THE SUPERIOR COURT
EDWIN L. MILLER, Jr., District Attorney
By EVAN MILLER DEPUTY
LARRY AINBINDER
COUNSEL FOR DEFENDANT
MAUREEN COLAHAN
CLERK
YVONNE MORENO
REPORTER

☐ PROBATION HAVING BEEN HERETOFORE GRANTED AND SAID PROBATION HAVING BEEN REVOKED ON ____________.
☒ APPLICATION FOR PROBATION IS DENIED. THE DEFENDANT ~~IS DULY ARRAIGNED~~ (WAIVES FORMAL ARRAIGNMENT).

Count No. 8 . WHEREAS THE SAID DEFENDANT ON HIS PLEA of GUILTY having
(GUILTY, NOT GUILTY, FORMER CONVICTION OR ACQUITTAL, ONCE IN JEOPARDY, NOT GUILTY BY REASON OF INSANITY)

been convicted by COURT (THE COURT OR JURY) of MURDER, 1st degree
(DESIGNATION OF CRIME AND DEGREE IF ANY, INCLUDING FACT THAT IT CONSTITUTES A SECOND OR SUBSEQUENT, IF THAT AFFECTS THE SENTENCE)

IN VIOLATION OF PENAL CODE SECTION 187, 1st degree
(REFERENCE TO CODE OR STATUTE, INCLUDING SECTION AND SUBSECTION THEREOF, IF ANY VIOLATED.)

YEAR CRIME COMMITTED IS 1988.
THE DEFENDANT IS CREDITED FOR TIME SPENT IN CUSTODY, 1156 TOTAL DAYS, INCLUDING:
ACTUAL LOCAL TIME 771 PC 4019 CREDIT 385, STATE INSTITUTIONS TIME ________.

THE COURT FINDS: (*IF NO FINDING MADE, ENTER "NO FINDING MADE")
NO FINDING MADE. THE DEFENDANT ________ (WAS OR WAS NOT) ARMED WITH A DEADLY WEAPON AT THE TIME OF HIS COMMISSION OF THE OFFENSE WITHIN THE MEANING OF SECTIONS 969c and 12022 OF THE PENAL CODE.

NO FINDING MADE. THE DEFENDANT ________ (USED OR DID NOT USE) A FIREARM IN HIS COMMISSION OF THE OFFENSE WITHIN THE MEANING OF SECTIONS 969d and 12022.5 OF THE PENAL CODE.

NO FINDING MADE. THE DEFENDANT ________ (WAS OR WAS NOT) ARMED AT THE TIME OF HIS COMMISSION OF THE OFFENSE WITHIN THE MEANING OF SECTION 1203 OF THE PENAL CODE AND THAT WEAPON WAS

0371

THE DEFENDANT HAS HAD PRIOR FELONY CONVICTIONS AS FOLLOWS:

| DATE | COUNTY AND STATE | CRIME | DISPOSITION |
|---|---|---|---|
| NOT APPLICABLE | | | |

0347

It is therefore ordered, adjudged and decreed that the defendant be punished by imprisonment in the State Prison of the State of California for the term prescribed by law. It is ordered that the sentences shall be served in respect to one another as follows (CC or CS):

CONCURRENT

and in respect to any prior incomplete sentence(s) as follows (CC or CS):

CONCURRENT TO FEDERAL CASE 88-0769G. Defendant to be held in Federal Facility.

It is further ordered that the defendant be remanded to the Sheriff of the County of San Diego; and pursuant to the aforesaid judgment, this is to command you, the Sheriff, to deliver the defendant into the custody of the ~~Director of Corrections of the State of California at the California institution for Men at Chino, Women at Frontera, California at your earliest convenience.~~
Federal facility.

The Court ( DID NOT ) instruct the defendant of his right to appeal in accordance with Rule 250, California Rules of Court.
did / did not

JUDGE OF THE SUPERIOR COURT
JESUS RODRIGUEZ

I certify the foregoing to be a true and correct abstract of the Judgment made and entered on the Minutes of the Superior Court herein.

Dated: JANUARY 10, 1991

KENNETH E. MARTONE
CLERK OF THE SUPERIOR COURT

By_______________________________Deputy
SHARON TALBOTT

03re

# EXHIBIT COVER PAGE:

Exhibit: 8

Description of this exhibit: Federal Judgement, Showing Sentence and asking B.O.P. to allow Petitioner to serve his Time in a Prison designated by the Cal. Director of Corrections.

Number of pages of this exhibit: 5 pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ______________________________

UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF CALIFORNIA

FILED
XX ENTERED
LODGED
RECEIVED

JAN 17 1991

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY [signature] DEPUTY

UNITED STATES OF AMERICA

v.

MARTIN EDWARD WALTERS (1)

JUDGMENT INCLUDING SENTENCE
UNDER THE SENTENCING REFORM ACT

CASE NO. 88-0769-G-Criminal

JAMES POKORNY
ATTORNEY FOR DEFENDANT

INMATE COPY

THE DEFENDANT:

XX pleaded guilty to count(s) ONE (1), TEN (10) and THIRTEEN (13),

____ was found guilty on count(s) ____ after a plea of not guilty.

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offenses;

| Title & Section | Nature of Offense | Count Number (s) |
|---|---|---|
| 21 USC 841(a)(1) & 846 | CONSP. TO MANUFACTURE METHAMPHETAMINE AND POSSESS METHAMPHETAMINE W/INT TO DISTR. | ONE (1) |
| 18 USC 2 & 26 USC 5861(d) and 5871 | AIDING AND ABETTING THE POSSESSION OF AN UNREGISTERED FIREARM | TEN(10) |
| 18 USC 2 & 924(c)(1) | AIDING AND ABETTING THE USE AND CARRYING OF A FIREARM DURING THE COMMISSION OF A DRUG TRAFFICKING CRIME | THIRTEEN(13) |

The defendant is sentenced as provided in pages 2 through 5 of this judgment.
The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

____ The defendant has been found not guilty on count(s) ____,

XX Count(s) OF S/S INDICTMENT REMAINING ~~(is)~~(are) dismissed on the motion of the United States.

