Case 3:08-cv-00167-DMS-NLS

Martin Edward Walters #E-86183
C.S.P. - Solano 6-206L
P.O. Box 4000
Vacaville, CA. 95696

FILED
2008 APR 29 PM 3:55
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY RM DEPUTY

NUNC PRO TUNC
APR 28 2008

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN EDWARD WALTERS, Petitioner, v. D.K SISTO, Warden, Defendants. | Civil No.08cv167 DMS (NLS) Declaration Is Support of Petitioners opposition to Respondents motion to dismiss |

I, Martin Edward Walters, declare under penalty of perjury the following is true: Petitioner's explanation of why he believed

1. 25 years to life carried a determinate Sentence between 25 yrs. And life.
2. Penal Code § 190 language indicates Cal. Legislature intended for determinate terms or D.S.L./P.C. § 1170, with post conviction credits and 25 year Term in P.C. § 190.4. Which either proves an indeterminate Sentence is either illegal or the Statute is to ambiguous for the public to ascertain.
3. Also to show that Petitioner via Counsel, believed he would serve 19-20 years and that the Prosecutor's words lead him to believe the charge carried a sentence range of, and his actions of provideing terms, not mentioning Parole Suitability prerequisite, nor objecting to Petitioner's express expectation that he would be releaced at age 40. NEVER Life, or "Considered Life"! (see Exhibits D, incorporated herein by reference) That should have been disclosed.

ON 5-9-90, WHETHER RELEVENT OR NOT, AT THE MOMENT PETITIONER SIGNED THE CHANGE OF PLEA FORM PETITIONER BELIEVED THAT CALIFORNIA'S PUNISHMENT FOR FIRST DEGREE MURDER (P.C. § 190 eT. SEQ.) WAS A DETERMINATE TERM BETWEEN 25 YEARS TO LIFE, NOT AN "INDETERMINATE TERM OF 25 YEARS TO LIFE." BECAUSE OF THE FOLLOWING REASONS:

THE STATUTE:

A.) THE STATUTE (P.C. § 190) DOES NOT INCLUDE THE WORD "INDETERMINATE"

B.) THE LANGUAGE FOUND IN P.C. § 190 (A), INDICATING THE PENALTY TO BE APPLIED SHALL BE FOUND IN SUBSEQUENT SECTIONS (P.C. § 190.4) THUS, NOT FOUND IN SECTION 190 (A) ITSELF.

C.) P.C. § 190.4 IS THE ONLY PLACE THAT DESCRIBES A SITUATION WHERE A PERSON WHOSE FIRST DEGREE MURDER CONVICTION WITHOUT SPECIAL CIRCUMSTANCES FOUND TRUE, WOULD RECEIVE A SENTENCE, IMPOSED BY THE COURT, FOR A TERM OF 25 YEARS, NOT AN "INDETERMINATE SENTENCE OF 25 YEARS TO LIFE."

D.) AND THE POST-CONVICTION CREDIT FOR PERSONS SENTENCED PURSUANT TO P.C. § 1170 (A.K.A. D.S.L.) PORTION OF P.C. § 190 SUB. PARAGRAPH 3, WHERE THE LANGUAGE STATES A MINIMUM "TERM OF 25 YEARS... IMPOSED PURSUANT TO THIS SECTION...;" NOT 25 YEARS TO LIFE, NOR INDETERMINATE TERM OF 25 YEARS TO LIFE.

E.) NO PERSON SHALL BE RELEASED ON PAROLE PRIOR TO SUCH TIME, LANGUAGE DOES NOT SAY "ELIGIBLE FOR PAROLE RELEASE OR ELIGIBLE FOR PAROLE CONSIDERATION."[1]

THUS, PETITIONER NOT ONLY BELIEVED THAT THE STATUTE SUGGESTED A DETERMINATE SENTENCE, BUT EVEN TODAY CAN NOT COMPREHEND HOW ANY CITIZEN WOULD INTERPRET THE STATUTE, (P.C. § 190-190.5) TAKEN AS A WHOLE, WAS FOR AN "INDETERMINATE" SENTENCE. ESPECIALLY CONSIDERING THE WORD "INDETERMINATE" IS NOWHERE IN THE STATUTE, AND 25 YEARS (P.C. § 190.4 (A)) IS. (twice)

THUS, EVERY DIRECTION PETITIONER FOLLOWED INDICATED A DETERMINATE SENTENCE. HOW IS IT FAIR THAT A PERSON GUILTY OF FIRST DEGREE MURDER IN P.C. § 190.4 (A)(5) GETS A 25 YEAR SENTENCE FROM THE COURT (NOT B.P.H.) AND PETITIONER HAS TO GET AN INDETERMINATE SENTENCE FOR FIRST DEGREE MURDER? (see exhibit A, ATTAched hereto and incorporated herein by references)

(FN.1) Although Petitioner did not know on 5-9-90, Cal. Legislature knew, "Parole" (in Cal.) is a "penal Consequence" served after the term when P.C. § 190 was enacted in 1978. (P.C. § 3000; D.S.L.)

# REASON #2

A.) THE D.D.A., EVAN MILLER, PROVIDED PETITIONER WITH THE PRESCRIBED DETERMINATE TERMS, RANGEING FROM 25-33 YEARS, CLAIMING AND INDICATING THAT THE PUNISHMENT PETITIONER WOULD RECEIVE WAS THE PUNISHMENT IN YEARS CONTAINED WITHIN THIS MATRIX (ATTACHED HERETO AND INCORPORATED HERE IN AS EXHIBIT B ) COMMENSURATE TO THE FACTS IN PETITIONER'S CASE, BASED SOLELY UPON THE CRIME WITH NO MENTION OF A CONDITION REQUIRING A "SUITIBILITY" PREREQUSITE.

B.) THE D.D.A. STATED THAT FIRST DEGREE MURDER HAD A "SENTENCE RANGE OF 25 YEARS TO LIFE." NOT AN INDETERMINATE SENTENCE OF 25 YEARS TO LIFE. (see exhibit d.)

C.) PROBATION REPORT WAS EVEN WRITTEN TO THAT EFFECT, TOO. (The report was written months later)

# REASON #3

THE CHANGE OF PLEA FORM ITSELF:

A.) THE FORM "ADVISING" PETITIONER OF THE MAXIMUM POTENTIAL CONSEQUENCE THAT MAY BE IMPOSED, SECTION 8(A) (ATTACHED HERETO AND INCORPORATED HEREIN, AS EXHIBIT C ). DOES NOT USE THE WORDS "INDETERMINATE", AND PETITIONER DID NOT AGREE TO SERVE AN INDETERMINATE TERM. (Although he is entitled to relief as such, Title 15 § 2370 (d)(1) OR (2).)

B.) PETITIONER IS "ADVISED" OF A POSSIBLE $10,000 FINE ALTHOUGH PETITIONER DID NOT "AGREE" TO PAY $10,000. (Petitioner did not agree to serve "Life" either!)

C.) ADVISES PETITIONER OF A 60 MO. PERIOD OF PAROLE. THUS, PETITIONER REASONABLY CONCLUDED, THAT HE WOULD HAVE TO HAVE A TERM, (DETERMINED) IN ORDER TO APPLY THE 60 MO. PERIOD OF PAROLE TOWARDS, BECAUSE PAROLE IS EARLY RELEASE UPON THE TERM (IMPOSED) IN ORDER TO SERVE THE REMAINDER OF THE TERM OUTSIDE THE PRISON WALLS, ACCORDING TO FEDERAL LAW.

D.) No mention of "parole suitibility" to fix a proportionate term.