XXX The underlying indictment is dismissed on motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of his/her residence or mailing address until all fines, restitution(s), and costs imposed by this judgment are fully paid.

Defendant's Social Security Number: UNKNOWN

Defendant's Mailing Address: UNKNOWN

Defendant's Residence Address: UNKNOWN

Defendant: Martin Edward Walters (1)
Case Number: 88-0769-G-Criminal IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons, to be imprisoned on the following counts as indicated:

ONE(1) OF S/S INDICTMENT - TWO HUNDRED AND TWELVE (212) MONTHS

TEN(10) OF S/S INDICTMENT- CONCURRENTLY WITH COUNT ONE(1) - TEN(10) YEARS

THIRTEEN(13) OF S/S INDICTMENT - SIXTY (60) MONTHS CONSECUTIVE TO COUNT ONE(1)
(NOTE: TOTAL PERIOD OF INCARCERATION TWO HUNDRED AND SEVENTY TWO(272) MONTHS.

INMATE COPY

_XX_ The Court makes the following recommendations to the Bureau of Prisons:
THAT THE PERIOD OF INCARCERATION IMPOSED BE SERVED IN A STATE INSTITUTION TO BE DESIGNATED BY THE STATE OF CALIFORNIA.

_XX_ The defendant is remanded to the custody of the United States Marshal.

____ The defendant shall surrender to the United States Marshal for this district

____ at ______________ on ____________________.

____ as notified by the United States Marshal.

____ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons.

____ before __________p.m. on __________________.

____ as notified by the United States Marshal.

____ as notified by the U.S. Probation Department.

RETURN

I have executed this judgment as follows:

______________________________________________

______________________________________________

______________________________________________

Defendant delivered on ______________ to ______________

at ______________________, with a certified copy of this judgment.

______________________________
UNITED STATES MARSHAL

By: ______________________________

Defendant: Martin Edward Walters (1)
Case Number: 88-0769-G-Criminal

FINE WITH SPECIAL ASSESSMENT

The defendant shall pay to the United States the sum of:
$ 150.00 consisting of a fine of $ 0
and a special assessment of $ 150.00 .

____ These amounts are the totals of the fines and assessments imposed on the individual counts as follows:

COUNT #1 of S/S Indictment - $50.00

COUNT #10 of S/S Indictment- $50.00

COUNT #13 of S/S Indictment- $50.00

TOTAL-$150.00

INMATE COPY

This sum shall be paid XXX immediately.
____ as follows.

____ The Court has determined that the defendant does not have the ability to pay interest. IT IS ORDERED THAT:

____ The interest requirement is waived.

____ The interest requirement is modified as follows:

Defendant: Martin Edward Walters (1)
Case Number: 88-0769-G-Criminal

SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release as follows:

COUNT #1 - THREE (3) YEARS.
COUNT #10- THREE (3) YEARS.
COUNT #13- THREE (3) YEARS.

COUNTS#1,10 & 13 ARE TO RUN CONCURRENTLY FOR A TOTAL SUPERVISED RELEASE PERIOD OF THREE (3) YEARS.

INMATE COPY

While on supervised release, the defendant shall not commit another Federal, State or local crime and shall comply with the standard conditions that have been adopted by this Court (Set forth following the additional conditions). If this judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release. The defendant shall comply with the following additional conditions.

XXX DEFENDANT SHALL NOT ENTER MEXICO WITHOUT WRITTEN PERMISSION OF THE COURT.

XX the defendant shall not own or possess firearms, explosive devices or dangerous weapons of any kind.

XX the defendant shall submit to searches and seizures of his person, his personal effects, his residence or place of abode, any vehicle in his possession, conducted in a reasonable manner and at a reasonable time and place as requested by a Probation Officer.

XX the defendant shall report all vehicles he owns, operates, or has an interest in to h Probation Officer.

____ the defendant shall seek and maintain a program of full-time employment full-time education or a full-time combination of both.

XX the defendant shall participate in a drug/alcohol abuse counseling and treatment program, including urinalysis testing as directed by his Probation Officer.

____ if deported, formal supervision of probation is waived and the defendant shall not enter the United States unless he/she does so legally, and the defendant shall report to the U.S. Probation Department within twenty-four hours of h entry.

XX the defendant shall make complete disclosure of his business and financial records to his Probation Officer as requested.

____ the defendant is prohibited from opening checking accounts or incurring new credit charges or opening additional lines of credit without the approval of h Probation Officer.

____ as directed by h Probation Officer, the defendant shall notify third parties at risk that may be occasioned by a criminal record or personal history and permit h Probation Officer to make such notification and to confirm h compliance with such notification requirement.

STANDARD CONDITIONS OF SUPERVISON

1) the defendant shall not commit another Federal, State or local crime.
2) the defendant shall not leave the judicial district without the permission of the Court or Probation Department.
3) the defendant shall report to the Probation Officer as directed by the Court or Probation Department and shall submit a truthful and complete written report within the first five days of each month.

Defendant: Martin Edward Walters (1)
Case Number: 88-0769-G-Criminal

STANDARD CONDITIONS OF SUPERVISION(CONTINUED)

INMATE COPY

4) The defendant shall answer truthfully all inquires by the probation officer and follow the instructions of the probation officer.