# REASON #4 surrounding circumstances "phrases"

PETITIONER WAS ALSO MISADVISED THAT HE FACED "10 TO LIFE" IN THE FEDERAL CASE 88-0769-G, 10 YEARS WAS THE MINIMUM AND LIFE THE MAXIMUM, PURSUANT TO THE FEDERAL GUIDELINES EFFECTIVE ON 11-1-88. HOWEVER, PETITIONER WAS SHOWN THE GUIDELINE MATRIX, FOR HIM, LEVEL 36, CRIMINAL HISTORY CATAGORY 1, EQUATED TO A TERM OF MONTHS, NOT AN INDETERMINATE SENTENCE, EVEN THOUGH IT WAS PHRASED "10 TO LIFE", BY MY COUNSEL, THE SAME WAY "25 TO LIFE" WAS "PHRASED."

A Word or phrase association similar to "Construeing a statute" and how the State will now attempt to exploit federal law with "Life Prisoner", "Parole", "Indeterminate Sentence", etc..

Petitioner hates to admit just how ignorant and unsophisticated he was.

## TERM FOR FIRST DEGREE MURDER

IF YOU WERE MARTIN WALTERS AND THE D.D.A. Mr. MILLER TOLD (P.C. § 1192.7) YOU, "YOU WON'T SERVE ONE DAY ON THE MURDER" BECAUSE "THE STATE TERM FOR MURDER WOULD EXPIRE BEFORE THE FEDERAL TERM", AND AS PROOF OFFERED THE FIRST DEGREE MURDER MATRIX ATTACHED HERETO AND INCORPORATED HEREIN; AFTER SUBTRACTING 33% FOR GOOD TIME/WORK TIME, (P.C. § 2931) POST CONVICTION, CONFINEMENT TIME, TERM REDUCING CREDIT?

## REASONABLE BELIEF

Wouldn't You believe You would receive a commencerate term, (e.g. 29 years)? WOULDN'T YOU REASONABLY BELIEVE, YOU WOULD BE FREE AFTER SERVING 19-20 YEARS? (subtracting 33% off Term)

NOTE: PETITIONER WAS ADVISED THIS BY COUNSEL WITH D.D.A. MILLER AT THE PLEA BARGAIN STAGE, BEFORE PETITIONER SIGNED THE CONTRACT. HOWEVER, TODAY PETITIONER ~~KNOWS~~ Is told THIS TO BE UNTRUE.

## PAROLE

THE D.D.A. MILLER, TOLD PETITIONER (P.C. § 1192.7) THAT Petitioner WOULD BE ELIGIBLE FOR PAROLE FOR UP TO 5 YEARS (PAROLE IS EARLY RELEASE TO FINISH THE REMAINDER OF THE TERM PROSCRIBED OUTSIDE THE PRISON WALLS (Morressy v. BREWER, U.S. Supreme Court Law. ) ALTHOUGH UNLIKELY, POSSIBLE.

BASED UPON THIS STATEMENT AND THE CLEAR WORDS USED IN THIS INSTRUMENT (i.e. 60 MONTHS PAROLE).

WOULDN'T YOU REASONABLY BELIEVE THAT A.) REASONABLE BELIEF YOU WOULD POSSIBLY RECEIVE AN EARLY RELEASE OF UP TO 60 MONTHS; AND OR B.) 60 MONTHS OF PAROLE?

WOULD YOU BELIEVE YOU WOULD HAVE A LIFE TIME OF PAROLE? (P.C. § 3000.1). THIS IS REVERSEABLE "PLAIN ERROR" (IN RE CARABES (1983) 193 CAL. RPTR. 65, OR IN RE MOSER 24 CAL. RPTR. 2d 723 (1993)), OR "clear error", "reversable error".

## Surrounding Circumstances

Petitioner was in a Federal Jail/Prison M.C.C., Parole was being used then. Petitioner doubts that M.C.C. "Law library" even has a Title 15; He ~~would~~ may not have even knew how the laws worked, even if he had access to it,

Your honor, Petitioner was (and is) ignorant and isolated, The entire Court and Confinement experience, Under the pressure of Very serious charges and told by Court Appointed counsels', Prosecutors', and Federal Court Judge that he faced (and would probably receive) L.W.O.P. was crushing. They all relied on the A.U.S.A. (Me Too), because of our core belief that, for the most part, our Government does not mislead us to our detriment. ~~Petitioner thought this was a tactic, when he considered~~ [redacted] ~~the totality of the Surrounding circumstances.~~ "On 1-10-91, Petitioner did not know the facts".

On 2-24-2005, Petitioner did not know facts. Petitioner discovered "labels" of Californiaese when attempting to receive his earned post conviction credit for his alleged "Release date", In November 2005. The Artiface of Californiaese; combined with presumption of reviewing courts, is almost indescribeable, until one falls Victim to the anamoly. The exploitation of Petitioner, by creating and defineing Words that a prisoner (or reviewing court) adopts to his own detriment e.g. "parole", "Indeterminate Sentence", "Life prisoner" (based upon no statutory Underpinnings) and escape meaningful reviews, is beyond words, and this ... exploitation, could not be discovered (and not all of it) until June or so, 2007. Petitioner has studied, D.S.L., then I.S.L., then the Legislation, then the State and Fed. Constitution, and law dictionaries, civil codes, the U.S. History, the Social Compact, And realized Just how brilliant a mind your honor must have, a slave to knowlege, forever dilligent. While morons like me TAKE it for granted and fail to be asset to my nation, my Country, my Community. Petitioner is ashamed ... and appreciates Your, and Mr. Woods, Sacrafice. Just so you know, Virtually every crime stems from feelings of disenfranchisement (at school) between Kids and their Teachers or Government We must fix this to stop Crime and rebuild our nation, into the Good Days. Severe Punishment has not worked in any nation in history. Heal us.

# EXHIBIT COVER PAGE:

Exhibit: A

Description of this exhibit:

Number of pages of this exhibit:________pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ________________________________________

## § 190. Murder; degrees; punishment; parole

(1) Every person guilty of murder in the first degree shall suffer death, confinement in state prison for life without possibility of parole, or confinement in the state prison for a term of 25 years to life.[1] The penalty to be applied[2] shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5.

(2) Every person guilty of murder in the second degree shall suffer confinement in the state prison for a term of 15 years to life.

(3) The provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code shall apply to reduce any minimum term of 25 or 15 years[3] in a state prison imposed pursuant to this section,[4] but such person shall not otherwise be released on parole[5] prior to such time. *(Added by § 2 of Initiative Measure approved Nov. 7, 1978.)*

Former § 190 was repealed by § 1 of Initiative Measure approved Nov. 7, 1978.

Former § 190, added by Stats.1973, c. 719, § 2, amended by Stats.1976, c. 1124, § 1; Stats.1976, c. 1139, § 133, relating to similar subject matter, was repealed by Stats.1977, c. 316, § 4.

Former § 190 was repealed by Stats.1973, c. 719, § 1.

STEP #1

(FN. 1) If it were permissible to add Quotation Marks to a statute (which it is not) The courts placed them here "25 years To Life" which would thus indicate an indeterminate sentence. However, had the courts elected to place them here "25 years" To "Life." we would obviously have a different result, thus, A determinate term, correct? Does this seem possible? Lets see.

(FN. 2) "The Penalty to be applied shall be determined as provided in Sections 190.1 – 190.5". Would it be fair to think the penalty to be determined is Not found in Section 190, but found some place else? Say 190.4, for example. Lets see; see P.C. § 190.4 Sub. para (a)(5)

Step #2

You should observe that; "the court (A) shall ... Impose a punishment of confinement in state prison for a term of 25 years. (B)" Yes, the court, Not the Board of Parole Hearings (B.P.H.) or Board of Prison terms (B.P.T.); and yes, 25 years, Not "25 years to life." Is that a misprint or did the courts Misinterpret the statute? Lets see Return back to P.C. § 190, ~~step~~ sub paragraph 3.

STEP #3

(commencing with Section 2930) A.K.A. Post conviction credit section. 2930 is for persons sentenced pursuant to P.C. § 1170 (The determinate Sentencing Law, (D.S.L.) as oppose to persons sentenced pursuant to Indeterminate Sentencing law, (I.S.L.).) "...shall apply to reduce any... term of 25... years

(FN 3) Not indeterminate term of 25 years to Life.