5) The defendant shall support his or her dependants and meet other family responsibilities.

6) The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.

7) The defendant shall notify the probation officer within 72 hours of any change in residence or employment.

8) The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotics or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician.

9) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed or administered.

10) The defendant shall not associate with any persons engaged in any criminal activity and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.

11) The defendant shall permit a probation officer to visit his or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer.

12) The defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer.

13) The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the Court.

14) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

THESE CONDITIONS ARE IN ADDITION TO ANY OTHER CONDITIONS IMPOSED BY THIS JUDGMENT.

JANUARY 17, 1991
Date of Imposition of Sentence

Earl B. Gilliam
Signature of Judicial Officer

EARL B. GILLIAM
UNITED STATES DISTRICT JUDGE
Name & Title of Judicial Officer

Date: JANUARY 17, 1991

WILLIAM W. LUDDY, Clerk
By: C. McDonald
C. McDonald, Deputy Clerk

I hereby attest and certify on 1-18-91
that the foregoing document is a full, true and correct copy of the original on file in my office and in my legal custody.

WILLIAM W. LUDDY
CLERK U. S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By: C. McDonald, Deputy

# EXHIBIT COVER PAGE:

Exhibit: 9

Description of this exhibit: California Regulations for Multijurisdiction Prisoners, and Chapter 3, first degreer Murder Matrix

Number of pages of this exhibit:________pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ____________________

1. Amendment filed 10-27-77 as an emergency; effective upon filing. Certificate of Compliance included (Register 77, No. 44).
2. Amendment of subsection (b) filed 7-14-78 as an emergency; effective upon filing (Register 78, No. 28).
3. Certificate of Compliance filed 10-27-78 (Register 78, No. 43).

frog 03/16/07, Register 2007, No. 11

© 2007 Thomson/West. No claim to original U.S. Govt. works.

15 CCR s 2368, s 2368. Prehearing Procedures.

*764 15 CCR s 2368

**BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS**
**TITLE 15. CRIME PREVENTION AND CORRECTIONS**
**DIVISION 2. BOARD OF PRISON TERMS**
**CHAPTER 3. PAROLE RELEASE**
**ARTICLE 10. MULTIJURISDICTION REGULATIONS**

*This database is current through 03/16/07, Register 2007, No. 11*

**s 2368. Prehearing Procedures.**

Upon notification that the board at the central office calendar has ordered a hearing for a multijurisdiction prisoner or parolee, the central office hearing coordinator shall assure that the officials of the other jurisdiction have done the following:

(a) Scheduled the hearing.

(b) Met time limits.

(c) Advised the prisoner or parolee of his rights.

(d) Screened the prisoner's or parolee's requests for witnesses, if applicable.

(e) Notified any necessary witnesses of the date, time and place of the hearing, if applicable.

(f) Disclosed all documentary and physical evidence unless designated confidential under Section 2235.

(g) Decided requests for continuances under Section 2253.

(h) Arranged necessary attorney representation, if applicable.

(i) Otherwise prepared the case for a hearing.

frog 03/16/07, Register 2007, No. 11

© 2007 Thomson/West. No claim to original U.S. Govt. works.

15 CCR s 2369, s 2369. Documentation Hearing.

*765 15 CCR s 2369

**BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS**
**TITLE 15. CRIME PREVENTION AND CORRECTIONS**
**DIVISION 2. BOARD OF PRISON TERMS**
**CHAPTER 3. PAROLE RELEASE**
**ARTICLE 10. MULTIJURISDICTION REGULATIONS**

*This database is current through 03/16/07, Register 2007, No. 11*

**s 2369. Documentation Hearing.**

At this hearing, the panel shall review the prisoner's activities and conduct considering the criteria in ss 2290 and 2410 and document activities and conduct pertinent to granting and withholding postconviction credit. This hearing shall be conducted by a one person panel and the panel member shall be a commissioner or deputy commissioner. The hearing shall be scheduled pursuant to s 2269.1. For multijurisdiction prisoners located outside California, the hearing may be conducted over the telephone or by videoconferencing.

*Note: Authority cited: Section 5076.2, Penal Code. Reference: Section 1389.7, 3041, 3041.5, 11190 and 11193, Penal Code.*

*HISTORY*

*1. Amendment of section heading, repealer and new section and newNote filed 6-17-2003; operative 7-17-2003 (Register 2003, No. 25).*

frog 03/16/07, Register 2007, No. 11

© 2007 Thomson/West. No claim to original U.S. Govt. works.

15 CCR s 2370, s 2370. Initial Parole Hearing: Prisoner Rights.

*766 15 CCR s 2370

**BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS**
**TITLE 15. CRIME PREVENTION AND CORRECTIONS**
**DIVISION 2. BOARD OF PRISON TERMS**
**CHAPTER 3. PAROLE RELEASE**
**ARTICLE 10. MULTIJURISDICTION REGULATIONS**

*This database is current through 03/16/07, Register 2007, No. 11*

**s 2370. Initial Parole Hearing: Prisoner Rights.**

(a) Multijurisdiction Prisoners Located in California. At the hearing specified in Section 2268 all multijurisdiction prisoners located in California, shall have the rights specified in Sections 2245-2255.

(b) Multijurisdiction Prisoners Located Outside California. At the hearing specified in Section 2268, all multijurisdiction prisoners located outside California shall have the rights specified in Section 2367. The hearing shall be a telephone hearing.

(c) Record. The record of the hearing shall be a verbatim transcript.