"...Imposed pursuant to this section"...

(FN 4) did 190.4, provide for a 25 year term "Imposed" by the court? Look back at the specific language used in 190.4.; Do you see Minimum Eligible Parole Date or credits to reduce that in P.C. § 2930? No.

(FN 5) "...No such person shall be released on parole prior to such time."

"Released on parole" is a D.S.L. Terminology. For example a burglar sentenced to 6 years must serve 4 years (1978 Per P.C. § 2931) befor being released on parole. (see Prop. 7, Pg. 32) However, a person being released →

the defendant was under the influence of extreme mental or emotional disturbance.

(e) Whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act.

(f) Whether or not the offense was committed under circumstances which the defendant reasonably believed to be a moral justification or extenuation for his conduct.

(g) Whether or not defendant acted under extreme duress or under the substantial domination of another person.

(h) Whether or not at the time of the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, or the effects of intoxication.

(i) The age of the defendant at the time of the crime.

(j) Whether or not the defendant was an accomplice to the offense and his participation in the commission of the offense was relatively minor.

(k) Any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime.

After having heard and received all of the evidence, and after having heard and considered the arguments of counsel, the trier of fact shall consider, take into account and be guided by the aggravating and mitigating circumstances referred to in this section, and shall impose a sentence of death if the trier of fact concludes that the aggravating circumstances outweigh the mitigating circumstances. If the trier of fact determines that the mitigating circumstances outweigh the aggravating circumstances the trier of fact shall impose a sentence of confinement in state prison for a term of life without the possibility of parole. *(Added by § 8 of Initiative Measure approved Nov. 7, 1978.)*

Former § 190.3 was repealed by § 7 of Initiative Measure approved Nov. 7, 1978.

Former § 190.3, added by Stats.1973, c. 719, § 6, prohibiting death penalty in certain circumstances, was repealed by Stats.1977, c. 316, § 10. See, now, § 190.5.

**Cross References**

Burden of proving mitigating circumstances in trial for murder, see § 1105.
Death penalty, not deemed cruel or unusual punishment, see Const. Art. 1, § 27.
Treason, admissibility of evidence of overt act, see § 1102.7.

**§ 190.4. Special circumstances; special findings; penalty hearing; application for modification**

(1)(a) Whenever special circumstances as enumerated in Section 190.2 are alleged and the trier of fact finds the defendant guilty of first degree murder, the trier of fact shall also make a special finding on the truth of each alleged special circumstance. The determination of the truth of any or all of the special circumstances shall be made by the trier of fact on the evidence presented at the trial or at the hearing held pursuant to Subdivision (b) of Section 190.1.

(2) In case of a reasonable doubt as to whether a special circumstance is true, the defendant is entitled to a finding that it is not true. The trier of fact shall make a special finding that each special circumstance charged is either true or not true. Whenever a special circumstance requires proof of the commission or attempted commission of a crime, such crime shall be charged and proved pursuant to the general law applying to the trial and conviction of the crime.

(3) If the defendant was convicted by the court sitting without a jury, the trier of fact shall be a jury unless a jury is waived by the defendant and by the people, in which case the trier of fact shall be the court. If the defendant was convicted by a plea of guilty, the trier of fact shall be a jury unless a jury is waived by the defendant and by the people.

(4) If the trier of fact finds that any one or more of the special circumstances enumerated in Section 190.2 as charged is true, there shall be a separate penalty hearing, and neither the finding that any of the remaining special circumstances charged is not true, nor if the trier of fact is a jury, the inability of the jury to agree on the issue of the truth or untruth of any of the remaining special circumstances charged, shall prevent the holding of a separate penalty hearing.

(A)(5) In any case in which the defendant has been found guilty by a jury, and the jury has been unable to reach a unanimous verdict that one or more of the special circumstances charged are true, and does not reach a unanimous verdict that all the special circumstances charged are not true, the court shall dismiss the jury and shall order a new jury impaneled to try the issues, but the issue of guilt shall not be tried by such jury, nor shall such jury retry the issue of the truth of any of the special circumstances which were found by a unanimous verdict of the previous jury to be untrue. If such new jury is unable to reach the unanimous verdict that one or more of the special circumstances it is trying are true, the court shall dismiss the jury and in the court's discretion shall either order a new jury impaneled to try the issues the previous jury was unable to reach the unanimous verdict on, or impose a punishment of confinement in state prison for a term of 25 years.

(b) If defendant was convicted by the court sitting without a jury the trier of fact at the penalty hearing shall be a jury unless a jury is waived by the defendant and the people, in which case the trier of fact shall be the court. If the defendant was convicted by a plea of guilty, the trier of fact shall be a jury unless a jury is waived by the defendant and the people.

If the trier of fact is a jury and has been unable to reach a unanimous verdict as to what the penalty shall be, the court shall dismiss the jury and shall order a new jury impaneled to try the issue as to what the penalty shall be. If such new jury is unable to reach a unanimous verdict as to what the penalty shall be, the court in its discretion shall either order a new jury or impose a punishment of confinement in state prison for a term of life without the possibility of parole.

5)

(A) this is a Hung Jury on special circumstances, where the defendant is entitled to (a finding of NOT Guilty of special circumstance) Thus, A person Guilty of first degree Murder without special circumstances.

---

continued from page 1, P.C. § 190 Sub para. 3;

"With Parole consideration". (see P.C. § 3049)(I.S.L.); is entirely a different matter. This language is Not used in section 190 Sub. para. 3.

I.S.L. was abolished before this section 190, was ever enacted.

The Sentencing rules of court provide for determinate Sentences (Not I.S.L.) unless identified, because defendant committed his crime prior to 7-1-77. (Also See P.C. §1170 ).

Finally

IN the LandMARK case IN RE Jeanice D, (1980), the Majority (4) Supreme Court Judges determined 25 years to life was An indeterminate Sentence while (3) dissenting Judges and the executive Branch (A.G.) determined it was a Life Sentence with a 25 year M.E.P.D.. How is it that two seperate and supposedly educated Branches of Government did not know what the legislature (3rd Branch) wanted? obviously None of them contemplated P.C. § 190.4 language that provides Neither life, Nor An Indeterminate Sentence. who's right?

# EXHIBIT COVER PAGE:

Exhibit: B.

Description of this exhibit:

Number of pages of this exhibit: _______ pages

JURISDICTION: (Check only one)

_____ Municipal Court

_____ Superior Court

_____ Appellate Court

_____ State Supreme Court

_____ United States District Court

_____ United States Circuit Court

_____ United States Supreme Court

_____ California Department of Corrections, 602 Exhibit.

_____ Other: ___________________________________

# California Code of Regulations
# Title 15. Division 2. Board of Prison Terms

Chapter 3.