(d) Decision. In making a decision concerning parole for multijurisdiction prisoners the hearing panel shall make one of the following decisions considering the factors enumerated:

(1) To discharge the California sentence at the minimum eligible parole date and waive parole when the crime for which the prisoner has been committed to the other jurisdiction is more serious than the California crime or when the prisoner has stronger family, social or economic ties to the other jurisdiction than he does to California.

(2) To set the California term as provided in this Chapter if the prisoner would serve substantially more time for the California crimes than for the crimes committed in the other jurisdiction, the prisoner has stronger social, family or economic ties to California or the panel determines that discharge would be inappropriate.

*Note: Authority cited: Section 5076.2, Penal Code. Reference: Sections 1170.2, 3041, 3041.5 and 3041.7, Penal Code.*

*HISTORY*

*1. Amendment of section title filed 10-27-77 as an emergency; effective upon filing. Certificate of Compliance included (Register 77, No. 44).*

*2. New subsection (d) filed 4-4-78; effective thirtieth day thereafter (Register 78, No. 14).*

**767** *3. Amendment of subsection (d)(2) filed 8-12-82; effective thirtieth day thereafter (Register 82, No. 33)*

frog 03/16/07, Register 2007, No. 11

© 2007 Thomson/West. No claim to original U.S. Govt. works.

15 CCR s 2371, s 2371. Progress Hearing: Prisoner Rights.

*768 15 CCR s 2371

**BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS**
**TITLE 15. CRIME PREVENTION AND CORRECTIONS**
**DIVISION 2. BOARD OF PRISON TERMS**
**CHAPTER 3. PAROLE RELEASE**

# California Code Of Regulations

# Title 15. Division 2. Board of Prison Terms

## CIRCUMSTANCES

| First Degree Murder<br><br>Penal Code 189 (in years and does not include post conviction credit as provided in 2290) | A. Indirect<br>Victim died of crimes related to the act of the prisoner but was not directly assaulted by prisoner with deadly force, e.g. shock producing heart attack; a crime partner actually did the killing | B. Direct or Victim Contribution<br>Death was almost immediate or resulted at least partially from contributing factors from the victim; e.g. victim initiated struggle or had goaded the prisoner. This does not include victim acting in defense of self or property. | C. Severe Trauma<br>Death resulted from severe trauma inflicted with deadly intensity; e.g. beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon not resulting in immediate death or action calculated to induce terror in the victim. | D. Torture<br>Victim was subjected to the prolonged of physical pain through the use of non-deadly force prior to act resulting in death. |
|---|---|---|---|---|
| I. Participating Victim<br>Victim was accomplice or otherwise implicated in a criminal act with the prisoner during which or as a result of which the death occurred, e.g., crime partners, drug dealers, etc. | 25-26-27 | 26-27-28 | 27-28-29- | 28-29-30 |
| II. Prior relationship<br>Victim was involved in a personal relationship with prisoner (spouse, family member, friend, etc), which contributed to the motivation for the act resulting in death. If victim had a personal relationship but prisoner hired and/or paid a person to commit the offense. See Category IV. | 26-27-28 | 27-28-29 | 28-29-30 | 29-30-31 |
| III. No Prior relationship<br>Victim had little or no personal relationship with prisoner, or motivation for act resulting in death was related to the accomplishment of another crime, e.g. death of victim during robbery, rape, or other felony. | 27-28-29 | 28-29-30 | 29-30-31 | 30-31-32 |
| IV. Threat to Public order or Murder for Hire<br>The act resulting in the victim's death constituted a threat to the public order include the murder of a police officer, prison guard, public official, fellow patient or prisoner, any killing within an institution or any killing where the prisoner hired and/or paid another person to commit the offense. | 28-29-30 | 29-30-31 | 30-31-32 | 31-32-33 |

## (c) Matrix of Base Terms for Second Degree Murder on or after November 8, 1978

## CIRCUMSTANCES

| Second Degree Murder<br><br>Penal Code 189 (in years and does not include post conviction credit as provided in 2290) | A. Indirect<br>Victim died of crimes related to the act of the prisoner but was not directly assaulted by prisoner with deadly force, e.g. shock producing heart attack; a crime partner actually did the killing | B. Direct or Victim Contribution<br>Death was almost immediate or resulted at least partially from contributing factors from the victim; e.g. victim initiated struggle or had goaded the prisoner. This does not include victim acting in defense of self or property. | C. Severe Trauma<br>Death resulted from severe trauma inflicted with deadly intensity; e.g. beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon not resulting in immediate death or action calculated to induce terror in the victim. |
|---|---|---|---|
| I. Participating Victim<br>Victim was accomplice or otherwise implicated in a criminal act with the prisoner during which or as a result of which the death occurred, e.g., crime partners, drug dealers, etc. | 15-16-17 | 16-17-18 | 17-18-19 |
| II. Prior relationship<br>Victim was involved in a personal relationship with prisoner (spouse, family member, friend, etc), which contributed to the motivation for the act resulting in death. If victim had a personal relationship but prisoner hired and/or paid a person to commit the offense. See Category IV. | 16-17-18 | 17-18-19 | 18-19-20 |
| III. No Prior relationship<br>Victim had little or no personal relationship with prisoner, or motivation for act resulting in death was related to the accomplishment of another crime, e.g. death of victim during robbery, rape, or other felony. | 17-18-19 | 18-19-20 | 19-20-21 |

56

# EXHIBIT COVER PAGE:

Exhibit: 10

Description of this exhibit: Proposed decision, showing the unauthorized decision, and that the decision would not become final until it was reviewed

Number of pages of this exhibit: 1 pages

JURISDICTION: (Check only one)

_____ Municipal Court

_____ Superior Court

_____ Appellate Court

_____ State Supreme Court

_____ United States District Court

_____ United States Circuit Court

_____ United States Supreme Court

_____ California Department of Corrections, 602 Exhibit.

_____ Other: ______________________________

BOARD OF PRISON TERMS STATE OF CALIFORNIA

**Records Use Only**

Parole Release Date ______ YR MO DAY

Attach Prison Calculation Sheet

[ ] PAROLE GRANTED – (YES)
CDC: Do not release prisoner before Governor's review.