CIRCUMSTANCES

| First Degree Murder<br>Penal Code 189 (in years and does not include post conviction credit as provided in 2290) | A. Indirect<br>Victim died of crimes related to the act of the prisoner but was not directly assaulted by prisoner with deadly force, e.g. shock producing heart attack; a crime partner actually did the killing | B. Direct or Victim Contribution<br>Death was almost immediate or resulted at least partially from contributing factors from the victim; e.g. victim initiated struggle or had goaded the prisoner. This does not include victim acting in defense of self or property. | C. Severe Trauma<br>Death resulted from severe trauma inflicted with deadly intensity; e.g. beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon not resulting in immediate death or action calculated to induce terror in the victim. | D. Torture<br>Victim was subjected to the prolonged of physical pain through the use of non-deadly force prior to act resulting in death. |
|---|---|---|---|---|
| I. Participating Victim<br>Victim was accomplice or otherwise implicated in a criminal act with the prisoner during which or as a result of which the death occurred, e.g., crime partners, drug dealers, etc. | 25-26-27 | 26-27-28 | 27-28-29- | 28-29-30 |
| II. Prior relationship<br>Victim was involved in a personal relationship with prisoner (spouse, family member, friend, etc), which contributed to the motivation for the act resulting in death. If victim had a personal relationship but prisoner hired and/or paid a person to commit the offense. See Category IV. | 26-27-28 | 27-28-29 | 28-29-30 | 29-30-31 |
| III. No Prior relationship<br>Victim had little or no personal relationship with prisoner, or motivation for act resulting in death was related to the accomplishment of another crime, e.g. death of victim during robbery, rape, or other felony. | 27-28-29 | 28-29-30 | 29-30-31 | 30-31-32 |
| IV. Threat to Public order or Murder for Hire<br>The act resulting in the victim's death constituted a threat to the public order include the murder of a police officer, prison guard, public official, fellow patient or prisoner, any killing within an institution or any killing where the prisoner hired and/or paid another person to commit the offense. | 28-29-30 | 29-30-31 | 30-31-32 | 31-32-33 |

(c) Matrix of Base Terms for Second Degree Murder on or after November 8, 1978

CIRCUMSTANCES

| Second Degree Murder<br>Penal Code 189 (in years and does not include post conviction credit as provided in 2290) | A. Indirect<br>Victim died of crimes related to the act of the prisoner but was not directly assaulted by prisoner with deadly force, e.g. shock producing heart attack; a crime partner actually did the killing | B. Direct or Victim Contribution<br>Death was almost immediate or resulted at least partially from contributing factors from the victim; e.g. victim initiated struggle or had goaded the prisoner. This does not include victim acting in defense of self or property. | C. Severe Trauma<br>Death resulted from severe trauma inflicted with deadly intensity; e.g. beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon not resulting in immediate death or action calculated to induce terror in the victim. |
|---|---|---|---|
| I. Participating Victim<br>Victim was accomplice or otherwise implicated in a criminal act with the prisoner during which or as a result of which the death occurred, e.g., crime partners, drug dealers, etc. | 15-16-17 | 16-17-18 | 17-18-19 |
| II. Prior relationship<br>Victim was involved in a personal relationship with prisoner (spouse, family member, friend, etc), which contributed to the motivation for the act resulting in death. If victim had a personal relationship but prisoner hired and/or paid a person to commit the offense. See Category IV. | 16-17-18 | 17-18-19 | 18-19-20 |
| III. No Prior relationship<br>Victim had little or no personal relationship with prisoner, or motivation for act resulting in death was related to the accomplishment of another crime, e.g. death of victim during robbery, rape, or other felony. | 17-18-19 | 18-19-20 | 19-20-21 |

Note: Petitioner's "circumstances" could not (possibly) Justify a Term beyond 30 years, That Term must be reduced by post conviction credit. (e.g. 33%); And 28 year Term was probably proportionate considering P.S.R. as true.

# EXHIBIT COVER PAGE:

Exhibit: C

Description of this exhibit:

Number of pages of this exhibit:________pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ________________________________________

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

FILED
KENNETH E. MARTONE
Clerk of the Superior Court
0253
MAY -9 1990
By: A. PECK, Deputy

People vs. Martin Walters CR No. 103749

DA No. B 46516

## PLEA OF GUILTY/NO CONTEST - FELONY

The defendant in the above-entitled action, in support of his/her motion to change his/her plea(s) in open Court, personally and by his/her attorney, does declare as follows:

1. Of those charges now filed against me in this case, I plead guilty (Guilty) No Contest to the following violations: (List Crimes and Code Sections) MW

P.C. § 187 Murder, 1st degree (Count 8) Amended Information

1a. **(If Applicable)** I also admit the following enhancement(s)/prior conviction(s) with which I am charged: (List Court, Docket No. and Date of any Prior Conviction)

N/A

2. I have not been induced to enter the above plea by any promise or representation of any kind, except: (Briefly state any agreement with the District Attorney.) MW

Dismiss all remaining counts + allegations; D.A. has no opposition to serving sentence in federal custody; concurrent to federal sentence in 89-0769 G; DA agrees to file no charges against either Martha Walters or Carmen Fonseca (Martin Walter's mother and aunt); Dismiss the companion drug case

**RIGHT TO A LAYWER**

3. I understand that I have the right to be represented by a lawyer at all stages of the proceedings. I can hire my own lawyer, or the Court will appoint a lawyer for me if I cannot afford one. MW

**CONSTITUTIONAL RIGHTS**

I understand that I also have the following constitutional rights, which I now give up to plead either Guilty/No Contest:

| | I understand this right. | I give up this right. |
|---|---|---|
| 4. The right to be tried by a jury, in a speedy, public trial. | MW | MW |
| 5. The right to confront and to cross-examine all the witnesses against me. | MW | MW |
| 6. The right to remain silent (unless I choose to testify on my own behalf). | MW | MW |
| 7. The right to present evidence and to have witnesses subpoenaed to testify in my behalf at no cost to me. | MW | MW |

**CONSEQUENCES OF PLEA OF GUILTY OR NO CONTEST**

8a. I understand that I may receive this maximum penalty as a result of my plea: 25 yrs to life years in State Prison, $ 10,000 fine and ~~48~~ 60 months parole, with up to one year return to prison for every parole violation. If I should receive probation (for up to five years), I understand that I may be given up to a year in local custody, plus the fine, and any other conditions deemed reasonable by the Court. I understand that if I violate any terms or conditions of probation I can be sent to State Prison for the maximum term as stated above. MW

8b. My attorney has explained to me that other possible consequences of this plea may be: MW

(Circle applicable consequences.)

- (a) Consecutive sentences.
- (b) Loss of driving privileges.
- (c) Commitment to the Youth Authority.
- (d) Registration as a sex offender.
- (e) Registration as an arsonist.
- (f) Ineligibility for probation/presumptive prison.
- (g) Registration as a narcotics offender.
- (h) Restitution and/or a restitution fine. ($100-$10,000)
- (i) Serious felony prior/prison prior.
- (j) Priorable

9. I understand that if I am not a citizen of the United States a plea of Guilty or No Contest could result in deporation, exclusion from admission to this country, and/or denial of naturalization. N/A

10. I understand that my plea of Guilty or No Contest in this case could result in revocation of my probation or parole in other cases. N/A

11. I now plead guilty (Guilty/No Contest) to the charges(s) described in #1 above and admit that on the date charged I: (Describe facts as to each charge in #1.) MW

~~[illegible]~~
lawfully murdered Christina Reyes, alone, my brother Vincent did not aid or assist in any way with her death 0254

11a. **(If Applicable)** I understand that as to any and all prior convictions(s)/enhancements(s) alleged against me in this case, I have all the constitutional rights listed in #3-#7 above. As to any prior convictions alleged, I understand that if I request a jury trial on the current case, the jury would not learn of or decide, the prior conviction(s) unless and until the jury found me guilty on the current charges. N/A

11b. **(If Applicable)** I herby admit the prior conviction(s)/enhancement(s) listed in this form, and give up my constitutional rights, including the right to separate jury determination on the issue of the prior conviction(s) N/A

12. I do understand that the matter of probation and sentence is to be determined solely by the Court. MW

13. **(Harvey Waiver)** The sentencing judge may consider my prior criminal history and the entire factual background of the case, including any unfiled, dismissed or stricken charges or allegations or cases when granting probation, ordering restitution or imposing sentence. MW

14. I am entering my plea freely and voluntarily, without threat or fear to me or anyone closely related to me. MW

15a. I am pleading Guilty because in truth and in fact I AM GUILTY MW

15b. I understand that a plea of No Contest is the same as a plea of Guilty in this criminal case and for all purposes has the same consequences as a plea of Guilty. N/A

16. I am now sober. I have not consumed any drug, alcohol or narcotic within the past 24 hours to the extent that my judgment is impaired. MW

17. I declare under penalty of perjury, under the laws of the State of California, that I have read, understood, and initialed each item above, and everything on the form is true and correct. MW

Dated: 5-9-90 Defendant's Signature Martin Walters

Defendant's Address ____________ Street City State ZIP

Defendant's Telephone No. ( ) - ____________

## ATTORNEY'S STATEMENT

The undersigned states that (s)he is the attorney for defendant in the above-entitled action; that (s)he personally read and explained the contents of the above declaration to the defendant and each item thereof; that no meritorious defense exists to the charge(s) to which defendant is pleading Guilty/No Contest; that (s)he personally observed the defendant fill in and initial each item, or read and initial each item to acknowledge explanation of the contents of each item; that (s)he observed defendant date and sign said declaration; that (s)he concurs in defendant's above plea and in defendant's waiver of constitutional rights.