[✓] PAROLE DENIED – (NO) 5 years
New Psych Requested

[ ] AGREED UNSUITABLE (Attach 1001A Form) FOR: ______ YEAR(S)
[ ] HEARING POSTPONED/REASON: ______

## PANEL RECOMMENDATIONS AND REQUESTS

**The Board Recommends:**

[✓] No more 115's or 128A's
[ ] Work to reduce custody level
[✓] Get self-help*
[✓] Stay discipline free
[✓] Learn a trade*
[✓] Get therapy*
[✓] Earn positive chronos
[ ] Get a GED*

[ ] Recommend transfer to ______
[ ] Other ______

* These programs are recommended if they are offered at your prison and you are eligible/able to participate.

**Penal Code 3042 Notices** [ ] Sent Date: December 27, 2004

Commitment Offense(s) 187 Murder 1st
Code(s) Crimes(s)
CR103749 08
Case #(s) Count #(s)

| Date Inmate Came to CDC | Date Life Term Began | Minimum Eligible Parole Date |
|---|---|---|
| 02/21/1991 | 02/21/1991 | 09/01/2005 |

[ ] Initial Hearing [ ] Subsequent (Hearing No.) ______ Date of Last Hearing ______

CDC Representative E. K. Parks
Attorney for Prisoner Maryann Tardiff Address
D.A. Representative Video Conference County San Diego

This form and the Board's decision at the end of the hearing is only proposed and NOT FINAL. It will not become final until it is reviewed.

Chair [signature] Date 2/24/05
Panel Member [signature] Date
Panel Member Date

| NAME | CDC # | PRISON | CALENDAR | DATE |
|---|---|---|---|---|
| Walters, Martin | E86183 | PVSP | February 2005 | 02/24/2005 |

BPT 1001 (REV. 08/03)

INMATE COPY

Apr 13,2006 11:47AM

# EXHIBIT COVER PAGE:

Exhibit: 11

Description of this exhibit: Courts Decisions of California. Superior, Appellate and Supreme Courts.

Number of pages of this exhibit: 7 pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: _______________

FILED
Clerk of the Superior Court
JUN 21 2006
By: NORMA TAQUINO, Deputy

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF SAN DIEGO**

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF: MARTIN E. WALTERS, Petitioner | HC 17872<br>CR 103749<br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

THIS COURT, HAVING READ THE PETITION FOR WRIT OF HABEAS CORPUS AND THE FILES IN THE ABOVE CAPTIONED MATTER, FINDS AS FOLLOWS:

On May 5, 1990, Petitioner pled guilty to murder. On January 10, 1991, he was sentenced to an indeterminate term of 25 years to life in prison. The court ordered Petitioner pay restitution to the victims and a restitution fine.

Petitioner previously filed a petition for writ of habeas corpus on October 14, 2004, arguing his sentence was a *determinate* term of 25 years because the court did not aggravate it to "life." He also argued the Department of Corrections repeatedly set his maximum term at 25 years, but then "resentenced" him to an indeterminate life term. Finally, Petitioner argued the court improperly imposed restitution without determining his ability to pay. This Court denied Petitioner's claims as untimely.

On January 7, 2005, Petitioner filed a petition for writ of habeas corpus with the Fourth Appellate District, Division One (Case No. D045658), raising the same issues raised in his prior petition with this Court. The Court of Appeal denied the petition on February 15, 2005, finding the trial court had imposed a legal sentence, and the Board of Prison Terms would determine when and if he was suitable for parole. The Court of Appeal also found Petitioner's contentions regarding his restitution fine were untimely.

Petitioner appears to have filed a subsequent petition for writ of habeas corpus with the California Supreme Court (Case No. S132581), which was denied January 18, 2006.

Petitioner filed the instant petition for writ of habeas corpus on April 27, 2006. In the instant petition, Petitioner seeks to "enforce the terms of the plea agreement." According to Petitioner, he was "under the impression" he would be released after spending 21 years in custody. However, he claims he has "erroneously" received a sentence of 25 years to life.

In support of his claims, Petitioner has filed, among other things, a request for judicial notice.

Evidence Code section 452, subdivision (d) permits judicial notice of the records of "any court of record of the United States or of any state of the United States." (Evid. Code, § 452, subd. (d).) Defendant seeks judicial notice of two pages purportedly taken from the January 17, 1991 transcript of proceedings which took place in case number 88-0769-G-Criminal, before the Honorable Earl B. Gilliam, Judge of the United States District Court for the Southern District of California. This Court declines to take judicial notice of these pages because the documents offered are neither certified nor provided under subpoena from the Southern District. Thus, this Court has no assurance of their authenticity. "When a party desires the appellate court to take judicial notice of a document or record on file in the court below the parties should furnish the [reviewing] court with a copy of such document or record certified by its custodian." (*Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 791-792.) It is the burden of the party seeking judicial notice to demonstrate a reason for the failure to furnish certified copies. (*Ibid.*) Petitioner has not met this burden. However, the Court notes, even if these pages were properly certified, this Court could only take judicial notice as to the existence of the transcript;

not as to the truth of any of the statements contained therein. (*Id.* at p. 792, citing *Day v. Sharp* (1975) 50 Cal.App.3d 904, 914.)

The petition for writ of habeas corpus is also DENIED.