Dated: 5-9-90 Larry A [signature]
Attorney for Defendant

## INTERPRETER'S STATEMENT (If Applicable)

I, the interpreter in this proceeding, having been duly sworn, truly translated this form and all the questions therein to the defendant in the ____________ language. The defendant indicated that (s)he understood the contents of the form and (s)he then initialed and signed the form.

Dated: ____________ ____________
Court Interpreter

## PROSECUTOR'S STATEMENT

The People of the State of California, plaintiff in the above-entitled criminal action, by and through its attorney, EDWIN L. MILLER, JR., District Attorney, concurs in the defendant's plea of Guilty/No Contest as set forth above.

Dated: 5.9.90 Evan Miller
Deputy District Attorney

## COURT'S FINDINGS AND ORDER

The Court, having questioned the defendant concerning the defendant's constitutional rights, finds that defendant has voluntarily and intelligently waived his/her constitutional rights. The Court finds that defendant's pleas and admissions are freely and voluntarily made, that defendant understands the nature of the charges and the consequences of the plea, and that there is a factual basis for the plea. The Court accepts defendant's plea, and the defendant is hereby convicted on his plea.

Dated: 5/9/90 [signature]
Judge of the Superior Court

# EXHIBIT COVER PAGE:

Exhibit: D

Description of this exhibit:

Number of pages of this exhibit:________pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ________________________________

is...I will set it up and call Larry

07/17/90 N/C tct EBG chambers NI LMTC

07/17/90 .20 tcf EBG law clerk who says that the only time that the judge can meet with us is tomorrow at 4:15

07/18/90 N/C tct Ferraro and Ainbinder to advise NI LMTC

07/18/90 .20 conf w/Ainbinder and Ferraro. Ferraro points out that we goofed up a little doing the dispo...cl was advised that the max for count one was 10-life. Actually, the guidelines changed one day after cl's conduct (difference is between 10/31/88 and 11/01/88) the actual guidelines in effect at time of offense were 0-20 years.

Martin could argue ineffective assistance of counsel if he wanted to, however:

(a) his state court case was mandatory 25-life
(b) even under the correct guidelines, his exposure at trial was a term of years that would have exceeded a life sentence

For these reasons, any IAC claim would be without merit.

Bottom line is that this makes the PSR recommendation moot, because the max cl could get would be 20 (for count one) plus 5 (for count two) for a total of 25 years! Martin should be happy about this.

07/18/90 .20 conf w/Ainbinder...he thinks that since Martin will do probably 19-20 actual years state, we should have his fed sentence a little longer than state so he doesn't have to go and do any state time. Therefore, we should get a total sentence of around 23years 3 months, which is 20 years actual time.

07/18/90 1.20 legal research re guidelines and prison terms. It appears that we should ask for 18 years and 3 months (219 months) for the conspiracy, 10 years (120 months) for the pipe bomb...all to run concurrent. Then add five years mandatory for the gun, and you get 23 years and 3 months (279 months). This will get him out in twenty years on the nose, which is what we all intended when we did plea negotiations (cal. civ code of civ. proc. § 1859)

07/19/90 1.40 prep for sent hearing

07/19/90 .50 R+R probation response to our obj to PSR

07/23/90 .30 appear EBG for hearing...marshal tells me that cl was hospitalized a couple of days ago for kidney problems, and should be in Harbor View Hosp...we will check and find out. Matter put over to 07/26/90 fpr status

07/23/90 tct Harborview Medical Center (232-4331) They do not have any information or records showing that Martin is there.

In this case, the defendant, Martin Walters, is attempting to withdraw the state portion of a federal/state plea bargain package he entered into with the United States Government and the People of the State of California.

The basis for this request is the defendant's contention that he mistakenly believed he would be facing life without possibility of parole for the primary count charged in his federal indictment. The defendant claims that for this reason alone, he accepted the plea bargain package. [See defendant's moving papers at p.2, lines 21 through 26].

However, the People must point out that this defendant had other reasons for accepting this plea bargain. The defendant was charged in Counts 7 and 8 of the state information with kidnapping for ransom with allegations of bodily injury (PC 209(a)) and murder in the first degree (PC 187(a)), respectively. Count 7 mandated a sentence of life without parole. Count 8 had a sentence range of 25 years to life.

In exchange for his plea of guilty to Count 8 of the information (PC 187(a)) the People dismissed Count 7, thereby saving the defendant from the possibility of life without parole in state prison. Furthermore, the People did not oppose the defendant's wish to serve his sentence in federal custody; concurrent with his federal sentence. The People agreed to file no charges against the defendant's mother, Martha Walters, or his aunt, Carmen Fonsica, and also to assist in limiting the amount of time they would serve in federal custody. Finally, the People dismissed the companion drug cases against the defendant that had been trailing along with the

/ / / / /

15.

0335

the light most favorable to the government, these tapes show Martin Walters purchasing enormous quantities of precursor chemicals and supplies for the production of multi-hundred pound shipments of methamphetamine.

It was counsel's opinion, communicated to Mr. Walters, that the state of the federal prosecutor's evidence was extremely strong. It was also counsel's opinion, again communicated to Mr. Walters, that as a result of these videotapes, (and despite the fact that the People's evidence was nowhere near so strong), that even if we should prevail completely on all of the state charges, it was a near certainty that Mr. Walters would spend the rest of his natural life in a federal penitentiary should he elect to go to trial on those charges. The same opinions were communicated to him by his federal defense attorney, James Pokorny.

This information obviously had a profound effect on Martin. He was 20 years old when arrested. And because of the mutually mistaken belief that he faced an LWOP sentence in federal court on charges he would almost certainly be convicted of, he was under the impression that if he accepted the plea bargains offered and entered pleas of guilty to both cases, including a plea to the instant P.C. § 187 charge, he would in all likelihood walk out of prison at the age of 40 with most of his life in front of him; but if he did not resolve the cases by plea, he would serve the rest of his natural life incarcerated in a federal prison. This impression was <u>the</u> motivating factor in deciding to enter his plea of guilty to murder in the case now before your honor. It was obviously based on an extremely material misunderstanding of the true consequences of electing trial over entering a plea of guilty.

an Diego
County

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

DEPARTMENT NO. 15 HON. PERRY LANGFORD, JUDGE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, PLAINTIFF, | |
| VS. | CASE NO. CR 103749 |
| MARTIN E. WALTERS, DEFENDANT. | MOTION TO WITHDRAW PLEA |
| | PAGES 1 - 31 |

REPORTER'S TRANSCRIPT

JANUARY 10, 1991

APPEARANCES:

FOR THE PLAINTIFF:

EDWIN L. MILLER, JR.
DISTRICT ATTORNEY
BY: EVAN MILLER
DEPUTY DISTRICT ATTORNEY
220 WEST BROADWAY
SAN DIEGO, CALIFORNIA 92101

FOR THE DEFENDANT:

LARRY AINBINDER
DEPUTY PUBLIC DEFENDER
233 A STREET
SAN DIEGO, CALIFORNIA 92101

REPORTED BY:

YVONNE A. MORENO, CSR 5366
OFFICIAL COURT REPORTER
SAN DIEGO SUPERIOR COURT

TO HIM THAT "WHY WOULD YOU WANT TO DO THAT." AND FOR THAT REASON WE SUGGESTED TO HIM THAT THE OFFERS MADE ON BOTH SIDES OF THE STREET, A PLEA TO FIRST DEGREE MURDER OVER HERE, A PAROLABLE OFFENSE, PLEAS TO THE CONSPIRACY TO MANUFACTURE METHAMPHETAMINE AND TO THE GUN COUNTS OVER IN FEDERAL COURT, RUN CONCURRENT WITH A RELEASE DATE ANTICIPATED AT 20 YEARS, WERE SOMETHING THAT MADE A LOT MORE SENSE.