First, "a defendant is not permitted to try out his contentions piecemeal by successive proceedings attacking the validity of the judgment against him." (*In re Clark* (1993) 5 Cal.4th 750, 767-775, quoting *In re Connor* (1940) 16 Cal.2d 701, 705.) Unless a petitioner can justify the filing of numerous habeas corpus petitions, the reviewing court may summarily deny the current petition in its entirety. (*In re Clark, supra,* 5 Cal.4th, at pp. 767-775.) Here, Petitioner has not explained why he failed to raise the instant claims in any of his prior petitions. Petitioner contends the claim regarding his plea agreement was "unknown until recently." However, Petitioner has already filed at least two prior habeas petitions addressing his sentence. That Petitioner did not at that time "discover" any further basis for his claims does not automatically provide justification for filing successive piecemeal petitions.

Second, even if this Court were to review the merits of Petitioner's claims, the petition would fail. Every petitioner, even one filing in pro per, must set forth a prima facie statement of facts which would entitle him to habeas corpus relief under existing law. (*In re Bower* (1985) 38 Cal.3d 865, 872; *In re Hochberg* (1970) 2 Cal.3d 870, 875 fn 4.) The petitioner then bears the burden of proving the facts upon which he bases his claim for relief. (*In re Riddle* (1962) 57 Cal.2d 848, 852.) Petitioner has not met this burden.

Petitioner has not demonstrated his "impression" that he would be released from custody after twenty-one years was based on anything more than speculation regarding his minimum eligible parole date. In fact, at the time of sentencing, no one has any way of knowing the status of all of the factors that will be considered by the parole board years in the future. That Petitioner would be "eligible" for parole at any given time, is not a guarantee Petitioner would definitely be granted parole at that time.

Petitioner has filed a motion for production of certified transcripts which would allegedly provide prima facie evidence of his claims. However, Petitioner has not made any showing that the certified transcripts he seeks will provide information different from the information

contained in the federal transcripts he has already provided in support of his petition. Petitioner notably has failed to specify in that motion any proposed factual basis for obtaining this material. Factual specificity and particularity are required when seeking a reporter's transcripts and other documents at the taxpayers' expense. (See *People v. Bizieff* (1991) 226 Cal.App.3d 1689, 1702; *United States v. MacCollom* (1976) 426 U.S. 317, 322-325.) Therefore the request for production is denied.

It is emphasized that Petitioner's right of access to these transcripts is ***not*** being denied. However, right of access is not the same as a right to have the taxpayers and/or the County of San Diego pay to make copies of documents. Petitioner has the right, as does any member of the public, to review these files and to request that copies be made of whatever documents are contained therein. The requesting party bears the cost of making copies and there is no legal authority requiring the taxpayer to subsidize this expense. Petitioner may have a friend or relative review the file and have copies made of whatever is contained therein -- for a fee. However, the transcripts Petitioner seeks may not be in the Court file, because transcripts of every hearing are not automatically prepared. In that case, Petitioner would have to contact the court reporter who transcribed the hearings in question to negotiate financial arrangements to pay for what he wants.

For each of the foregoing reasons, the petition for writ of habeas corpus, request for judicial notice and request for production of transcripts are denied. Service of this Order is ordered upon (1) Petitioner, and (2) the San Diego Office of the District Attorney (Appellate Division).

IT IS SO ORDERED.

DATED: June 21, 2006

Robert F. O'Neill

ROBERT F. O'NEILL
JUDGE OF THE SUPERIOR COURT

I hereby certify that the foregoing instrument is a full, true & correct copy of the original on file in this office, that said document has not been revoked, annulled or set aside, and it is in full force and effect.

Attest: JUN 21 2006 @ 4:00pm

Clerk of the Superior Court of the State of California, in and for the County of San Diego

By AT Deputy

COURT OF APPEAL - FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

FILED
Stephen M. Kelly, Clerk
MAY 24 2001
Court of Appeal Fourth District

| | |
|---|---|
| In re MARTIN E. WALTERS<br>on<br>Habeas Corpus. | D050312<br>(San Diego County<br>Super. Ct. No. CR103749) |

THE COURT:

The petition for writ of habeas corpus has been read and considered by Presiding Justice McConnell, and Associate Justices McIntyre and O'Rourke.

Martin Edward Walters pleaded guilty to a first degree murder committed in 1988. The trial court sentenced him to an indeterminate term of 25 years to life in prison and ordered him to pay restitution fines.

Walters asserts the terms of his plea agreement are not being properly enforced. Specifically, he claims the terms of his plea agreement state he is to be released from custody after serving a determinate sentence of 21 years and that the court erroneously sentenced him to 25 years to life. He further asserts the terms of the plea agreement were "obtained by fraud."

Preliminarily, we note procedural bars to Walters's claims. His claim that the terms of his plea agreement are not being enforced is untimely and Walters has not established good cause for the delay in bringing the claim. (*In re Robbins* (1998) 18 Cal.4th 770, 780.)

In any event, Walters has failed to state a prima facie case for relief. To satisfy this requirement, the petition must state fully and specifically the facts justifying relief. It must also include reasonably available supporting evidence, including trial transcripts and/or affidavits or declarations. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) Conclusory allegations made without any explanation of the basis for them do not support the granting of relief or even an evidentiary hearing. (*Ibid.*)

Walters has not shown that he would be released from custody after serving a 21-year sentence. The sentencing order clearly states Walters received a sentence of 25 years to life. Further, Walters pleaded guilty to first degree murder. The punishment for murder in the first degree is either death, imprisonment in the state prison for life without the possibility of parole, or imprisonment in the state prison for a term of 25 years to life. (Pen. Code, § 190, subd. (a).) The court imposed a legal sentence.