IT WAS ESSENTIALLY OUR JOINT ADVICE TO THE OPINION THAT FACING LIFE WITHOUT PAROLE IN A FEDERAL CASE, WHERE THERE WAS VIDEOTAPE EVIDENCE AS STRONG AS THAT VIDEOTAPE EVIDENCE APPEARED, THAT THAT WAS JUST SUICIDAL. AND SO THAT NO MATTER WHAT THE STRENGTHS OR WEAKNESSES OF THE PEOPLE'S EVIDENCE IN THIS CASE, IT MADE NO SENSE TO REJECT THE OFFER AND TO BE ACQUITTED, LET'S SAY, OVER HERE AND TO TURN AROUND AND BE CONVICTED IN FEDERAL COURT AND SPEND THE REST OF HIS NATURAL LIFE IN FEDERAL PRISON.

THAT WAS THE MOTIVATING FACTOR AND THE RECURRENT REASON FOR HIS ENTERING HIS PLEA TO THIS CHARGE, AND IT'S FOR THAT REASON THAT IT'S MY READING OF THE LAW HE SHOULD BE ENTITLED TO WITHDRAW HIS PLEA IN THIS CASE.

I WILL SIT DOWN BASICALLY WITH THIS LAST THOUGHT: TO TELL HIM THAT THAT FACT DOES NOT JUSTIFY WITHDRAWING HIS PLEA IS ESSENTIALLY TO SAY "WELL, 20 YEARS OR LIFE WITHOUT THE POSSIBILITY OF PAROLE, YOU BASICALLY UNDERSTOOD THE PARAMETERS OF THE PLEA, WHICH IS THAT YOU'RE GOING TO DO A LOT OF TIME AND REALLY WHAT'S THE DIFFERENCE."

AND IN MY MIND WHEN YOU'RE TALKING ABOUT A FELLOW WHO THEN WAS 22 YEARS OLD AND TRYING TO MAKE SOME

DECISIONS BASED UPON WHETHER HE WOULD WALK OUT OF PRISON ROUGHLY AT THE AGE OF 40 OR SPEND THE REST OF HIS NATURAL LIFE IN PRISON, PARTICULARLY AS IT HAD BEEN IMPRESSED UPON HIM BY BOTH THE FEDERAL JUDGE, THE FEDERAL PROSECUTOR, MYSELF, HIS FEDERAL DEFENSE ATTORNEY AND THE PRECEEDING LAWYERS, IT'S JUST MIND-BOGGLING TO BELIEVE THAT THAT DID NOT AFFECT AND DID NOT CONTROL HIS DECISIONS IN THIS CASE, AND FOR THESE REASONS WE BELIEVE IT'S APPROPRIATE TO ALLOW HIM TO WITHDRAW HIS PLEA.

THE COURT: OKAY.

BEFORE I ASK THE PEOPLE TO RESPOND, LET ME ASK YOU THIS, MR. AINBINDER. IT'S YOUR POSITION THAT AS BORNE OUT BY THE DOCUMENTS THAT YOU SUBMITTED FROM THE FEDERAL COURT THAT ALL PARTIES, THE JUDGE IN THE FEDERAL SYSTEM, AS WELL AS ALL THE PARTIES IN THE STATE SYSTEM AND THE PROSECUTOR AND EVERYBODY INVOLVED IN THE CASE AS TO THE FEDERAL CASE, THEY WERE UNDER THE MISTAKEN BELIEF THAT THE MAXIMUM PUNISHMENT AT THAT TIME WAS LIFE IMPRISONMENT.

MR. AINBINDER: THAT IS CORRECT.

THE COURT: JUST LIFE WITHOUT POSSIBILITY OF PAROLE UNDER THE FEDERAL SYSTEM.

MR. AINBINDER: THAT'S CORRECT.

THE COURT: NOW, MY QUESTION IS, FIRST OF ALL, IS WAS THAT A QUESTION, WHETHER HAD IT -- WHERE THERE WAS AN OPEN ISSUE IN THE FEDERAL SYSTEM WHETHER OR NOT THE NEW TERM APPLIED TO YOUR CLIENT OR CASES RELATED SIMILAR TO YOUR CLIENT, OR WAS IT SOMETHING THAT CAME ABOUT IN TERMS OF A CASE WHICH CLARIFIED THE ISSUE OF RETROACTIVITY.

HAVE THE REPORT IN FRONT OF ME.

THE QUESTION THOUGH, YOUR HONOR, IS ALSO DID HE RECEIVE THE BENEFIT OF HIS BARGAIN OVER IN STATE COURT. AS I POINT OUT IN MY MOVING PAPERS, HE WAS ALSO LOOKING AT A LIFE WITHOUT THE POSSIBILITY OF PAROLE IN STATE COURT. SO WHEN HE PLED TO THE FIRST DEGREE MURDER, HE GOT THE BENEFIT OF NO LONGER BEING EXPOSED TO A LIFE WITHOUT THE POSSIBILITY OF PAROLE IN STATE COURT.

IN ADDITION TO THAT, WE AGREED THAT HE COULD SERVE HIS TIME IN FEDERAL CUSTODY AS OPPOSED TO A STATE FACILITY. WE ALSO AGREED THAT ANY TIME HE GOT IN THE STATE CASE COULD BE CONCURRENT WITH THE FEDERAL TIME.

WE AGREED TO FILE NO CHARGES AGAINST BOTH HIS MOTHER AND HIS AUNT ON A SOLICITATION FOR MURDER CASE. WE ALSO AGREED - AND THE FEDERAL PROSECUTOR WAS HERE AT THE TIME OF THE CHANGE OF PLEA - THAT THE AMOUNT OF TIME THAT BOTH HIS MOTHER AND HIS AUNT WOULD GET ON THEIR FEDERAL CASE RELATED TO THE SOLICITATION OF MURDER, THAT WE WOULD PUT A LID ON THAT TIME AND ALL OF THAT HAS HAPPENED.

THERE HAVE BEEN NO CHARGES FILED AGAINST THE MOTHER. NO CHARGES AGAINST THE AUNT. AND, IN FACT, THE MOTHER AND AUNT WERE SENTENCED IN FEDERAL COURT TO THE LIMIT THAT WE DISCUSSED HERE IN STATE COURT. SO HE HAS RECEIVED THE BENEFIT OF THAT BARGAIN.

IN ADDITION TO THAT, THERE WAS A COMPANION DRUG CASE THAT WAS DISMISSED IN STATE COURT. SO HE HAS RECEIVED CONSIDERABLE -- A CONSIDERABLE AMOUNT OF BENEFIT OVER IN STATE COURT FOR THE PLEA THAT HE ENTERED.

Petitioner accepted these statements by [illegible] for value, as our Agreement these words [illegible]

State of California | Department of Corrections & Rehabilitation

# Memorandum

Date: April 12, 2006

To: Jim Bruce, Vice-Principal
California State Prison, Solano

Subject: **2 HOUR 7 CALENDAR DAY MINIMUM ACCESS TO THE LAW LIBRARY**

On a recent handout to law library supervisors, "reasonable access" was described in the following manner:

> **"Reasonable Access:"** Court cases indicate this means any inmate who requests law library services, not just those with a court deadline, should be able to receive those services within seven calendar days of his/her request for a minimum block of time of two hours, unless documented safety/ security/ limited resources prevent providing this level of service.