Also, there is nothing in the record showing the terms of the plea agreement were obtained under conditions of fraud or duress. A review of the guilty plea form shows Walters's initials appear next to the statement asserting he was not induced to enter his plea. The record shows Walters filed a motion to withdraw the plea following its entry. The trial court denied the motion. Walters has not stated a prima facie case for relief. (*People v. Duvall, supra,* 9 Cal.4th at pp. 474-475.)

The petition is denied.

McINTYRE, Acting P. J.

Copies to: All parties

Court of Appeal, Fourth Appellate District, Div. 1 - No. D050312
**S153765**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

In re MARTIN E. WALTERS on Habeas Corpus

---

The petition for review is denied.

SUPREME COURT
FILED

AUG 1 5 2007

Frederick K. Ohlrich Clerk

Deputy

GEORGE

Chief Justice

# EXHIBIT COVER PAGE:

Exhibit: 12

Description of this exhibit: Shows Petitioner's "release" date(s); "Days in custody to serve"

Number of pages of this exhibit: 1 pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections. 602 Exhibit.

_____Other: ___________________________________________

TATE OF CALIFORNIA
REDIT/TERM COMPUTATION

. MAXIMUM DSL DATE

1. 2-21-91 + 25 yrs. = 2-21-2016
RECEIVED DATE / TOTAL TERM / BASE DATE

2. Less total preconfinement credit 1156 + 41 - 1197

3. MAXIMUM DSL RELEASE DATE = 11-11-2012

. GOOD TIME CREDIT

1. Received date or 7-1-77 whichever is later, less one day - ~~2-20-91~~ 2-21-91

2. Days in custody of department = 7935

3. Postsentence + 41

4. Days in custody on which GTC may be earned = 7976

5. ÷ 3 = GOOD TIME CREDIT = ~~2658~~ 2659

C. MINIMUM DSL RELEASE DATE (A-3 minus B-5) = 8-2-2005

1/3 MEPD

COMMENTS:

Use #1 2/1994

Audited 7/2004

MEPD: 8-1-2005

---

Computed by J. Miller 2/26/91
Case Records / date

Audited by ____________ ____________
Case Records / date

---

| NAME | NUMBER | INSTITUTION | DATE |
|---|---|---|---|
| Walters, Martin | E86183 | RJDRC | 2/26/91 |

CDC . 6792 (Rev 12/81)

# EXHIBIT COVER PAGE:

Exhibit: 13

Description of this exhibit: excerpt Fed. Court: sentencing transcript evidencing, A.U.S.A. is a witness to the intent of the State. Prosecutor.

Number of pages of this exhibit: 1 pages

JURISDICTION: (Check only one)

_____ Municipal Court

_____ Superior Court

_____ Appellate Court

_____ State Supreme Court

_____ United States District Court

_____ United States Circuit Court

_____ United States Supreme Court

_____ California Department of Corrections. 602 Exhibit.

_____ Other: ______________________________

THE COURT: ALL RIGHT.

MR. FERRARO: YOUR HONOR, I DON'T THINK IMPOSING THE LOWER END IS REQUIRED BY THE AGREEMENT. THE UNITED STATES ASKED THE COURT TO IMPOSE A 25-YEAR SENTENCE. LET ME BREAK THAT DOWN.

COUNT 1, 20 YEARS. COUNT 10, A CONCURRENT 10 YEAR SENTENCE. COUNT 13, A CONSECUTIVE FIVE-YEAR TERM OF IMPRISONMENT.

MUCH HAS BEEN SAID THIS MORNING ABOUT FIGURING OUT THE KIND OF SENTENCE THAT WILL BE ULTIMATELY IMPOSED IN THE CASE AGAINST MARTIN WALTERS IN STATE COURT. WHAT I MEAN BY THAT IS THERE HAS BEEN CALCULATIONS, ATTEMPTING TO FIGURE OUT HOW MANY YEARS MR. WALTERS WILL ACTUALLY SERVE IN STATE PRISON. I WOULD SUBMIT TO THE COURT THAT NONE OF THAT REALLY HAS ANY PLACE HERE, OR ANY REAL CONSIDERATION BEFORE YOU. THE DEFENDANT IS GOING TO BE SENTENCED ACROSS THE STREET FOR THE CRIMES THAT HE COMMITTED.

OUR AGREEMENT IS SIMPLY THAT THE TIME IS TO RUN CONCURRENT. NOW, WE STAND BY THAT AGREEMENT. ACTUALLY, THE GOVERNMENT NEVER AGREED TO THAT. THE STATE AGREED TO IT. WE DON'T WANT TO INTERFERE WITH THEIR AGREEMENT. WE DON'T WANT TO INTERFERE WITH THEIR ATTEMPT TO DO THAT.

BUT I WOULD SUBMIT THAT WE NEED TO LOOK AT THIS CASE AND PUNISH THIS DEFENDANT FOR THE CRIMES HE COMMITTED HERE, AND THE SUPERIOR COURT WILL IMPOSE A SENTENCE FOR

# Exhibit 14

Fed. Counsels Billing Diary Showing

Petitioner's State Counsel and he believed Petitioner would serve 19 years for the murder and the Fed. Sentence of 23 years would be longer than the State Sentence; and Petitioner would be free in 20 years which was what the negotiating Parties intended durging the Plea Bargain Stages.

is...I will set it up and call Larry

07/17/90 N/C tct EBG chambers NI LMTC

07/17/90 .20 tcf EBG law clerk who says that the only time that the judge can meet with us is tomorrow at 4:15

07/18/90 N/C tct Ferraro and Ainbinder to advise NI LMTC

07/18/90 .20 conf w/Ainbinder and Ferraro. Ferraro points out that we goofed up a little doing the dispo...cl was advised that the max for count one was 10-life. Actually, the guidelines changed one day after cl's conduct (difference is between 10/31/88 and 11/01/88)...the actual guidelines in effect at time of offense were 0-20 years.