This definition was derived from the case Toussaint v. McCarthy, 926 F. 2d 800.808 at footnote 1 (1986) that originally dealt with restricted access inmates in four different prisons. Since the courts and the California Department of Corrections' Headquarters' Administration inferred that restricted access inmates should not receive more physical access to the law library than general population inmates, the standard of a maximum wait of SEVEN calendar days for a minimum of TWO HOURS access became the standard maximum interval allowable between any inmate's requested visits to the law library. Inmates can receive MORE than two hours if there is space available in the library and library staff is agreeable.

Neither the Department Operations Manual nor Title 15 addresses the 2 hour, 7 day ruling.

*Janice Cesolini Stuter, M. L. S.*

**Principal Librarian**
**California Department of Corrections and Rehabilitation**
**(916) 324-4615; Fax: (916) 324-1416**
**E-mail: janice.stuter@cdcr.ca.gov**

State of California

# Memorandum

Date : February 5, 2003

To : ALL STAFF & INMATES
Level II & III Operations

From : California State Prison-Solano, Vacaville 95696-4000

Subject : LIBRARY HOURS OF OPERATION

California Code of Regulations (CCR), Section 3120, Inmate Library Requirements, states, "The warden shall ensure a library, law library and related services are maintained for the benefit of inmates in their facility." Furthermore, CCR Section 3122, Inmate Law Library states, "Each facility shall provide legal materials through its law library to provide inmates with meaningful access to the courts. ***Inmates with established court deadlines shall be given higher priority to access law library resources than those with longer deadlines or without a deadline."*** In addition, DOM Section 53060.1. states in part..."An inmate library shall be maintained by each facility." DOM Section 56060.10 states, "All interested inmates shall have access to the inmate library law books in accordance with this procedure. Each facility head shall formulate an operational schedule for the inmate law library. This schedule shall include: Daily hours of library operation, consideration to needs of inmates assigned to day work, training, or academic education, consideration to needs of inmates assigned to security, segregated, and other restricted housing units, the maximum inmate access consistent with space limitations and facility security needs."

All general inmate law users are given the opportunity to access the law library. In addition, in the event that the law library has met its allowed inmate capacity, General Library Users (GLU) who have met the minimum of two hours of law library access will be the first inmates asked to exit the law library in order to accommodate Priority Library Users (PLU). Additionally, GLU's would be allowed access to the Law Library during their scheduled yard time.

Each facility shall provide legal materials through its law library to provide inmates with meaningful access to the courts. Inmates with established court deadlines shall be given higher priority to access law library resources than those with longer deadlines or without a deadline. The attached schedule details the hours of the Level II and Level III Library and Law Library schedule.

TOM L. CAREY
Warden

Attachments: (2)

# LEVEL III LIBRARY YARD ACCESS SCHEDULE

Access to the Law Library is restricted to inmates from a single yard, only, on any given day. The calendar below indicates which Yard has access on each day of the month. (PLU's only, will be admitted at 0730/1800; GLU's will be admitted when the yard opens.)

## REVISED August 2007 REVISED

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| **29** Closed | **30** Closed | **31** Yard 2 **Morning** 0730-1100 1130-1400 | **1** Yard 1 **Morning** 0730-1100 1130-1400 | **2** Yard 2 *1330-1630 1800-2030* ***Evening*** | **3** Yard 1 *1330-1630 1800-2030* ***Evening*** | **4** Yard 2 *1330-1630 1800-2030* ***Evening*** |
| **5** Closed | **6** Closed | **7** Yard 1 **Morning** 0730-1100 1130-1400 | **8** Yard 2 **Morning** 0730-1100 1130-1400 | **9** Yard 1 *1330-1630 1800-2030* ***Evening*** | **10** Yard 2 *1330-1630 1800-2030* ***Evening*** | **11** Yard 1 *1330-1630 1800-2030* ***Evening*** |
| **12** Closed | **13** Closed | **14** Yard 2 **Morning** 0730-1100 1130-1400 | **15** Yard 1 **Morning** 0730-1100 1130-1400 | **16** Yard 2 *1330-1630 1800-2030* ***Evening*** | **17** Yard 1 *1330-1630 1800-2030* ***Evening*** | **18** Yard 2 *1330-1630 1800-2030* ***Evening*** |
| **19** Closed | **20** Closed | **21** Yard 1 **Morning** 0730-1100 1130-1400 | **22** Yard 2 **Morning** 0730-1100 1130-1400 | **23** Yard 1 *1330-1630 1800-2030* ***Evening*** | **24** Yard 2 *1330-1630 1800-2030* ***Evening*** | **25** Yard 1 *1330-1630 1800-2030* ***Evening*** |
| **26** Closed | **27** Closed | **28** Yard 2 **Morning** 0730-1100 1130-1400 | **29** Yard 1 **Morning** 0730-1100 1130-1400 | **30** Closed ***Maintenance*** | **31** Closed ***Maintenance.*** ***May announce library open if complete*** | **1** Yard 2 *1330-1630 1800-2030* ***Evening*** |

# LAW LIBRARY SCHEDULE - LEVEL III

## HOURS OF OPERATION

(EFFECTIVE February 15, 2007)

**Tuesday/Wednesday**

0730 hrs - 1100 hrs
1130 hrs - 1400 hrs

**Thursday/Friday/Saturday**

1330 hrs - 1630 hrs
1800 hrs - 2030 hrs

NOTE: Only Preferred Legal Users (PLUs) may access the Law Library in the morning from 0730 hours (7:30 a.m.) until the Yard is opened.

## UNLOCK SCHEDULE

**Tuesday/Wednesday**

0730 hrs - 0735 hrs: Library OPEN
0830 hrs - 0835 hrs: Break
0930 hrs - 0935 hrs: Break
1030 hrs - 1035 hrs: Break
1100 hrs: Lunch — Library CLOSED

Lunch

1130 hrs - 1135 hrs: Library REOPENS
1230 hrs - 1235 hrs: Break
1315 hrs - 1320 hrs: EXIT ONLY
1400 hrs: Library CLOSED

**Thursday/Friday/Saturday**

1330 hrs - 1335 hrs: Library OPEN
1430 hrs - 1435 hrs: Break
1530 hrs - 1535 hrs: Break
1630 hrs: Dinner - Library CLOSED

Dinner

1800 hrs - 1805 hrs: Library REOPENS
1830 hrs - 1835 hrs: Break
1930 hrs - 1935 hrs: Break
1950 hrs - 1955 hrs: EXIT ONLY
2030 hrs: Library CLOSED

## BOOK CART SCHEDULE

**Tuesday/Wednesday**

0930 hrs - 1000 hrs (When Yard Opens)
(9:30 a.m. - 10:00 a.m.)

1300 hrs - 1330 hrs
(1:00 p.m. - 1:30 p.m.)

**Thursday/Friday/Saturday**

1330 hrs - 1400 hrs
(1:30 p.m. - 2:00 p.m.)

1930 hrs - 2000 hrs (When Yard Opens)
(7:30 p.m. - 8:00 p.m.)

J.R. CORNELL, Librarian
Level III, Ext. 6258

Note: The library is for the use of PLUs only until the yard opens after breakfast. Close-B Custody inmates must leave the library at the 1950 hrs unlock. No evening access for Close-A Custody Inmates.

HOURS.DOC

absent documented security reasons. 597 F.Supp. at 1424. The court found that the "paging system"[30] in use at San Quentin and Folsom rendered effective legal research virtually impossible. *Id.* at 1403. However, the district court allowed the defendants to deny physical access to the libraries to those plaintiffs who are documented security risks. *Id.* at 1424. The court specified that any prisoner denied access to the libraries be permitted to order five books per week, which would be delivered to the prisoner's cell. *Id.*

In *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the Supreme Court held that prisoners have a constitutional right of access to the courts which in turn requires prison authorities to provide prisoners with adequate law libraries or adequate assistance from persons trained in the law. *Id.* at 828, 97 S.Ct. at 1498; *see Lindquist v. Idaho State Board of Corrections,* 776 F.2d 851, 855 (9th Cir.1985). In *Lindquist,* we recognized that

> The existence of an adequate law library does not provide for meaningful access to the courts if the inmates are not allowed a reasonable amount of time to use the library. However, the Constitution does not guarantee a prisoner unlimited access to a law library. Prison officials of necessity must regulate the time, manner, and place in which library facilities are used. The fact that an inmate must wait for a turn to use the library does not necessarily mean that he has been denied meaningful access to the court.