Martin could argue ineffective assistance of counsel if he wanted to, however:

(a) his state court case was mandatory 25-life
(b) even under the correct guidelines, his exposure at trial was a term of years that would have exceeded a life sentence

For these reasons, any IAC claim would be without merit.

Bottom line is that this makes the PSR recommendation moot, because the max cl could get would be 20 (for count one) plus 5 (for count two) for a total of 25 years! Martin should be happy about this.

07/18/90 .20 conf w/Ainbinder...he thinks that since Martin will do probably 19-20 actual years state, we should have his fed sentence a little longer than state so he doesn't have to go and do any state time. Therefore, we should get a total sentence of around 23years 3 months, which is 20 years actual time.

07/18/90 1.20 legal research re guidelines and prison terms. It appears that we should ask for 18 years and 3 months (219 months) for the conspiracy, 10 years (120 months) for the pipe bomb...all to run concurrent. Then add five years mandatory for the gun, and you get 23 years and 3 months (279 months). This will get him out in twenty years on the nose, which is what we all intended when we did plea negotiations (Cal. Civ code of Civ. Proc. § 1859)

07/19/90 1.40 prep for sent hearing

07/19/90 .50 R+R probation response to our obj to PSR

07/23/90 .30 appear EBG for hearing...marshal tells me that cl was hospitalized a couple of days ago for kidney problems, and should be in Harbor View Hosp...we will check and find out. Matter put over to 07/26/90 fpr status

07/23/90 tct Harborview Medical Center (232-4331) They do not have any information or records showing that Martin is there.

(excerpt)
Federal Plea transcripts

Showing Petitioner and State agreed he would be in Federal Custody.

Exhibit 15

TO ADD?

MR. FERRARO: NO, SIR.

MR. POKORNY: YOUR HONOR, THE COURT IS AWARE, BECAUSE OF MR. AINBINDER'S PRESENCE, THAT THERE WAS A PLEA IN THE STATE COURT MATTER. JUST SO IT'S BEEN STATED ON THE RECORD, BECAUSE I DIDN'T HEAR IT. IT WAS AGREED, I BELIEVE, BY ALL PARTIES THAT ANY TIME MR. WALTERS DOES WILL BE IN FEDERAL CUSTODY.

THE COURT: IS THAT AGREEABLE WITH THE GOVERNMENT?

MR. FERRARO: YOUR HONOR, THAT'S NOT NECESSARILY PART OF THE AGREEMENT, BUT EXPECTATION OF THE PARTIES THAT IT WILL BE IN FEDERAL CUSTODY.

MY COMMUNICATIONS WITH THE BUREAU OF PRISONS THUS FAR, MR. STEVENS, THAT SINCE THE DEFENDANT IS A FEDERAL INMATE, HE IS GOING TO REMAIN A FEDERAL INMATE AND WILL SERVE HIS TIME IN FEDERAL CUSTODY.

WE HAVE NO OBJECTION TO HIS REMAINING IN FEDERAL CUSTODY, AND THAT'S BEEN THE POSITION OF THE DISTRICT ATTORNEY, AND IT REMAINS THE POSITION OF THE UNITED STATES.

THE COURT: YOU WOULD BE MAKING THAT REQUEST?

MR. POKORNY: THAT'S RIGHT, YOUR HONOR.

THE COURT: MR. AINBINDER, WILL YOU BE MAKING THAT REQUEST IN STATE COURT?

MR. AINBINDER: YES, YOUR HONOR. THE STATE AGREEMENT WAS BOTH WRITTEN AND STATED ON THE RECORD THAT THE

DISTRICT ATTORNEY WILL NOT OPPOSE MR. WALTERS REMAINING AS A FEDERAL INMATE AND SERVING HIS TIME IN A FEDERAL INSTITUTION. THAT'S BEEN CONSENTING TO AND ENTERED INTO BY JUDGE RODRIGUEZ IN SUPERIOR 9 THIS AFTERNOON.

THE COURT: OKAY. THEN I'LL SENTENCE YOU UNDER THE FEDERAL LAW.

ANY OTHER PROMISES OR ANYTHING THAT SHOULD COME BEFORE US TODAY?

MR. POKORNY: I DON'T BELIEVE SO, YOUR HONOR.

THE COURT: ARE YOU SATISFIED, SON?

THE DEFENDANT M. WALTERS: YES.

THE COURT: ALL RIGHT. NOW I'M GOING TO TALK TO YOU ABOUT YOUR CONSTITUTIONAL RIGHTS. WHEN I'M DONE I'LL ASK IF YOU UNDERSTAND THEM, AND IF YOU WAIVE THEM. AS I GO THROUGH THEM I'LL ASK IF YOU UNDERSTAND THEM. IF YOU DON'T UNDERSTAND THEM, PLEASE SAY SO.

YOU UNDERSTAND YOU'RE ENTITLED TO HAVE A SPEEDY AND PUBLIC TRIAL AND TRIAL BY JURY WITH REFERENCE TO EVERYTHING YOU'RE CHARGED WITH?

THE DEFENDANT M. WALTERS: YES.

THE COURT: YOU UNDERSTAND YOU'RE ENTITLED TO HAVE THE PROSECUTOR PROVE THE CASE AGAINST YOU BEYOND A REASONABLE DOUBT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: IN ORDER TO DO THAT IT WOULD BE NECES-