*Id.* at 858 (citations omitted).

Defendants do not challenge the validity of the district court's factual findings. Defendants argue that the district court should have limited injunctive relief to remedying the deficiencies in the paging system. Plaintiffs argue that the district court did not abuse its discretion in ordering physical access absent compelling security needs. Plaintiffs also argue, however, that the district court abused its discretion by failing to require defendants to provide legal assistance to inmates barred from physical access.

The district court's order accommodates defendants' interests by allowing them to limit physical access to the law library. They need only permit reasonably necessary use. Moreover, even if a segregated inmate needs to use the law library, defendants may preclude physical access if such access would interfere with institutional security.

The defendants interpret the portion of the court's order allowing limited use of the paging system as an acknowledgement of the efficacy of the system. This interpretation is incorrect. The district court expressly found that the paging system significantly impairs effective legal research. 597 F.Supp. at 1403, 1413. Allowing a limited use of the paging system merely recognizes defendants' interest in institutional security.

Plaintiffs contend that even as "improved" by the district court, the paging system is constitutionally deficient. This argument has merit. In *Williams v. Leeke,* 584 F.2d 1336 (4th Cir.1978), *cert. denied,* 441 U.S. 911, 99 S.Ct. 2825, 61 L.Ed.2d 276 (1979), the Fourth Circuit held that allowing a prisoner physical access to a law library for 45 minutes a day, three days a week did not constitute a meaningful opportunity to conduct legal research. *Id.* at 1340. Presumably, a prisoner could examine more than five books in that amount of time. The *Williams* court noted that

> Ordinarily, a prisoner should have direct access to a law library if the state chooses to provide a prison law library as its way of satisfying the mandate of *Bounds.* Simply providing a prisoner with books in his cell, if he requests

2 hours 15 minutes

30. A paging system allows a prisoner to request specific volumes. The significant features of such a system are that the prisoner must know in advance which volumes he will need to review and that the process of ordering and returning books drastically prolongs legal research.

them, gives the prisoner no meaningful change to explore the legal remedies that he might have. Legal research often requires browsing through various materials in search of inspiration; tentative theories may have to be abandoned in the course of research in the face of unfamiliar adverse precedent. New theories may occur as a result of a chance discovery of an obscure or forgotten case. Certainly a prisoner, unversed in the law and the methods of legal research, will need more time or more assistance than the trained lawyer exploring his case. It is unrealistic to expect a prisoner to know in advance exactly what materials he needs to consult.

*Id.* at 1339.

The *Williams* court permitted the state to use a paging system when the state did not rely solely on access to a law library to satisfy *Bounds*. In *Williams*, Virginia and South Carolina provided state-funded legal counsel or trained legal assistants to prisoners contesting the legality or conditions of confinement. *Id.*

Plaintiffs in the instant case request research assistance for all prisoners denied physical access to the law libraries. The great weight of authority in the courts of appeals supports plaintiffs' request. *See Nordgren v. Milliken*, 762 F.2d 851, 853–55 (10th Cir.1985) (state provided access to courts by providing legal assistance in drafting pleadings), *cert. denied*, — U.S. —, 106 S.Ct. 593, 88 L.Ed.2d 573 (1986); *Williams v. Wyrick*, 747 F.2d 1231, 1232 (8th Cir.1984) (state satisfied *Bounds* by providing two inmate paralegals and one runner to procure law books, copy materials and research legal questions for 23 death-row inmates); *Corgain v. Miller*, 708 F.2d 1241, 1247–50 (7th Cir.1983) (where state actually provided legal assistance, access to legal materials could be restricted); *Holt v. Pitts*, 702 F.2d 639, 640–41 (6th Cir.1983) (state may deny physical access to law library to ensure security when prisoner has access to person trained in law); *Rich v. Zitnay*, 644 F.2d 41, 43 (1st Cir. 1981) (state must show that alternatives to access to prison library satisfy *Bounds*); *Williams v. Leeke*, 584 F.2d at 1339. *Cf. Arsberry v. Sielaff*, 586 F.2d 37, 44 (7th Cir.1978) ("as long as adequate alternatives are available in light of legitimate penological objectives, a limitation on a prisoner's constitutional rights will not be deemed impermissible"). Moreover, plaintiffs' suggested remedy would not be overly intrusive. The defendants would only be required to provide legal assistance to those prisoners that defendants deem to be a security risk.

[38] Therefore, we conclude that *all* prisoners are entitled to meaningful access to the courts. If the state denies a prisoner reasonable access to a law library, the state must provide that prisoner legal assistance. If the parties fail to agree on a plan that provides meaningful access to the courts, the district court shall fashion one that comports with the requirements established in this opinion.

## X

## ACOUSTICAL WALL COVERINGS

In Part II(6) of the Permanent Injunction, the district court ordered defendants to install, inter alia, sound-absorbing wall-coverings in the five-tier units. 597 F.Supp. at 1423. Defendants do not object to the district court's conclusion that the level of noise in the five tier units inflicts pain without penological justification. They contest the court's remedy. They argue that wall coverings would not reduce the noise perceptibly and would be costly.

[39, 40] The fact that a remedy is costly does not preclude a district court from ordering the remedy. *Hoptowit*, 682 F.2d at 1247. The testimony of *defendants'* expert witness supports the conclusion that the remedy ordered by the court would reduce the noise levels perceptibly. The district court's choice of remedy was a proper exercise of discretion.

## XI

## ADJUSTABLE HOT AND COLD WATER CONTROLS

In Part II(10) of the Permanent Injunction, the district court ordered that the

VERIFICATION

(C.C.P. §§446; 2015.5;
28 U.S.C. §1746)

I, Martin Edward Walters, declare under the penalty of perjury that:

I am the Party in the attached matter; I have read the foregoing document(s) and know the contents thereof; and the same is true of my own personal knowledge, or upon information and belief therein that they are true; that if called to testify as to the contents hereof I could do so competently as a sworn witness.

Executed this 12th day of April, 2008, at California State Prison /Solano, Vacaville, California.

(Signature) Martin Walters
Declarant

**************************************************************************

## DECLARATION OF SERVICE BY MAIL

(C.C.P. §§1013(a); 2015.5; 28 U.S.C. §1746)

I, MATT Braden, declare: That I am a resident of California State Prison / Solano State of California; I am over the age of 18 years; I am/am not a party to the above entitled action; My address is P.O. Box 4000 6-106u, Vacaville, CA 95696. I served the attached document(s) entitled: Declaration in support of Opposition to dismiss

on the persons/parties specified below by placing a true and duplicated copy of said documents into a sealed envelope with appropriate First Class Postage affixed thereto and prepaid, and placing said envelope(s) into the United States Mail in a deposit box provided at the California State Prison / Solano, in Vacaville, California, addressed as follows:

United States Court House
Southern District of California
880 Front St. Room 4290
San Diego CA. 92101 -8900

State of California
Department of Justice
Office of Attorney General
110 West A St. Suite 1100
P.O. Box 85266
San Diego CA. 92186-5266

There is First Class mail delivery service by United States Mail at the places so addressed and/or regular communication by mail between the place of mailing and the addresses above. I declare under the penalty of perjury that the foregoing is true and correct and that I executed this service on this 17th day of April, ~~April~~ 2008 at California State Prison / Solano, in Vacaville, California.

(Signature) Matt Braden
Declarant